UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

J.R.,

    Plaintiff,

v.

LINCOLN BANCORP, LLC,

    Defendant.

CIVIL ACTION FILE

NO. 1:25-CV-04629-JPB

**PLAINTIFF'S 30(B)(6) NOTICE OF DEPOSITION OF
LINCOLN BANCORP, LLC**

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 30(b)(6), Counsel for Plaintiff will take the videotaped deposition of **DEFENDANT LINCOLN BANCORP, LLC** with respect to the topics set forth below. The deposition will take place on April 1, 2026, at 1:00 p.m. EDT, at Groth, Makarenko, Kaiser & Eidex, One Sugarloaf Centre, 1960 Satellite Boulevard, Suite 2000, Duluth, Georgia 30097 and be conducted in person[1]. The deposition will be taken under

---

[1] Plaintiff's counsel and Defendants' counsel consented to Defendant Lincoln Bancorp's deposition being taken jointly for the following four cases pending in the U.S. District Court for the Northern District of Georgia: *T.H. v. Lincoln Bancorp, LLC* (Civil Action No.: 1:25-cv-4310-AT); *N.N. v. Lincoln. Bancorp, LLC* (Civil Action No.: 1:25-cv-4313-MHC); *J.R. v. Lincoln Bancorp, LLC* (Civil Action No.: 1:25-cv-4629-JPB); and *D.B. v. Lincoln Bancorp, LLC d/b/a Super 8 by Wyndham and Lincoln Property Management, LLC* (Civil Action No.: 1:25-cv-05391-AT). Plaintiffs in the aforementioned cases have jointly prepared the list of topics upon which Defendant Lincoln Bancorp will be required to testify, which is attached as Exhibit A, as well as the documents Defendant Lincoln Bancorp must bring to the deposition,

cross examination before an officer duly authorized to administer oaths, by stenographic and videographic means, and will be taken for discovery, for use at trial, and for all permissible purposes. The oral examination will continue from day to day until completed. Opposing counsel may attend and examine.

Pursuant to Fed. R. Civ. P. 30(b)(6), Defendant is required to designate and fully prepare one or more officers, directors, managing agents, or other persons who consent to testify on its behalf, and whom Defendant Lincoln Bancorp, LLC will fully prepare to testify regarding the following designated matters and as to such information that is known or reasonably available to Defendant. Plaintiff reserves the right to seek relief from the Court in the event that the designated deponent is not properly prepared to testify on behalf of Defendant Lincoln Bancorp, LLC with respect to each of the identified topics.

Respectfully submitted on March 26, 2026.

ANDERSEN, TATE & CARR, P.C.

*/s/ Jennifer M. Webster*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE

which are identified in Exhibit B. Plaintiffs invite Defendant Lincoln Bancorp to confer with Plaintiffs' counsel regarding the topics in Exhibit A as required by Fed. R. Civ. P. 30(b)(6), if needed.

Georgia Bar No. 303999
jtonge@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile

## CERTIFICATE OF COMPLIANCE

Under Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Times New Roman, 14-point font.

ANDERSEN, TATE & CARR, P.C.

*/s/ Jennifer M. Webster*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile

## EXHIBIT A

Defendant Lincoln Bancorp LLC ("Lincoln Bancorp") must designate and produce one or more knowledgeable representatives to testify on its behalf regarding the following topics:

1. Plaintiffs' Complaints and Lincoln Bancorp's Answers to the Complaints, including the factual basis for each defense raised in the Answers. [1]

2. Discovery in each of the matters[2], including:

   a. Lincoln Bancorp's responses to discovery in each matter;

   b. The creation, existence, retention, location, and/or production of materials produced or requested to be produced in discovery thus far in each matter; and

   c. The methods, procedures, and efforts Lincoln Bancorp took to search for documents, materials, or information responsive to discovery in each matter.

