UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

J.R.,

Plaintiff,

v.

LINCOLN BANCORP, LLC,

Defendant.

CIVIL ACTION FILE
NO. 1:25-cv-04629-JPB

**DEFENDANT'S CONSOLIDATED MOTIONS IN LIMINE**

Defendant Lincoln Bancorp, LLC ("Lincoln Bancorp" or "Defendant"), by and through undersigned counsel, and hereby files this set of consolidated motions in limine, wherein Defendant seeks exclusion of evidence and/or argument related to the following:

1. Evidence Post-Dating Plaintiff's Alleged Trafficking Period;
2. Unrelated Criminal Incidents at the Super 8;
3. Online Reviews and Complaints Related to the Super 8;
4. The Alleged Trafficking of Non-Parties T.H., N.N., and D.B.;
5. News Media Reports Related to the Super 8;
6. Luis Vu's "Pleading the Fifth Amendment";
7. "Reptile" Statements or Argument;

8. Expert Testimony of Anique Whitmore (RESERVED).[1]

Each Motion is addressed separately below.

## CASE OVERVIEW

This is a hotel sex-trafficking case. Plaintiff J.R. alleges that, while a minor, she was trafficked for sex at the Super 8 motel located at 4979 Old National Highway, College Park, Georgia 30349 (the "Super 8"), which, at the time, was owned and operated by Defendant. Plaintiff alleges that she was trafficked at the Super 8 on three different occasions -- from January through March of 2020, from approximately April through May of 2020, and from June through July of 2021. Plaintiff asserts claims under the TVPRA (18 U.S.C. § 1595(a)) and Masha's Law

[1] Defendant previously moved to exclude Plaintiff's expert witness, Anique Whitmore, based on the fact that she was identified on the last day of discovery, which left Defendant no time remaining in the discovery period to procure its own rebuttal expert. That motion remains pending. If the Court does not exclude Plaintiff's expert witness, Defendant reserves the right to procure its own rebuttal expert. Additionally, Defendant would also point out that, while the parties have agreed to take Ms. Whitmore's deposition prior to trial, that deposition has yet to take place (it is currently scheduled for September 3, 2026). The undersigned intends to file a Daubert motion in regard to Ms. Whitmore's opinions, but, obviously, such a motion cannot be completed until after she is deposed. Defendant's attorneys will commit to having said Daubert motion filed on or before September 7, 2006. Based on discussions with the Plaintiff's counsel, the undersigned is informed and believes that Plaintiff will not object to said Daubert motion as allegedly untimely.

(18 U.S.C. § 2255)[2], and state-law claims for negligence law (premises liability), false imprisonment, and public nuisance.[3]

## MOTIONS IN LIMINE

### *1. Evidence Post-Dating Plaintiff's Alleged Trafficking Period.*

Plaintiff's claims are temporally limited. She alleges she was trafficked at the Super 8 during three periods: January through March of 2020, April through May of 2020, and June through July of 2021.[4] As for her TVPRA claim, Plaintiff must prove that Lincoln Bancorp knowingly benefited from participating in a venture that violated the TVPRA *as to J.R.* and that Lincoln Bancorp knew or should have known the venture violated the TVPRA. *See* ***Doe #1 v. Red Roof***

---

[2] There is no evidence to support Plaintiff's claim under Masha's Law (18 U.S.C. § 2255), as the statute requires the defendant to be the perpetrator of the predicate criminal violation. 18 U.S.C. § 2255(a). Here, there is no evidence that Defendant committed any of the relevant crimes.

[3] There is no evidence to support Plaintiff's claims for false imprisonment or public nuisance. Under Georgia law, false imprisonment "is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." O.C.G.A. 51-7-2; see also ***Ferrell v. Mikula***, 295 Ga. App. 326, 329 (2008). A public nuisance "is one which damages all persons who come within the sphere of its operation though it may vary in its effects on individuals." O.C.G.A. § 41-1-2. A public nuisance, therefore, "injure[] those of the public who may actually come in contact with it." ***Moreland v. Cheney***, 267 Ga. 469, 469-70 (1997). An individual has a cause of action for public nuisance, but only where their injuries have been caused by the nuisance. O.C.G.A. § 41-1-3. Here, Plaintiff is alleging injury caused by trafficking, and there is no evidence that such injuries were caused to everyone coming into contact with the Super 8.

