UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| J.R.,<br><br>Plaintiff,<br><br>v.<br><br>LINCOLN BANCORP, LLC,<br><br>Defendant. | CIVIL ACTION FILE<br><br>NO. 1:25-cv-4629-JPB |

**PLAINTIFF'S MOTION IN LIMINE ABOUT JOINT-AND-SEVERAL LIABILITY AND PUNITIVE DAMAGES**

Congress enacted the TVPRA[1] "to combat trafficking in persons, a

[1] The original Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, 114 Stat. 1464, did not create a civil cause of action. Congress created a civil cause of action for victims of sex trafficking (as well as victims of forced labor and human trafficking) in 2003. Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108-193, sec. 4(a), § 1595, 117 Stat. 2875, 2878 (codified at 18 U.S.C. § 1595(a)). Since then, sex-trafficking victims have had the right to sue their perpetrators in federal court to "recover damages and reasonable attorneys fees." *Id.* In 2008, Congress amended § 1595 to allow sex-trafficking victims to sue those who knowingly benefit from their sex trafficking. William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, § 221(2), 122 Stat. 5044, 5067 (codified at § 1595(a)).

But Congress made other changes in 2008 that drastically expanded the civil cause of action. For example, Congress enlarged the category of "perpetrators"—changing it from violators of only §§ 1589, 1590, or 1591 to violators of any provision in Chapter 77 of Title 18. *Id.* That's significant because Congress also added a provision criminalizing "conspiracy" to commit sex trafficking, *id.* § 222(c), 122 Stat. 5070 (codified at 18 U.S.C. § 1594(c)), added "maintains" to the list of acts ("recruits, entices, harbors, transports, provides, or obtains") that can constitute criminal sex trafficking, *id.* § 222(5), 122 Stat. 5069 (codified at 18 U.S.C. § 1591(a)(1)), and added "reckless disregard" as a culpable state of mind for criminal sex trafficking,

contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." Pub. L. No. 106-386, § 102(a), 114 Stat. 1464, 1466. Twenty-six years later, there is still much work to be done to eliminate the scourge of sex trafficking.

For years, Super 8[2] provided a place for the sellers and buyers of girls and women for sex to do so. J.R. sued Super 8 for its role in her sex trafficking (seeking damages and attorney's fees) and to punish and deter Super 8 for benefiting while turning a blind eye (or worse) to her sex trafficking (punitive damages).

The TVPRA civil-liability statute, 18 U.S.C. § 1595(a), empowers J.R. to pursue these dual goals of compensation and punishment. And it ensures that J.R. can, if she prevails, achieve these goals by making liability for TVPRA civil damages joint and several and permitting sex-trafficking victims to pursue and receive punitive damages. But because the TVPRA civil-liability statute says nothing about joint-and-several liability or punitive damages, J.R. files this motion in limine.[3]

---

*id.* (codified at § 1591(a)). Congress also added a ten-year statute of limitations for civil claims. *Id.* § 221, 122 Stat. 5067 (codified at § 1595(c)).

In the years since 2008, Congress has changed the TVPRA civil-action statute. At every turn, those changes enlarged the rights of sex-trafficking victims. Similarly, Congress's changes to the criminal TVPRA provisions since 2008 have been to criminalize more misconduct.

[2] Plaintiff refers to Defendant Lincoln Bancorp, LLC as "Super 8."

[3] J.R. also sued Super 8 under Masha's Law, 18 U.S.C. § 2255. To streamline the trial, she drops that claim.