---

[1] Plaintiff's counsel and Defendants' counsel consented to Defendant Lincoln Bancorp's deposition being taken simultaneously for the following four cases pending in the U.S. District Court for the Northern District of Georgia: *T.H. v. Lincoln Bancorp, LLC* (Civil Action No.: 1:25-cv-4310-AT); *N.N. v. Lincoln. Bancorp, LLC* (Civil Action No.: 1:25-cv-4313-MHC); *J.R. v. Lincoln Bancorp, LLC* (Civil Action No.: 1:25-cv-4629-JPB); and *D.B. v. Lincoln Bancorp, LLC d/b/a Super 8 by Wyndham and Lincoln Property Management, LLC* (Civil Action No.: 1:25-cv-05391-AT). Thus, the topics herein refer to all four Plaintiffs and cover topics related to each for the cases.

[2] The use of the phrases "each of the matters" or "each matter" refer to the four aforementioned cases.

1

3. Insurance coverage and policy limits that may apply to any or all of Plaintiffs' claims, including communications with any insurance company regarding potential coverage for Plaintiffs' claims.

4. Lincoln Bancorp's knowledge of all individuals who may have knowledge or serve as a witness to any facts or circumstances relevant to Plaintiffs' claims against it.

5. Lincoln Bancorp as a company, including:

   a. Whether it is a for-profit company;

   b. How long it has been operating;

   c. What business Lincoln Bancorp is in;

   d. How long Lincoln Bancorp has been in that business;

   e. What experience Lincoln Bancorp's owner(s) and manager(s) have in that business;

   f. Any assets or other properties Lincoln Bancorp owns or has ever owned; and

   g. The profits, expenses, budgets, and financial operation of Lincoln Bancorp.

6. The property[3] itself, including:

   a. When Lincoln Bancorp purchased the property;

   b. Whether Lincoln Bancorp owned, occupied, managed, and controlled the property and the periods of time under for each;

---

[3] The term "property" as used throughout this Exhibit A refers to the property located at 4979 Old National Highway, College Park, Georgia.

2

c. Any other entity's or person's involvement in the property during the period in which Lincoln Bancorp owned the property;

d. Whether the property operated as a hotel/motel and whether it was always operated that way during Lincoln Bancorp's ownership; and

e. Whether the property is an income generating asset for Lincoln Bancorp.

7. The areas surrounding the property, including:

a. Whether the area was known as a high crime area at any time during Lincoln Bancorp's ownership;

b. Whether sex is often sold on Old National Highway (i.e., the area surrounding the property); and

c. Whether drugs are often sold on Old National Highway (i.e., the area surrounding the property).

8. How the property was run during Lincoln Bancorp's ownership, including:

a. The cost of rooms (and the different costs depending on the day, time of year, etc. if the costs vary);

b. Whether there were any room rental restrictions (such as age or type of payment) and what information was required to rent a room;

c. The check-in, check-out, and room assignment policies and procedures;

d. Any training programs regarding Lincoln Bancorp's room rental, check-in, and check-out practices in effect at any time during Lincoln Bancorp's ownership of the property;

3

    e.  The room cleaning procedures;

    f.  The room rental length (hourly, nightly, weekly, etc.);

    g.  The hotel guest's responsibilities, if any;

    h.  Lincoln Bancorp's responsibilities, if any;

    i.  A description of the clientele;

    j.  The guest policy for the property;

    k.  The staffing during the daytime and nighttime as well as the hotel's operating hours;

    l.  The general job descriptions and duties for each staffing role (e.g., front desk, manager, housecleaning, maintenance, etc.);

    m.  The record keeping practices for the property; and

    n.  Any advertising and business development efforts associated with the hotel.

9. Lincoln Bancorp's employees, independent contractors, and vendors who worked at the property as well as its policies for same, including:

    a.  Lincoln Bancorp's hiring policies during the entire period it owned the property;

    b.  Names, job title(s), job performance, job description(s), responsibilities related to the property, dates of employment or contractual relationship, and contact information for all individuals who worked at the property and/or were employed by Lincoln Bancorp during the entire period it owned the property;

    c.  How Lincoln Bancorp came to hire each of the employees and/or independent contractors who worked at the property;

4

d. Any policies or procedures related to vendors engaged by Lincoln Bancorp for or related to the property during the entire period it owned the property;

e. Names, nature and scope of duties and/or services, terms of engagement, and dates of engagement for all vendors who provided services to Lincoln Bancorp during the entire period it owned the property; and

f. How Lincoln Bancorp came to engage and/or contract with each vendor who provided services to Lincoln Bancorp during the entire period it owned the property.