[4] *See* Plaintiff's Depo. Trans., pp. 8-10, attached at ***Exhibit "A"***.

***Inns, Inc.***, 21 F.4th 714, 725 (11th Cir. 2021) ("***Doe #1***"). Plaintiff's negligence claim turns on Defendant's ***prior*** knowledge of hazardous conditions at the Super 8, which allegedly made her trafficking foreseeable and gave rise to a duty to use reasonable care. *See* ***Rice v. Six Flags Over Georgia, LLC***, 257 Ga. App. 864, 866 (2003); ***Days Inn of America v. Matt***, 265 Ga. 235, 236 (1995). Thus, evidence of incidents or occurrences taking place after July 2021 is irrelevant under Rule 401, because it cannot make any element of Plaintiff's claims more or less probable. Simply put, such evidence tells the jury nothing about what Defendant knew, did, or should have done during the relevant timeframe.

Even if this Court were to find some marginal relevance to post-July 2021 evidence, it should be excluded under Rule 403. Depending on the evidence (a criminal incident occurring in 2022, for example), the prejudice associated therewith would clearly outweigh any probative value. Jurors would be tempted to judge the Defendant based subsequent events, as opposed to its knowledge and actions regarding Plaintiff herself. Moreover, admitting such evidence would confuse the issues, mislead the jury, and result in undue delay through the introduction of collateral matters. Fed. R. Evid. 401, 403.

***2. Unrelated Criminal Incidents at the Super 8.***

Plaintiff has produced numerous police reports related to various incidents which occurred at the Super 8 between 2020 and 2025, none of which relate to J.R.

or her alleged traffickers and the vast majority of which concern things like domestic disputes, fights, thefts, drug use and other criminal activity. Defendant seeks to exclude all evidence, testimony, and argument concerning these unrelated incidents for the reasons set forth below.

First, as the Court is no doubt aware, the TVPRA addresses sex trafficking – and only sex trafficking. It does not address other criminal activity – not even prostitution. ***Doe v. Red Roof Inns, Inc.***, 2021 U.S. Dist. LEXIS 269545, *17 (N.D. Ga. Feb. 3, 2021) (holding the TVPRA "does not address commercial sex activity generally."). Accordingly, Courts have consistently held that evidence of prostitution at a property is insufficient to establish knowledge of sex trafficking. *See* ***Doe v. 42 Hotel Raleigh, LLC***, 717 F. Supp. 3d 464, 470 (E.D.N.C. 2024) (holding that evidence of prostitution does not equate to knowledge of sex trafficking); ***J.B. v. G6 Hosp., LLC***, 2020 WL 4901196, at *11 (N.D. Cal. 2020) (same); ***A.B. v. Wyndham Hotels & Resorts, Inc.***, 532 F. Supp. 3d 1018, 1027–28 (D. Or. 2021) (same). Moreover, TVPRA liability requires Plaintiff to show that Defendant knowingly benefitted from participating in a venture that the beneficiary knew or should have known violated the TVPRA. ***Doe #1***, 21 F.4th at 726; ***A.G. v. Northbrook Indus.***, 171 F.4th 1257, 1270 (11th Cir. 2026). Other criminal incidents which do not involve trafficking are incapable of demonstrating actual or constructive notice of trafficking. And, while Plaintiff's collection of police

reports include do include very few that reference or may suggest trafficking (see, ***Exhibit "B"***, for example), none of those are specific to Plaintiff, her alleged traffickers, or the "venture" in which Defendant is alleged to have participated. As such, Plaintiff's evidence of prior, unrelated criminal incidents is irrelevant and must be excluded. *See* Fed R. Evid, 401 and 402.

Second, in regard to Plaintiff's claim for negligence/premises liability, the admissibility of prior crime evidence turns on its similarity to the crime at issue. ***CVS Pharmacy, LLC v. Carmichael***, 316 Ga. 718, 731-32 2023)[5]; ***Retail Property Trust v. McPhaul***, 359 Ga. App. 345, 348 (2021) ("One way to establish foreseeability is to show that the property owner has notice of substantially similar prior criminal acts."). And, it is Plaintiff's burden to demonstrate, not only the similarity of prior crimes, but that they were known to the proprietor. ***Medical Ctr. Hosp. Auth. v. Cavender***, 331 Ga. App. 469, 474 (2015) (plaintiff's burden to establish that the property owner had knowledge of the previous substantially similar crimes on or near the premises upon which the plaintiffs rely to establish foreseeability.); ***Baker v. Simon Prop. Group, Inc.***, 273 Ga. App. 406, 407 (2005) (finding that police reports could not establish foreseeability where the plaintiff did not show the police reports were known to the proprietor). Here, the incident