Congress intended TVPRA civil liability to be joint and several. To determine the kind of liability Super 8 has for J.R.'s damages under the TVPRA, the Court must look to the general common law of torts. *E.g.*, *Staub v. Proctor Hosp.*, 562 U.S. 411, 417 (2011). The answer is that Super 8 is jointly and severally liable. *See Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 163 (2003). That's what the first court to consider the issue decided. *See W.K. v. Red Roof Inns, Inc.*, No. 1:20-cv-5263, 2024 WL 2892322, at *1 (N.D. Ga. June 10, 2024) (Calvert, J.) ("Damages under the TVPRA are joint and several." (bold omitted)). And the second. Order at 3, *J.G. v. Northbrook Indus., Inc.*, No. 1:20-cv-5233 (N.D. Ga. July 2, 2025) (Geraghty, J.), ECF No. 204. And the third. Order, *Jane Doe K.R. v. Choice Hotels*, No. 6:23-cv-1012 (M.D. Fla. Oct. 17, 2025), ECF No. 229. This Court should do so too.

J.R. asks this Court to hold that TVPRA liability is joint and several. In a separate motion, J.R. asks this Court to hold that Super 8's liability for her Georgia claims is joint and several. Because Super 8's liability is joint and several for J.R.'s claims under both federal and state law, the jury should not be bombarded with evidence about the potential liability of other parties, including nonparty traffickers or hotels. *See* Fed. R. Evid. 401, 402 & 403.

## ARGUMENT AND CITATION OF AUTHORITY

### I. Super 8 is jointly and severally liable under the TVPRA.

Under the TVPRA, Super 8 is jointly and severally liable for J.R.'s damages.

That conclusion follows from the TVPRA's statutory text and structure and reflects the general common law of torts.

### A. The TVPRA's statutory text and structure show that Congress intended Super 8's civil liability to be joint and several.

In 2008, Congress drastically expanded § 1595 to allow sex-trafficking victims to sue those who knowingly benefited from their being sex trafficked. *See supra note 1*. "Participation in a venture," an essential part of a TVPRA beneficiary claim, means "taking part in a common undertaking or enterprise involving risk and potential profit." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021). So Congress knew that a beneficiary claim necessarily required others' involvement to trigger liability. *See K.M. v. Reva Props., LLC d/b/a Super 8*, No. 1:22-cv-3991, 2024 WL 1217420, at *2 (N.D. Ga. Mar. 21, 2024) (Thrash, J.). Yet Congress said nothing about apportionment in § 1595. At the same time, no court has ever allowed apportionment for a TVPRA beneficiary claim. Given all that, Judge Thrash recently concluded that "[i]t would be surprising if civil beneficiary defendants have always been permitted to apportion their damages to nonparties but have never attempted to do so." *Id.*

To Judge Thrash, Congress's failure to mention apportionment in § 1595 when adding beneficiary claims—even though "it was foreseeable that others would be involved in these claims"—was especially telling since the TVPRA's restitution

statute "plainly does allow for apportionment." *Id.*[4] Indeed, as Judge Thrash emphasized, "[i]t would also be surprising that Congress intended to permit apportionment without saying so"—especially "since allowing civil beneficiary defendants to apportion fault to traffickers, individuals who sexually assault victims, and other beneficiaries would drastically undermine the effect of the civil beneficiary provision." *Id.*

In 2024, Judge Calvert agreed with Judge Thrash in the first order directly ruling on whether the TVPRA civil-liability statute makes liability joint and several. Rejecting Red Roof's argument, Judge Calvert "note[d] that apportionment would frustrate the purpose of the TVPRA's civil beneficiary provision." *W.K.*, 2024 WL 2892322, at *2.[5] Quite so. In July 2025, Judge Geraghty granted a motion in limine

---

[4] The restitution statute requires judges to order restitution to be "issued and enforced in accordance with section 3664." 18 U.S.C. § 1593(b)(2). And 18 U.S.C. § 3664(h) permits courts to "make each defendant liable for payment of the full amount of restitution" or "apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant."

[5] Judge Land in the Middle District of Georgia reached a similar conclusion when addressing the applicability of the Georgia apportionment statute to federal civil-rights claims under 42 U.S.C. § 1983. Judge Land held that the Georgia statute did not apply. *Wright v. Watson*, No. 4:15-cv-34, 2017 WL 4126981, at *1 (M.D. Ga. Sept. 18, 2017) (Land, C.J.).