10. Prior crime at the property;

a. Any information Lincoln Bancorp knew about prior crime at its property and in the surrounding area and when and how Lincoln Bancorp learned these things;

b. The actions or efforts Lincoln Bancorp made to learn about prior crime at its property and the in surrounding area;

c. Any resources Lincoln Bancorp knew about which it could use to learn about prior crime at its property and the surrounding area and when and how Lincoln Bancorp learned of these resources;

d. All documents that were maintained regarding prior crime at the property and the surrounding area and when Lincoln Bancorp learned about these documents; and

e. Whether Lincoln Bancorp knew that dangerous, reckless, and/or lawless persons frequented the property and the surrounding area and when and how Lincoln Bancorp learned these things.

11. Lincoln Bancorp's safety and security policies, procedures, and training

at/for the property, including:

a. Any policies, procedures, and/or training related to guest safety, crime prevention, and/or crime deterrence;

5

b. The policies and procedures regarding removing persons from the property for safety and security concerns;

c. Information, if any, provided to potential guests about the safety and security of the property and the surrounding area;

d. The policies and procedures related to reporting crime, including suspected crime, on the property both internally and to law enforcement or other relevant authorities; and

e. Any safety and security steps that were discussed for the property but not implemented, if any.

12. Lincoln Bancorp's policies, procedures, and training related to sex trafficking and prostitution for the property, including:

a. All compliance, safety, training, and operational policies and procedures related to prostitution or sex trafficking awareness, identification, and prevention for the property;

b. All employee training programs, education initiatives, or awareness campaigns related to prostitution or sex trafficking identification and prevention for the property;

c. All policies and procedures related to reporting suspected instances of prostitution or sex trafficking on the property, including internal reporting mechanisms and protocols for contacting law enforcement or other relevant authorities; and

d. All oversight mechanisms in place to ensure compliance with relevant laws, regulations, industry standards, and internal policies related to prostitution and sex trafficking.

13. Lincoln Bancorp's actions related to crime on the property:

a. All actions taken by Lincoln Bancorp to deter or prevent criminal activity, sexual assaults, rapes, commercial sex activity, prostitution, pimping, indecent exposure, sex trafficking, or other sex crimes occurring at the property;

b. Whether anyone developed a safety and security plan for the property, and if so, who;

c. What the safety and security plan for the property was;

d. Whose responsibility it was to implement Lincoln Bancorp's safety and security plan and what each person's role was;

e. Whether there were cameras, what the cameras showed, who looked at the cameras, and any policies or procedures regarding review of the camera feed(s);

f. Whether security patrols occurred on the property, whose responsibility it was to conduct the patrols, and the frequency in which the patrols were conducted;

g. Whether there was a "do not rent list", the criteria for getting on any such list, how the list was maintained and checked, and where the list is at present;

h. Whether incident reports, weekly security reports, or other similar reports were done and whether such reports were maintained;

i. The property's exterior security features (e.g., lighting, gates, fencing, panic poles, etc.);

j. Whether discussions were had with law enforcement regarding preventing or deterring crime on the property;

k. What law enforcement outreach was done, if any, and what the results were;

l. What cooperation, if any, occurred with law enforcement; and

m. All partnerships or collaborations with external organizations or agencies involved in addressing, preventing, or deterring prostitution, sex trafficking, and other crime.

14. Lincoln Bancorp's policies, procedures, and practices related to guest feedback and online reputation management, including:

a. All policies, procedures, and practices related to Lincoln Bancorp's review and response process for guest complaints and negative online reviews and Medallia surveys;

b. Whether Lincoln Bancorp received and/or reviewed Google reviews, Trip Advisor reviews, or other similar reviews, as well as Medallia survey responses, what it learned from any reviews and/or feedback it did receive, and how it responded;

c. Lincoln Bancorp's policies, procedures, and practices related to addressing guest concerns; and

d. All efforts Lincoln Bancorp made during its ownership of the property to address and mitigate negative guest feedback.