---

[5] While ***Carmichael*** clarified that prior crime evidence is not the only way to establish foreseeability of a criminal incident, it upheld the notion that, for prior crime evidence to be relevant to a foreseeability analysis, substantial similarity of that crime is still required. ***Carmicheal***, 316 Ga. at 731-32.

reports collected by Plaintiff involve domestic disputes, thefts, drug possession and the like – none of which is substantially similar to the sex trafficking of a minor. And, even if substantial similarity of these prior incidents were established, Plaintiff must nevertheless demonstrate that said incidents were known to Defendant for them to be relevant herein.[6]

Third, narrative portions of police reports constitute hearsay. ***Luong v.. Tran***, 280 Ga. App. 15, 17 (2006) (*citing* ***Brown v. State***, 274 Ga. 31, 33-34 (2001)). While Plaintiff may argue that the reports go to notice, she would have to demonstrate Defendant's awareness of those reports or the underlying facts, which she cannot do.

Finally, even if any prior incidents were marginally relevant and even if they weren't hearsay, evidence of unrelated crimes and incidents should be excluded under Rule 403 because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. Admission of such evidence invites prejudice, as it encourages jurors to rule based on their perception of the property as "bad", as opposed to whether Plaintiff has proved the elements of her claim.[7]

---

[6] Admittedly, a few of the police reports in Plaintiff's collection indicate that the police spoke to someone employed by the hotel. Nevertheless, said reports do not necessarily make it clear what information was known to said employees.

[7] As noted, Plaintiff's assortment of incident reports include those that relate to events occurring well past Plaintiff's alleged trafficking period, which, according

### ***3. Online Reviews and Complaints.***

Plaintiff has produced an assortment of online reviews/complaints which purport to be from prior guests of the hotel, which range in dates from well before to wall after her alleged trafficking period. As noted below, Defendant seeks to exclude all evidence, testimony, and argument concerning these reviews for various reasons.

First, the reports reference activity which is neither trafficking nor substantially similar to trafficking. For example, a review dated July 30, 2021 stated: "There was loud music and an obvious drug problem going on. We actually witnessed a man smoking something out of a glass pipe." ***Exhibit "C"***. In another, dated August 21, 2021, "Don" wrote: "…we were actually propositioned on our way to the room …" ***Exhibit "D"***. Other reviews include descriptions of activities which, while unsavory, are not even criminal in nature. For example, on August 10, 2021, someone wrote: "Horrible place, condoms and fresh stains on bed spread." ***Exhibit "E"***. In an August 5, 2021, review, a person complained about "homeless people near the driveway entrance", "young men and women hanging around the bannisters", and stated the "location looks like a trap house

---

to Plaintiff, ended in July 2021. Those incident reports which post-date Plaintiff's alleged trafficking should be excluded for the additional reasons set forth in Defendant's Motion in Limine No. 1. Moreover, in order to be substantially similar, unrelated crimes must be temporally related to the crime at issue. ***TGM Ashley Lakes***, 264 Ga. App. at 463, ***(citing Sturbridge Partners v. Walker***, 267 Ga. 785, 786 (1997)).

(drug location)." ***Exhibit "F"***. As with the police reports, reviews which reference unrelated or dissimilar criminal or unsavory activity (even prostitution) are irrelevant, and they should therefore be excluded.

Second, a great many of these reviews either pre or post-date Plaintiff's alleged trafficking period. As noted above, Plaintiff contends her trafficking began in January of 2020 and ended in July of 2021 – with gaps in between. Yet, the reviews collected by Plaintiff include those which stretch behond this date. See ***Exhibit "G"*** (from 2014), ***Exhibit "H"*** (from 2016), ***Exhibit "I"*** (from 2017), ***Exhibit "J"*** (from 2022), ***Exhibit "K"*** (from August, 2021). Reviews and complaints which do not correspond with Plaintiff's trafficking period are not relevant to the issues at bar – they are unrelated to Plaintiff's trafficking (and, thus, irrelevant to her TVPRA claim) and, because they are temporally unrelated to her trafficking, they are not substantially similar to the crime at issue (and, thus, irrelevant to her negligence claim).