He gave two reasons. *First*, the Eleventh Circuit and the former Fifth Circuit have held that liability for § 1983 damages is joint and several. *Id.* at *2 (collecting cases). *Second*, the Georgia apportionment statute's mandate that the jury consider the fault of the persons or entities who contributed to the plaintiff's injuries and damages—"regardless of whether the person or entity was, or could have been, named as a party to the suit," *id.* at *3 (quoting O.C.G.A. § 51-12-33(c))—contravened two important

on this precise issue and barred apportionment argument at trial. Order at 3–5, *J.G. v. Northbrook Indus.* (N.D. Ga. July 2, 2025).

Congress allows apportionment for TVPRA restitution orders. But despite amending § 1595 four times since 2003, Congress has never added anything about apportionment. That omission is presumed to be intentional and purposeful. For "it is a general principle of statutory construction that when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Barnhart v. Sigmon Coal Co.*, *534* U.S. 438, 452 (2002) (citation modified) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). So that omission reveals Congress's intent and purpose to make TVPRA civil liability joint and several.

**B. Super 8's civil liability under the TVPRA is joint and several under the general common law of torts.**

Federal legislation does not occur in a vacuum. When Congress creates a new

---

policies underlying § 1983 actions: (1) "compensation of persons injured by deprivation of federal rights," *id.* at *2 (quoting *Est. of Gilliam ex rel. Waldroup v. City of Prattville*, 639 F.3d 1041, 1045 (11th Cir. 2011)); and (2) "prevention of abuses of power by those acting under color of state law," *id.* at *2 (quoting *Est. of Gilliam*, 639 F.3d at 1046–47).

As Judges Thrash and Calvert have noted, a similar anomalous result would occur if the Georgia apportionment statute were applied to TVPRA civil claims. *See K.M.*, 2024 WL 1217420, at *2; *W.K.*, 2024 WL 2892322, at *2.

tort action, it does so against the general common law of torts. *Staub v. Proctor Hosp.*, 562 U.S. 411, 417 (2011); *see also Meyer v. Holley*, 537 U.S. 280, 285 (2003) (holding that "ordinary tort-related vicarious liability rules" apply to discrimination claim under Fair Housing Act that was "in effect, a tort action"). When necessary, the general common law of torts will be "modifi[ed] or adapt[ed] . . . to carry out the purpose and policy of the statute." *Smith v. Wade*, 461 U.S. 30, 34 (1983). But for Congress "to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law." *United States v. Texas*, 507 U.S. 529, 534 (1993) (quoting *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978)).[6]

For torts, the traditional damages rule is joint-and-several liability—not apportionment. *See Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 163 (2003) ("The conclusion that the FELA [Federal Employers' Liability Act] does not mandate apportionment is also in harmony with this Court's repeated statements that joint and several liability is the traditional rule.").[7] "A creature of tort law, joint and several

[6] *See also Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) ("Congress is understood to legislate against a background of common-law adjudicatory principles. Thus, where a common-law principle is well established, . . . the courts may take it as given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident." (citation modified)).

[7] The Supreme Court was unpersuaded by Norfolk's claim that "the modern trend is to apportion damages between multiple tortfeasors." 538 U.S. at 164. In rejecting that claim, the Court noted that some states still retain "full joint and several liability" and "even more" have it in certain instances. *Id.* The Court also emphasized that

liability 'applies when there has been a judgment against multiple defendants.'" *Honeycutt v. United States*, 581 U.S. 443, 447 (2017) (quoting *McDermott, Inc. v. AmClyde,* 511 U.S. 202, 220–21 (1994)).[8] "If two or more defendants jointly cause harm, each defendant is held liable for the entire amount of the harm; provided, however, that the plaintiff recover only once for the full amount." *Id.* at 447–48 (citing Restatement (Second) of Torts § 875 (1977)[9]).