15. Plaintiffs' statuses on the property, including:

a. Whether Lincoln Bancorp rented rooms to Plaintiffs and received money for those rooms;

b. Whether Lincoln Bancorp rented rooms to Plaintiffs' traffickers and received money for those rooms;

c. Whether Lincoln Bancorp rented rooms to "johns" that ultimately paid Plaintiffs' traffickers for the right to have sex with Plaintiffs (this topic does not imply that Lincoln Bancorp knew how the room was going to be used);

d. Whether Plaintiffs were allowed to be on Lincoln Bancorp's property at any time; and

e. Whether Lincoln Bancorp sold Plaintiffs anything at any time, and if so, what, when, and where.

16. Lincoln Bancorp's knowledge regarding Plaintiffs' sex trafficking that occurred on the property, including:

8

   a. Whether during their visits to the property, Lincoln Bancorp knew or recognized Plaintiffs, Plaintiffs' traffickers, and/or Plaintiffs' "johns;"

   b. Lincoln Bancorp's interactions with Plaintiffs, Plaintiffs' traffickers, and the "johns;"

   c. Lincoln Bancorp's observations of Plaintiffs, their traffickers, and the "johns;"

   d. Lincoln Bancorp's communications regarding Plaintiffs, their traffickers, and the "johns;"

   e. Lincoln Bancorp's interactions with responding officers to the property to the extent those interactions were related to Plaintiffs and/or their traffickers; and

   f. All investigations Lincoln Bancorp performed related to Plaintiffs' sex trafficking.

17. Lincoln Bancorp's knowledge of criminal activity on the property during its ownership, including:

   a. Knowledge of sexual assaults, rapes, commercial sex activity, prostitution, pimping, indecent exposure, sex trafficking, or other crimes occurring at the property, including all information known by Lincoln Bancorp regarding each instance; and

   b. All instances during Lincoln Bancorp's ownership of the property where Lincoln Bancorp has made any report to any third party, including, but not limited to, law enforcement agencies, franchisors, insurance companies, and/or financial lenders, of any criminal activity occurring at the property.

18. Whether, based on the evidence presented, Lincoln Bancorp admits that more likely than not:

   a. Plaintiffs were involved in commercial sex work as minors;

9

b.  Plaintiffs are sex trafficking victims;

c.  Plaintiffs suffered some degree of injuries from being trafficking for sex;

d.  Plaintiffs were trafficked for sex as Lincoln Bancorp's property;

e.  Persons paid money to Plaintiffs' traffickers to have sex with Plaintiffs at Lincoln Bancorp's property;

f.  Lincoln Bancorp ultimately benefited from the sex trafficking of Plaintiffs; and

g.  It was reasonably foreseeable to Lincoln Bancorp that commercial sex would occur at its property.

10

## **EXHIBIT B**

Defendant Lincoln Bancorp shall produce the following documents at the deposition:

1. All documents which Lincoln Bancorp reasonably expects it will reference or rely upon when providing testimony regarding the topics identified in Exhibit A.

2. All documents which Lincoln Bancorp reasonably expects will form the basis for its testimony regarding the above-referenced topics;

3. All documents reviewed or created by Lincoln Bancorp's designated corporate representative(s) in preparing to testify under Federal Rule of Civil Procedure 30(b)(6), including emails and notes.

4. All documents responsive to Plaintiffs' discovery request that have not yet been produced.

**PLEASE TAKE NOTICE** that if Lincoln Bancorp claims any information, documents or things sought or requested is privileged, protected by the work product doctrine, or otherwise not discoverable, please describe the nature of the documents, communications, or things not produced or disclosed in a manner that will enable Plaintiffs to assess the applicability of the privilege or protection, including the legal and factual basis for withholding the requested discovery.

1