Third, guest reviews are out-of-court statements offered for the truth of the matters asserted therein and are therefore inadmissible hearsay under Rule 802. *See* ***ADT LLC v. Alarm Prot. LLC***, 2017 U.S. Dist. LEXIS 70479, *7-8 (S.D. Fla. May 9, 2017); ***Moon v. Advanced Med. Optics, Inc.***, 2010 U.S. Dist. LEXIS 149685, *9-10 (N.D. Ga., Dec. 29, 2010) (internal cites omitted). Plaintiff will, no doubt, argue that many of the reviews contain purported responses from a hotel

employee, and claim that the reviews are admissible – not for the truth of the matter asserted – but for notice.[8] Any such argument should be rejected.

One may not avoid the implications of the hearsay rule simply by claiming "notice", where it is clear that the intent is show the truth of the matters contained in the documents. ***Moon***, 2010 U.S. Dist. LEXIS 149685 at *9-10 (internal cites omitted); *see also* ***Davis v. BOJ of WNC, LLC***, 2023 U.S. Dist. LEXIS 161468, *15 (S.D. Ga. Sept. 12, 2023). Here, the authors of these reviews are anonymous, they cannot be cross-examined, and it is impossible to know what, specifically, they observed on the property which gave rise to their complaint. Thus, it is likewise impossible to know what "notice" was provided to hotel staff by any particular review. When a person claims there were "prostitutes" on the property, what drove their conclusion? Did he or she simply assume that based on the appearance of other, unidentified individuals? If so, what was it about those individual's appearance that drove his or her suspicion? This is why, before

[8] Tony Tran, the owner of Lincoln Bancorp, did recall hearing about one or two specific incidents, but, he testified at his deposition that he did not regularly monitor public online reviews. *See* Tran Depo. Trans., pp. 137, 142, 147, attached at ***Exhibit "L"***. He further testified that the hotel did not have sufficient staff to manage public reviews, stating: "We don't have enough people to go and manage the review" and "We don't have time to look into that." ***Id.***, p. 138-39. He clarified that the hotel responded to complaints submitted through the Wyndham system, but "not like Google review, things like that." ***Id***. Thus, it is possible Plaintiff may be able to establish Defendant's knowledge of select reviews, but that is Plaintiff's burden to meet, along with showing that those known reviews are otherwise relevant and admissible.

evidence of prior incidents or occurrences may be offered to show "a defendant's notice of a particular defect or danger, the magnitude of the defect or danger involved, [or] the defendant's ability to correct a known defect … the proponent of such evidence must show that conditions substantially similar to the occurrence [at issue in the litigation] caused the prior accidents." ***Moon, supra*** (internal cites omitted).[9]

Fourth, even if the reviews were to fall into a hearsay exception and had some probative value, that value is substantially outweighed by the risk of prejudice, and they should be excluded under Rule 403. Again, providing the jury with evidence of unrelated incidents involving criminal activity simply invites the jurors to base their decision on whether the hotel was "good" or "bad", as opposed to whether Plaintiff satisfied the elements of her claims.

***4. The Trafficking of T.H., N.N. and D.B.***

T.H., N.N., and D.B. are plaintiffs in separate, pending lawsuits against Lincoln Bancorp which arise out of their own alleged trafficking at the Super 8. While these cases involve the same hotel, each plaintiff's case is unique. All four

[9] In addition, those responding to the reviews are typically unidentified. *See, e.g.*, ***Exhibits "C"*** and ***"M"***. And, unless the Plaintiff can show that the "unidentified person was an employee or agent of the clinic acting within the scope of her employment", the responsive statement is itself hearsay.

women claim to have been trafficked by separate and distinct traffickers[10], they have different stories of how they came to be trafficked at and eventually left the Super 8, and they were present at the hotel at different times.[11] Nevertheless, Defendant anticipates that Plaintiff intends to call T.H., N.N. and/or D.B. to testify at trial hearing. For the reasons set forth below, any such testimony or evidence should be excluded.