### C. Federal courts often apply joint-and-several liability to federal causes of action.

Federal courts often apply the default rule of joint-and-several liability under the general common law of torts to federal causes of action.

#### i. Civil-rights actions under 42 U.S.C. § 1983.

The Supreme Court has long found that § 1983 comprises "'a species of tort

---

most states which have moved "away from the traditional rule" did so by "legislative enactments rather than judicial development of common-law principles." *Id.* at 164–65. Not treating new legislative developments as expressions of the "common law" makes sense because legislation of common-law topics is often said to abrogate the common law. *Cf. FDIC v. Loudermilk*, 826 S.E.2d 116, 129 (Ga. 2019) ("Georgia's apportionment statute, OCGA § 51-12-33, did not abrogate Georgia's common-law rule imposing joint and several liability on persons who act in concert.").

[8] To be clear, joint-and-several liability also applies when judgment is entered against one defendant for damages caused by the defendant and one or more non-parties. *See The Atlas*, 93 U.S. 302, 306 (1876) ("An innocent party, injured by the co-operative negligence of several persons, can sue them jointly or severally, and recover from either compensation for the injury done by all.").

[9] "Each of two or more persons whose tortious conduct is a legal cause of a single and indivisible harm to the injured party is subject to liability to the injured party for the entire harm." Restatement (Second) of Torts § 875 (1977).

liability' in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305–06 (1986) (quoting *Carey v. Piphus*, 435 U.S. 247, 253 (1978)). When constitutional-rights violations occur, "the level of damages is ordinarily determined according to principles derived from the common law of torts." *Id.* Under that general common law, § 1983 liability is joint and several. *See Finch v. City of Vernon*, 877 F.2d 1497, 1503 (11th Cir. 1989) (holding that the "federal rule of damages"—joint-and-several liability—was the right rule in a § 1983 action for wrongful discharge); *Goudy v. Cummings*, 922 F.3d 834, 843 (7th Cir. 2019) ("Section 1983 liability must be understood against the background of the ordinary principles of tort law, where joint and several liability is the norm.").[10]

**ii. Discrimination claims under the Fair Housing Act.**

Courts have often held that "federal law" governs "the availability of joint and several liability" under the Fair Housing Act. *Whyte v. Alston Mgmt., Inc.*, No. 10-cv-81041, 2012 WL 11789773, at *1 (S.D. Fla. Apr. 11, 2012) (collecting cases).

**iii. Federal Trade Commission Act and Telemarketing and Consumer Fraud and Abuse Prevention Act.**

In an action by the Federal Trade Commission related to a fraudulent

[10] When the defendant's liability is joint and several, a district court commits error by "distract[ing] the juror's attention by requiring it to allocate the degree of fault between the defendant and a non-party." *Ebanks v. Great Lakes Dredge & Dock Co.*, 688 F.2d 716, 722 (11th Cir. 1982).

telemarketing scheme, the Eleventh Circuit held that "joint and several liability was available." *Fed. Trade Comm'n v. WV Universal Mgmt., LLC*, 877 F.3d 1234, 1236 (11th Cir. 2017). The court found that joint-and-several liability can arise either from the defendant's participation in a "common enterprise" or by providing "substantial assistance" to another person violating the telemarketing regulations. *Id.* at 1239–40. In holding that "substantial assistance" justified joint-and-several liability, the court emphasized that wrong's "resemblance to a well-established torts concept": "aiding and abetting," which "can result in joint and several liability." *Id.* at 1240. "In tort, the aider-abettor is liable to the injured party 'for the entire harm.'" *Id.* at 1241 (quoting Restatement (Second) of Torts § 875 & cmt. a (1979)). "The Restatement's pedigree on this topic," the court emphasized, "is well established." *Id.* at 1240 n.2.