*A. Background.*

J.R. alleges that she was trafficked at the Super 8 in 2020 and 2021 by three traffickers, and she contends that particular hotel employees personally observed her during this time. T.H. and N.N., however, were not witnesses to those events.[12]

T.H. alleges that she was trafficked at the Super 8 by a different individual during a comparatively brief stay. *See* T.H.'s Depo. Trans., pp. 11, 20-21, attached at ***Exhibit "N"***. And, though she testified that housekeepers entered her room each

[10] J.R. contends she was trafficked by two unidentified individuals she knew only as "Goose" and "Scar" and that a female, named Nachelle Clark, assisted her traffickers. None of the other claimants allege to have been trafficked by these individuals.

[11] T.H. alleges she was trafficked at the Super 8 for approximately one week in late April 2020 through May 6, 2020. D.B. alleges she was trafficked from August 2020 through December 2020. N.N. alleges she was trafficked from January 2021 through March 25, 2021, and again for approximately one week in May 2021. As noted above, J.R. alleges she was trafficked from January through March 2020, from April through May of 2020, and from June through July or 2021.

[12] Plaintiff D.B. has yet to be deposed. Discovery in that case is ongoing, and her deposition is currently set for September 2nd.

day, she testified that she never spoke to them. ***Id.***, pp. 28-29, 55. T.H. did not identify the employees alleged in J.R.'s Complaint, did not testify that she reported her trafficking to any hotel employee, and did not identify J.R. or J.R.'s alleged traffickers. ***Id.***, pp. 28-30, 49-51. Instead, T.H. proposes to describe her own alleged trafficking and her impression that prostitution was widespread at the hotel. For example, T.H. estimated that "at least 80 percent" of the hotel was occupied by persons selling sex, even though she testified that she did not identify any other persons she believed were pimps or traffickers. ***Id.***, pp. 53-54.

N.N.'s proposed testimony is even more problematic. N.N. ***now*** contends she was trafficked at the Super 8 by an individual known as Milton or Slim. But, in sworn testimony given on May 11, 2022, N.N. repeatedly testified to precisely the opposite. When asked about the Super 8, N.N. testified: "And for that time frame when I was at Super 8, I didn't have a trafficker." *See* N.N. Depo. Trans. (May 11, 2022), p. 72, attached at ***Exhibit "O"***. She stated further:

> Q. "But nobody was trafficking you or you weren't reporting to anyone or no one was controlling you at the Super 8?"
>
> A. "No, sir."
> . . .
>
> Q. "Just to be clear, you didn't have a pimp at Super 8?"
>
> A. "No, sir."
>
> Q. "Okay. You didn't have a trafficker at Super 8?"

A. “No, sir.”

Q. “You were doing that voluntarily?”

A. “It wasn’t voluntarily. It was more like a survival thing.”

Q. “No one was making you do it?”

A. “No, sir.”

***Id.***, pp. 72-73. And, later, she again testified: “So when I was at the Super 8, I was — I wasn’t getting trafficked by anybody, but I didn’t have anywhere to go, so it was more like a survival thing.” ***Id.,*** p. 105.

N.N. now admits that those were her prior sworn statements. In an April 2026 deposition, counsel identified the prior testimony as statements that she “did not have a trafficker,” “did not have a pimp,” and that “nobody was forcing you or coercing you.” N.N. acknowledged, “yes, I did say that,” but N.N. now contends she just did not understand until approximately 2024 that Milton had been trafficking her. *See* N.N. Depo. Trans. (April 30, 2026), pp. 34-35, attached at ***Exhibit “P”***.

*B. Argument.*

1. The witnesses’ separate alleged trafficking episodes have, at most, limited relevance to the issues the jury must decide concerning J.R.

As noted above, the Eleventh Circuit has made clear that the TVPRA requires proof specific to each plaintiff. *See* ***Doe #1***, ***supra***. Evidence that other

individuals may have been trafficked at the same hotel does not establish that Defendant participated in a venture with *J.R.'s* traffickers or that Defendant had actual or constructive knowledge of *J.R.'s* trafficking. Moreover, evidence of other occurrences offered to prove foreseeability (and, thus, establish a duty under Georgia law) must be similar to the crime at issue – and known to the Defendant. *See* ***Carmichael, supra***.