### D. Courts routinely apply the general common law of torts to establish the rule of decision under the TVPRA.

In 2024, Judge Calvert held that "[d]amages under the TVPRA are joint and several." *W.K.*, 2024 WL 2892322, at *1 (bold omitted). Last year, Judge Geraghty agreed. While those cases squarely address the issue of joint-and-several liability under the TVPRA, courts across the country—including this Court—routinely answer other questions on which the TVPRA is silent using the general common law of torts. Two recurring questions concern (1) punitive damages and (2) vicarious liability and agency law.

**i. Punitive damages.**

The TVPRA civil-liability statute says that victims of TVPRA violations can recover "damages and reasonable attorneys fees" in a civil action. § 1595(a). Punitive damages are not mentioned. So are they available? According to *every* court to consider the issue, the answer—based on the general common law of torts—is yes.

The Ninth Circuit was the first circuit to consider this question. The court found that the meaning of "damages" is "ambiguous: it could refer to compensatory damages, punitive damages, nominal damages, or some combination of the three." *Ditullio v. Boehm*, 662 F.3d 1091, 1096 (9th Cir. 2011). On the question of available remedies, the Supreme Court has held that "absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute." *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 70–71 (1992), *quoted in Ditullio*, 662 F.3d at 1096.

To resolve the ambiguity and interpret "damages" in § 1595(a), the Ninth Circuit used "common law principles."[11] *Id.* at 1098. The common law was the right place to look for guidance because "[t]he Supreme Court has looked to the common law to determine the remedies available under federal statutes creating causes of action sounding in tort." *Id.* at 1097. Relying on the Restatement (Second) of Torts

[11] The Ninth Circuit interpreted the 2003 version of the TVPRA.

§ 908 (1979) to understand the "common law of torts," the court noted that punitive damages in tort actions are "awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future." *Id.* at 1096–97.[12] Based on the background "common law principles" of torts and the "general rule" of *Franklin* authorizing the court to award "any appropriate relief" for a federal claim, the Ninth Circuit held that "punitive damages are available under 18 U.S.C. § 1595." *Id.* at 1098.

Since *Ditullio*, two other circuits have addressed the availability of punitive damages under § 1595(a). Both the Second and Tenth Circuits agreed with the Ninth Circuit—and did so without reservation. *See Moore v. Rubin*, 160 F.4th 271, 299 (2d Cir. 2025) ("The Ninth Circuit's reasoning that courts should apply principles of common law to determine whether punitive damages are an appropriate remedy under federal statutes authorizing private actions grounded in tort law is persuasive. . . . [W]e hold that the TVP[R]A authorizes punitive damages . . . ."); *Francisco v.*

[12] For over forty years, the Supreme Court has looked to this same section of the Restatement (Second) of Torts to define when punitive damages are available. "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive *or his reckless indifference to the rights of others*." *Smith v. Wade*, 461 U.S. 30, 46–47 (1983) (quoting Restatement (Second) of Torts § 908(2); and citing *id.* cmt. b). Section 908(2) goes on to provide, "In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant."

*Susano*, 525 F. App'x 828, 835 (10th Cir. 2013) ("We thus agree with the only other circuit to address the matter and hold punitive damages to be available under § 1595."). Other circuits have also affirmed punitive-damages awards for TVPRA victims without having to address the availability of such damages. *See Warfaa v. Ali*, 1 F.4th 289, 293, 296 (4th Cir. 2021) (affirming $100,000 punitive-damages award under § 1595 without separately addressing availability); *Roe v. Howard*, 917 F.3d 229, 238 (4th Cir. 2019) (affirming $2 million punitive-damages award under § 1595 without separately addressing availability); *accord Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 206 (5th Cir. 2017) (distinguishing the TVPRA from Iraqi law because "the TVPRA authorizes punitive damages").