Here, Plaintiff's own Complaint identifies the evidence relevant to Defendant's alleged knowledge of J.R.: J.R.'s interactions with hotel employees, her alleged traffickers' relationship with employees, the traffic to J.R.'s rooms, housekeeping observations in J.R.'s rooms, and an employee who allegedly knew J.R. was being sold for sex. T.H. and N.N. do not provide evidence about those events. They were allegedly trafficked by different individuals, under different circumstances, and neither claims to have witnessed J.R.'s trafficking. Thus, whatever marginal relevance T.H.'s or N.N.'s experiences might have to general conditions at the hotel, their separate trafficking narratives do not establish that Defendant participated in J.R.'s trafficking venture or that Defendant should have been aware of the risk of trafficking at the Super 8.

2. <u>Any marginal probative value is substantially outweighed by prejudice, confusion, and the need for collateral mini-trials.</u>

Rule 403 is particularly important here. To permit Plaintiff to prove J.R.'s case by presenting three additional women to tell the jury that they too were

trafficking victims at the Super 8 would inevitably shift the trial from whether Defendant is liable for J.R.'s trafficking to whether the Super 8 was generally a "trafficking hotel." That inference is exceptionally prejudicial. Emotional testimony from multiple alleged trafficking victims risks encouraging the jury to impose liability because bad things happened to multiple women at the property, rather than because Plaintiff proved the elements of her own claims.

Such evidence would also require Defendant to conduct collateral trials within this one, as Defendant would necessarily be entitled to explore:

- who allegedly trafficked T.H. and N.N.;
- what coercion each allegedly experienced;
- when and for how long each was present;
- which employees each allegedly encountered;
- what those employees actually observed;
- whether their circumstances resembled J.R.'s; and
- in N.N.'s case, whether she was trafficked at the Super 8 **at all**.

That collateral litigation is precisely the type of confusion, undue delay, and unfair prejudice Rule 403 permits the Court to prevent.

3. The problem is particularly acute as to N.N. because her current testimony directly contradicts her repeated prior sworn testimony.

N.N.'s testimony in particluar presents an extraordinary Rule 403 problem. Plaintiff presumably intends to present N.N. to this jury as another victim of trafficking at the Super 8. But, that foundational proposition is itself disputed by N.N.'s own prior sworn testimony. This is not a minor inconsistency concerning dates or details. As noted, N.N. repeatedly testified that she had no trafficker, no pimp, that nobody was controlling her, and that she "wasn't getting trafficked by anybody" while at the Super 8. She now says the opposite. If N.N. is allowed to testify that she was another trafficking victim, Defendant must be permitted to introduce those prior sworn statements, which are admissible substantively under Rule 801(d)(1)(A), and to demonstrate why N.N.'s newly asserted characterization is incorrect. The jury would then have to decide, not only J.R.'s case, but also the threshold question whether N.N. herself was trafficked.

That sideshow has little legitimate value in determining Defendant's liability to J.R. and creates precisely the risk of confusion and undue consumption of time contemplated by Rule 403.[13]

---

[13] There is an additional problem with the proposed testimony of T.H. and N.N. Both witnesses have expressed conclusions regarding what hotel employees supposedly "knew." Rule 602 limits a witness to matters within her personal knowledge, while Rule 701 permits lay opinions only when rationally based upon the witness's own perception. Fed. R. Evid. 602, 701. The jury may hear admissible facts concerning what a witness personally saw or heard and draw its own inference regarding knowledge; a lay witness cannot simply substitute her conclusion regarding another person's mental state for the jury's determination.

***5. News Media Reports Related to the Super 8.***

Plaintiff has collected various news reports related to the Super 8, and Defendant anticipates Plaintiff may attempt to introduce them, or elicit testimony regarding them, at trial. *See*, for example, ***Exhibits "Q"*** and ***"R"***. However, newspaper articles and media reports are out-of-court statements offered for the truth of the matters asserted and are therefore inadmissible hearsay. *See* ***United States v. Baker***, 432 F.3d 1189, 1211–12 (11th Cir. 2005).

Plaintiff may argue that media reports are offered not for the truth of their contents but to show "notice" to Defendant, but this argument fails for multiple reasons. First, Plaintiff has not established knowledge of the reported incidents. Second, as noted above, Plaintiff's TVPRA claim turns on whether Defendant possessed actual or constructive notice as to J.R. and whether it participated in a venture that violated the TVPRA as to her, and generalized media reports about unrelated events are, thus, irrelevant. Third, as for Plaintiff's negligence claim, articles about unrelated events at different times do not establish foreseeability of J.R.'s trafficking. Fourth, and finally, even if offered for "notice," the limited probative value of media reports is vastly outweighed by their prejudicial effect under Rule 403.