Federal district courts around the country likewise agree, including the Northern District of Georgia. *See, e.g.*, *J.G. v. Northbrook Indus., Inc.*, No. 1:20-cv-5233, 2025 WL 1899683, at *3 (N.D. Ga. July 9, 2025) (Geraghty, J.) (holding that "punitive damages are available for civil beneficiary claims brought pursuant to 18 U.S.C. § 1595(a)"); *Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1175 (D. Kan. 2018) (holding that "plaintiff deserves to recover punitive damages under the TVPRA and state human trafficking laws"); *Carazani v. Zegarra*, 972 F. Supp. 2d 1, 26 (D.D.C. 2013) ("Where federal statutes sounding in tort are silent on the availability of punitive damage, courts look to common law principles to determine the scope of remedies. . . . Punitive damages are therefore available under the TVPA.").

In the PTO, it's unclear whether Super 8 is challenging the availability of punitive damages under the TVPRA. If that question remains open, J.R. asks the Court to hold that punitive damages are available for civil-beneficiary TVPRA claims and adopt the standard in the Restatement (Second) of Torts § 908(2).

**ii. Vicarious liability.**

The TVPRA says nothing about vicarious liability or agency law. To answer whether the TVPRA permits vicarious liability and under what principles, courts around the country have applied the general common law of agency. *See, e.g.*, *Treminio v. Crowley Mar. Corp.*, 649 F. Supp. 3d 1223, 1232 (M.D. Fla. 2023) ("Indeed, '[w]hile the TVPRA is silent on the issue of indirect liability, numerous district courts have rejected the argument that the TVPRA does not permit agency liability.'" (quoting *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064–65 (D. Colo. 2021))); *T.E. v. Wyndham Hotels & Resorts, Inc.*, No. 2:22-cv-3185, 2023 WL 5531441, at *7 (S.D. Ohio Aug. 28, 2023) ("The TVPRA . . . does not address the issue of indirect or vicarious liability; therefore, federal district courts that have adjudicated this issue must apply common law to fill in the gaps."); *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-155, 2020 WL 3035794, at *1 (N.D. Cal. June 5, 2020) ("[T]he TVPRA is silent on the issue of indirect liability, which suggests that the federal common law of agency should apply." (citing *Meyer v. Holley*, 537 U.S. 280, 287–91 (2003))); *see also Ramsbottom v. Ashton*, No. 3:21-cv-272, 2022 WL

106733, at *18 (M.D. Tenn. Jan. 11, 2022) ("Federal common law applies when a court assesses alter-ego liability under a federal statutory scheme.").

This Court reached that same conclusion in denying Red Roof's motion for summary judgment in *H.B. v. Red Roof Inns, Inc.* Order at 20–23, No. 1:22-cv-1181 (N.D. Ga. June 17, 2024), ECF No. 158.

## CONCLUSION

Federal courts use the general common law to fill the gaps in the TVPRA's civil-remedy statute for questions about the availability of punitive damages and vicarious liability. Those answers provide substantive rules of decision that affect defendants' TVPRA civil liability. Given that, it would be "surprising" (to borrow Judge Thrash's word) if the same legal source—the general common law—did not provide the rule of decision about whether TVPRA civil liability is joint and several. J.R. thus asks the Court to hold that under the general common law of torts, Super 8's civil liability under the TVPRA is joint and several.

J.R. also asks the Court to hold, like every federal appellate court to consider the issue and other judges in this Court, that punitive damages are available under the TVPRA.

Respectfully submitted on September 1, 2026.

ANDERSEN, TATE & CARR, P.C.

*/s/ Rory A. Weeks*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491
rweeks@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile
*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

Under Local Rules 5.1(C) and 7.1(D), I hereby certify that this filing complies with the applicable font type and size requirements and is formatted in Times New Roman, 14-point font.

ANDERSEN, TATE & CARR, P.C.

*/s/ Rory A. Weeks*

PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491
rweeks@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile
*Attorneys for Plaintiff*