### *6. Louis Vu "Pleading the Fifth".*

Defendant moves in limine to prohibit Plaintiff from playing, quoting, referencing, or commenting upon former employee Louis Vu's purported invocation of the Fifth Amendment during his deposition. The circumstances surrounding Vu's invocation demonstrate that it provides no reliable basis for an adverse inference against Defendant and that any minimal probative value is substantially outweighed by the danger of unfair prejudice and misleading the jury. *See* Fed. R. Evid. 403; ***Coquina Invs. v. TD Bank, N.A.***, 760 F.3d 1300, 1310–12 (11th Cir. 2014).

Mr. Vu's attempted invocation of the Fifth Amendment was procedurally improper, and, thus, Plaintiff cannot use Vu's later refusal to answer as though it constituted evidence contradicting his earlier testimony.

Mr. Vu was deposed on April 1, 2026. For approximately eighty pages, Vu answered Plaintiff's attorney's questions concerning his employment at the Super 8, hotel practices, police activity, and his knowledge of prostitution and sex trafficking at the hotel. At the time he first stated "I will take my Fifth," counsel had asked: "Was it common to see young girls at the Super 8?" ***Exhibit "S"***, pp. 85-86. Mr. Vu partially answered: "No. Sometime they -- they come with different guests, you know, a group of three or four people. How do I know, you know, they a family or they related to each other?" – and then abruptly stated "I

will take my Fifth. I'm tired." ***Id.***, p. 86. Mr. Vu then reiterated he wanted to assert the fifth, because he had worked all night and was tired. ***Id.*** Mr. Vu also plead the fifth a couple of minutes later when asked whether he knew there was sex trafficking or prostitution at the hotel, stating he did not want to answer any more questions. ***Id.***, p. 89.

These appear to have been blanket refusals to continue testifying, rather than an assertion of the privilege directed at a specific question, which does not properly invoke fifth amendment protection. Rather, under federal common law; the privilege must be asserted on a question-by-question basis. ***See National Life Insurance Co. v. Hartford Accident & Indemnity Co.***, 615 F.2d 595, 597-99 (3rd Cir. 1980). Indeed, Plaintiff's own counsel acknowledged that Mr. Vu could not simply issue a blanket invocation, stating: "my understanding is that you would have to say that you're taking the Fifth to every question." ***Exhibit "S"***, pp. 86-87. And, after Mr. Vu attempted to invoke the fifth, the deposition continued and he responded to additional questions. ***Id.***, pp. 88-93.

Even if Mr. Vu had adequately pled the Fifth, he waived the privilege by voluntarily answering questions on the very same subjects. Mr. Vu confirmed that police told him about "suspicious activity involving young girls at the Super 8," that police brought him to the station and questioned him about it, that he saw younger girls at the location but he did not pay close attention, because he was

unable to distinguish them from "regular guests". ***Id.***, pp. 76-77, 84-86. When he invoked in response to the question of whether it was "common to see young girls at the Super 8" (***id.***, p. 86), that question was materially indistinguishable from those he had already answered. The same is true in regard to his knowledge of sex trafficking and prostitution. Mr. Vu answered "no" when asked whether he had suspicions that sex trafficking or prostitution was happening at the hotel or whether he ever saw anything that "looked like" prostitution or trafficking. ***Id.***, pp. 52-55, 70. And, while he later invoked the Fifth when asked whether he "did not know that there was sex trafficking or prostitution at the Super 8" (***id.***, p. 89), this was the same question he had already answered multiple times.

Thus, Mr. Vu did not adequately plead the Fifth and his substantive testimony controls, which means that the only purpose behind admitting Mr. Vu's attempt to plead the Fifth is for its negative impact – not upon Louis Vu – but upon Defendant.

Although an adverse inference may sometimes be drawn in a civil case from the invocation of the Fifth Amendment, the rule is materially different where, as here, the individual invoking the privilege is **a** nonparty witness. In ***Coquina Investments v. TD Bank, N.A.***, the Eleventh Circuit expressly recognized the danger of allowing a nonparty's invocation to be used against a civil litigant. 760 F.3d 1300, 1311–12 (11th Cir. 2014). A nonparty may invoke the privilege for

reasons having little or nothing to do with the truth of the proposition for which the invocation is offered, making any resulting inference potentially inaccurate and unfair. ***Id.*** Even if Vu's purported invocation possessed some relevance, the phrase "plead the Fifth" carries an obvious and substantial risk that jurors will assume Mr. Vu possessed incriminating information concerning prostitution or trafficking at the hotel. Plaintiff would thus be able to suggest, without evidence, that Vu's silence demonstrates guilty knowledge attributable to Defendant.

***7. "Reptile" Arguments.***

Defendant moves to exclude all statements, questions, and arguments designed to invoke the so-called "Reptile" trial strategy – that is, statements or arguments that characterize sex trafficking and/or Defendant's alleged acts or omissions as a threat or danger to the community or public at large and/or suggestions or directions that the jury "send a message" in order to "protect the community".

As the Court is no doubt aware, "Reptile" strategy derives from a plaintiff's trial manual entitled *Reptile: The 2009 Manual of the Plaintiff's Revolution* by David Ball and Don Keenan. The strategy encourages plaintiff's counsel to appeal to jurors' primal "survival instincts" by framing the defendant's conduct as a threat or danger to the community at large – including to the jurors themselves and their families. The purpose is to induce jurors to render a verdict not based on the

evidence and the applicable law, but based on fear that the defendant's conduct poses a continuing danger to the community unless the jury sends a "message" through its verdict.

A sex-trafficking case is particularly susceptible to this strategy given the significant media attention and strong public emotion surrounding the topic of human trafficking. Plaintiff's counsel may attempt to frame Lincoln Bancorp's alleged acts or omissions as a continuing danger to the community, suggesting, for example, that sex trafficking will continue to occur unless the jury hold Defendant liable, or that the jurors' own children could be at risk. Such arguments are designed to bypass rational deliberation and induce a verdict based on fear and emotion.

Rule 403 is designed to prevent precisely the type of emotional manipulation contemplated by the Reptile strategy. Such arguments are, by definition, designed to appeal to fears and emotions and to induce the jury to decide the case on a purely emotional basis – not based on the evidence and the law as instructed by the Court. The jury's role is to determine whether Plaintiff has proven her specific claims against Lincoln Bancorp by a preponderance of the evidence – not to serve as a community protection mechanism or to render a verdict based on the perceived social importance of combating sex trafficking generally.

Thus, Defendant respectfully requests that this Court enter an order prohibiting Plaintiff's counsel from making statements or arguments, including during voir dire, opening statement, examination of witnesses, and closing argument, that characterize sex trafficking and/or Defendant's alleged acts or omissions as a threat or danger to the community or public at large, that appeal to jurors' personal fears or survival instincts, or that suggest the jury should render a verdict to "protect" the community, "send a message," or prevent future harm to the public.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court grant each of Defendant's Motions in Limine Nos. 1 through 7 as set forth herein and exclude the specified evidence, testimony, and argument at trial.

Respectfully submitted, this 1st day of September, 2026.

**WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC**

*/s/ Christopher T. Byrd*
Christopher T. Byrd
GA Bar No. 100854
Shubhra R. Mashelkar
GA Bar No. 475388
Patrick B. Moore
GA Bar No. 520390

3344 Peachtree Road, N.E.
Suite 2400
Atlanta, Georgia 30326

(404) 876-2700
cbyrd@wwhgd.com
smashelkar@wwhgd.com

*Counsel for Defendant Lincoln Bancorp, LLC*

**RULE 7.1D CERTIFICATE OF TYPE, FORMAT AND FONT SIZE**

Under Local Rule 7.1D of the United States District Court for the Northern District of Georgia, the undersigned certifies that this submission to the Court was computer-processed, double-spaced between lines, and prepared with 14-point Times New Roman font.

*/s/ Christoher T. Byrd*
Christoper T. Byrd

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 1, 2026, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing by electronic mail to all counsel or parties of record:

Jonathan Tonge, Esq.
Patrick J. Mcdonough, Esq.
Jennifer Webster, Esq.
ANDERSEN, TATE & CARR, PC
One Sugarloaf Centre
1960 Satellite Blvd, Ste. 4000
Duluth, GA 30097
jwebster@atclawfirm.com
jtonge@atclawfirm.com
pmcdonough@atclawfirm.com

**WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC**

*/s/ Christopher T. Byrd*
Christopher T. Byrd
GA Bar No. 100854