UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| J.R.,<br><br>Plaintiff,<br><br>v.<br><br>LINCOLN BANCORP, LLC,<br><br>Defendant. | CIVIL ACTION FILE<br>NO. 1:25-cv-04629-JPB |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF OR REFERENCE TO PLAINTIFF'S AND NONPARTY WITNESSES' UNRELATED CRIMINAL HISTORY, CONVICTIONS, AND POLICE REPORTS**

Defendant Lincoln Bancorp, LLC ("Lincoln Bancorp" or "Defendant"), by and through undersigned counsel, hereby files this Opposition to Plaintiff's Motion in Limine to Exclude Evidence of or Reference to Plaintiff's and Nonparty Witnesses' Unrelated Criminal History, Convictions and Police Reports [Dkt. 64] and requests that the Court deny the Motion in its entirety.

## INTRODUCTION

Plaintiff seeks a blanket pretrial ruling excluding criminal-history evidence, police reports, runaway and missing-person records, and law-enforcement encounters concerning Plaintiff J.R. and five nonparty witnesses. The motion indiscriminately sweeps together different witnesses, different evidence, and different potential uses under a single umbrella of exclusion.

Defendant does not contend that every arrest, charge, police report, or conviction identified in Plaintiff's motion is automatically admissible. But the opposite proposition—that all such evidence is inadmissible for every purpose—is equally incorrect and fundamentally at odds with the Federal Rules of Evidence. The admissibility inquiry depends on the particular evidence, the witness's testimony, and the purpose for which the evidence is offered.

That distinction is particularly important here. The records concerning J.R. bear directly on the chronology of her alleged trafficking, her contacts with law enforcement, statements she made during the relevant period, Plaintiff's expert opinions, and damages. As to T.H., D.B., and N.N., Plaintiff's motion targets post-trafficking criminal conduct. Defendant does not seek a blanket ruling admitting that evidence, but Plaintiff likewise should not obtain a blanket exclusion before those witnesses testify. Santana Phillips and Winkeisha Vanterpool, by contrast, are former hotel employees. Any qualifying convictions used to impeach them should be evaluated under Rule 609 in the ordinary course.

The solution is straightforward. The Court should deny Plaintiff's request for categorical exclusion and address admissibility, if and when necessary, in the context of the particular evidence, witness testimony, and purpose for which the evidence is offered. That approach preserves the Court's ability to make the

individualized assessment required by the Federal Rules of Evidence rather than excluding potentially admissible evidence in the abstract before trial.

## ARGUMENT

### I. PLAINTIFF'S MOTION SEEKS OVERBROAD PRETRIAL RULING.

#### A. Plaintiff Seeks Categorical Exclusion of an Undefined Universe of Evidence related to J.R.

Plaintiff refers generally to "certain police reports" and J.R.'s "runaway" and "missing-person" reports without identifying the particular reports by date, jurisdiction, case number, or content. (Dkt. 64 at 3). Yet admissibility necessarily depends on the particular evidence, the witness, and the purpose for which the evidence is offered.

That distinction matters here. Some of the records Plaintiff seeks to exclude document J.R.'s whereabouts during the alleged trafficking periods, her departures from and returns to state custody, her contacts with law enforcement, and statements concerning her alleged traffickers. Other evidence may become relevant depending on a witness's testimony at trial. These records cannot meaningfully be evaluated as a single category of "criminal history" or "police reports."

Defendant acknowledges that a mere arrest or charge is not a conviction for purposes of Rule 609 and that convictions more than ten years old are subject to Rule 609(b)'s heightened requirements. See ***Michelson v. United States***, 335 U.S. 469, 482 (1948); ***United States v. Vigliatura***, 878 F.2d 1346, 1351 (11th Cir. 1989);

Fed. R. Evid. 609(b). But those principles do not establish that every police encounter, statement, report, or underlying event is inadmissible for every purpose. Nor do they justify precluding qualifying convictions that may be admissible for impeachment under Rule 609(a)(1)(A), subject to Rule 403. See Jackson v. Catanzariti, 159 F.4th 874, 884 (11th Cir. 2025).

Evidentiary rulings made before trial necessarily remain subject to reconsideration as the evidence unfolds. ***Luce v. United States***, 469 U.S. 38, 41–42 (1984). Plaintiff's failure to identify the particular records at issue, combined with the different witnesses and potential uses involved, makes categorical exclusion especially inappropriate. The Court should deny Plaintiff's request for a blanket pretrial ruling and address any particular evidentiary issue in the context in which it arises.

## II. J.R.'S RECORDS CANNOT BE CATEGORICALLY EXCLUDED.

### A. The runaway, missing-person, and police records are relevant to the chronology and circumstances of J.R.'s alleged trafficking.

J.R. alleges that she was trafficked at the Super 8 by three individuals—two men known as "Goose" and "Scar," and a woman named Nachelle Clark, also known as "Star." Her alleged trafficking, however, did not occur during one continuous period. J.R. identifies three separate periods: January through March 2020, April through July 2020, and June through July 2021. Those gaps raise an obvious and important question: what happened during and between the alleged trafficking

periods? The missing-person and police records Plaintiff seeks to exclude help answer that question. Plaintiff's characterization of these records as unrelated criminal or police history strips them of their context.

While Plaintiff's Complaint was clear that J.R. was allegedly trafficked during three distinct and separate periods, J.R.'s own deposition testimony is largely consistent with that single-event narrative—she describes meeting Goose, being drugged and forced into commercial sex, being transferred to Scar when Goose's hotel room became too crowded, and eventually encountering Star toward the end. However, the records document a recurring sequence in which J.R. left state custody, was located and returned to care, and subsequently left again to return to Super 8. Defendant is entitled to explore when she left, where she went, with whom she left, how long she was away, what contact she had with law enforcement or state agencies, and the circumstances under which she returned to the Super 8 or to an alleged trafficker. Those facts bear directly on the chronology and circumstances of the alleged trafficking and on what Defendant reasonably could have perceived at the hotel.

The records during are also relevant to J.R.'s trial testimony and Plaintiff's expert opinions. The July 6, 2021, College Park Police Department report and interview given to law enforcement—which Plaintiff's expert Anique Whitmore reviewed in formulating her opinions—reflects that J.R. turned herself in and

identified Nachelle Clark as trafficking her. That contemporaneous account differs in material respects from J.R.'s later testimony concerning why she left, what she told police, and her claimed reluctance to identify her traffickers. It also bears directly on Whitmore's opinion that fear, trauma bonding, and psychological manipulation impaired J.R.'s ability to seek assistance from law enforcement.

Whitmore also acknowledged during her deposition that J.R. told her she had run away on several occasions, but that they did not discuss individual incidents in detail, and that information concerning those events would have been important to her opinions. The Defendant therefore must be permitted to use relevant records to test both J.R.'s account and whether Whitmore's opinions rest on a complete and accurate factual history.

The same evidence may bear on notice. Plaintiff contends that Defendant should have recognized that J.R. was being trafficked. Evidence concerning J.R.'s movements, interactions, apparent freedom of movement, and contemporaneous encounters with law enforcement provides context for evaluating Plaintiff's testimony. Defendant does not contend that law enforcement's failure to identify trafficking resolves the notice issue, but those encounters may be probative of Plaintiff's contention that signs of trafficking should have been apparent to hotel employees.

These facts illustrate precisely why Plaintiff's motion to exclude the police reports and missing-person records should be denied. The reports are not "unrelated" collateral matters—they are the documentary record of J.R.'s movements in and out of state custody, J.R.'s repeated returns to the hotel and her alleged traffickers, and her own inconsistent statements to law enforcement. They go to the heart of every disputed issue in this case: to demonstrate knowledge, opportunity, the choices J.R. made when she had access to law enforcement, and to impeach the specific factual claims that Plaintiff and her witnesses will advance at trial. The Court should deny the motion.

**B. J.R.'s Records May Be Relevant to Damages and Causation.**

J.R. seeks damages for psychological injury, emotional distress, and diminished earning capacity allegedly resulting from trafficking at Defendant's hotel. To the extent Plaintiff places those conditions at issue, Defendant is entitled to explore other documented experiences bearing on causation, including J.R.'s history of trauma, placement changes, psychiatric treatment, educational disruption, substance use, and other significant life events. The purpose is not to assign fault to J.R. or place her character in issue, but to permit the jury to determine what portion of the claimed injury, if any, is attributable to the conduct alleged against Defendant.

**C. Rule 404(b) Does Not Require Categorical Exclusion.**

Defendant does not offer these records to prove J.R.'s character or propensity. They may instead be relevant to chronology, contemporaneous statements, notice, expert testimony, damages, causation, or another permissible non-character purpose. Any Rule 404(b) issue should therefore be addressed in the context of the particular evidence and purpose for which it is offered. See Fed. R. Evid. 404(b)(2); ***Carrizosa v. Chiquita Brands Int'l, Inc.***, 47 F.4th 1278, 1325 (11th Cir. 2022).

**D. Rule 403 Does Not Support Wholesale Exclusion.**

Rule 403 likewise does not justify excluding these records as a category. Any unfairly prejudicial or extraneous material can be addressed through redaction, a limiting instruction, or a ruling outside the jury's presence rather than wholesale exclusion. ***See United States v. McRae***, 593 F.3d 1229, 1241 (11th Cir. 2010).

**E. Defendant does not seek to use J.R.'s 2022 shoplifting matter as a Rule 609 conviction, but no blanket ruling is warranted.**

Defendant does not presently seek to use J.R.'s 2022 shoplifting matter as a conviction for impeachment under Rule 609. J.R. received First Offender treatment, and Defendant acknowledges the limitations that disposition places on its use as a "conviction" for Rule 609 purposes. See O.C.G.A. § 42-8-60(e), (i); *Manner v. Georgia*, 808 S.E.2d 681, 690 (Ga. 2017).

That does not, however, establish that the underlying incident is irrelevant for every purpose. J.R. affirmatively seeks damages for diminished earning capacity

allegedly caused by the trafficking. In evaluating that claim, the jury may be required to consider other circumstances bearing on J.R.'s employment history, employability, and future earning prospects. To the extent the 2022 incident appears in employment-related background information or otherwise affected or could affect employment opportunities, it may bear on the extent to which any claimed loss of earning capacity is attributable to Defendant rather than other factors.

Defendant does not ask the Court to rule now that the incident is admissible. Rather, the point illustrates why categorical exclusion is inappropriate. Its relevance will depend on the evidence Plaintiff presents concerning lost earning capacity, the methodology and assumptions of any damages or vocational expert, and the purpose for which Defendant seeks to use the evidence. The Court should therefore deny Plaintiff's request for blanket exclusion.

## III. THE POST-TRAFFICKING CONDUCT OF T.H., D.B., AND N.N. SHOULD NOT BE CATEGORICALLY EXCLUDED BEFORE TRIAL.

Plaintiff seeks to categorically exclude post-trafficking criminal conduct involving witnesses, T.H., D.B., and N.N. Defendant does not contend that this evidence is admissible merely to attack these witnesses' character or because an arrest or charge constitutes a conviction under Rule 609. But Plaintiff's request for blanket exclusion is premature because the relevance of these witnesses' post-

trafficking conduct will depend on the testimony and arguments Plaintiff presents at trial.

T.H., D.B., and N.N. are separate alleged trafficking victims. They had different traffickers, were allegedly trafficked during different time periods, and did not know one another. Their circumstances therefore must be considered individually.

If Plaintiff presents these witnesses to suggest that their criminal conduct or lifestyle resulted from trafficking, that they were unable to make independent choices because of their traffickers, or that they escaped that lifestyle once the trafficking ended, their post-trafficking conduct may directly rebut that narrative. Plaintiff should not be permitted to present a sanitized, litigation-driven account of these witnesses' post-trafficking lives while categorically preventing Defendant from introducing otherwise admissible evidence that contradicts it.

The evidence may likewise become relevant if these witnesses testify concerning lasting harm allegedly caused by their trafficking. If Plaintiff attributes post-trafficking behavioral, psychological, employment, or other difficulties to what occurred at the Super 8, Defendant is entitled to explore other post-trafficking conduct bearing on causation. Plaintiff cannot have it both ways: attributing a witness's subsequent difficulties to trafficking while simultaneously excluding evidence relevant to whether those difficulties had other causes.

This is not propensity evidence. Defendant does not seek to argue that these witnesses engaged in criminal conduct after the trafficking and therefore must have acted similarly while at Super 8. Rather, the evidence would be offered, if necessary, to rebut specific testimony or arguments Plaintiff chooses to present concerning the witnesses' post-trafficking lives and the lasting effects of their alleged trafficking.

Accordingly, the Court should not categorically exclude post-trafficking evidence concerning T.H., D.B., or N.N. before trial. Defendant does not seek a blanket ruling admitting that evidence. Its relevance and admissibility will depend on the testimony and arguments Plaintiff presents at trial and the purpose for which Defendant may seek to use particular evidence. The appropriate course is therefore to deny Plaintiff's request for categorical exclusion and permit admissibility to be determined in the context of the testimony actually presented.

## IV. FORMER EMPLOYEES PHILLIPS AND VANTERPOOL MUST BE ANALYZED SEPARATELY.

Santana Phillips and Winkeisha Vanterpool are materially different from T.H., D.B., and N.N. They are former hotel employees and fact witnesses, not alleged trafficking victims. Vanterpool presents a conventional Rule 609 issue. Phillips does not. As to Phillips, the underlying facts of the 2021 police investigation are independently relevant to contradict her testimony, define the period of her claimed personal knowledge, and test the reliability of the observations on which Plaintiff relies.

**A. Santana Phillips.**

Plaintiff seeks to treat Phillips's 2021 matter simply as an arrest or charge that cannot be used under Rule 609. That framing overlooks the independent relevance of the underlying facts. Phillips is a former employee whom Plaintiff intends to offer as a fact witness concerning conditions she claims to have personally observed at Super 8. She testified that she lived at Super 8 and was there "almost every day, all day basically." She further testified that prostitution occurred daily, that she saw very young girls, pimps, drugs, and other activity throughout the property, and that an employee working at the hotel could not have avoided seeing prostitution and drug activity. Phillips's claimed presence at the property is therefore the foundation for significant portions of Plaintiff's notice case.

Phillips also portrayed herself as largely removed from the activity she described. She testified that she was "mainly trying to stay out the way of whatever was going on out there and ***keeping me and my kids safe***," and elsewhere stated that, when she was not working, she stayed in the room with her children. That portrayal is relevant because Plaintiff relies on Phillips as a seemingly uninvolved employee-observer who nevertheless claims the trafficking and related activity were obvious. The contemporaneous September 2021 arrest-warrant affidavit presents materially different facts. The affidavit states that Phillips admitted leaving her three children at the Economy Lodge for hours and that the children reported that their mother used

drugs in their presence and often left them alone at the hotel. Those facts are not offered merely to show bad character. They may directly contradict the account Phillips gave of her conduct and circumstances during this period, including her testimony that she was focused on staying out of trouble and keeping her children safe.

The evidence is also independently relevant to the timeline of Phillips's claimed personal knowledge. Although Phillips initially testified that she lived and worked at the Super 8 in 2021–2022 and had been there approximately a year and a half, her testimony concerning the sequence and dates of her residences was uncertain. She later acknowledged that she left the Super 8, stayed briefly at another residence and at Best America, and then stayed at the Econo Lodge. When confronted with the September 19, 2021 police records, Phillips admitted that she was at the Econo Lodge by September 2021 and had already left Super 8, but she could not identify when she actually left Super 8. Evidence fixing that timeline is directly relevant to the period during which Phillips could have made the observations she attributes to Super 8.

The police evidence also bears on Phillips's ability to perceive and accurately recall events from the period about which she now testifies. The affidavit reports contemporaneous drug use in the presence of her children. Phillips's testimony depends heavily on recollection of events occurring years earlier, yet the deposition

itself reflects uncertainty about basic dates and chronology. To the extent Defendant can establish drug use contemporaneous with the observations at issue, that evidence may be relevant to the reliability of Phillips's perception and memory. Defendant does not offer drug use as propensity evidence, but to test the foundation and reliability of her claimed firsthand observations.

Phillips's own deposition further demonstrates why a categorical pretrial ruling is inappropriate. She acknowledged the September 2021 Econo Lodge incident and the resulting child-endangerment and child-neglect charges, while giving an account in which she had entrusted the children to another woman who then left them alone. The contemporaneous affidavit records a materially different account: that Phillips herself said she left the children at the hotel for hours and that the children said she often left them alone. The Court should not foreclose Defendant from using otherwise admissible evidence to confront those inconsistencies merely because the evidence arose from a criminal investigation.

Accordingly, whether Phillips's 2021 charges resulted in qualifying convictions under Rule 609 does not resolve the admissibility of the underlying evidence. The evidence may be admissible for non-propensity purposes, including contradiction, impeachment of material testimony, establishing the actual timeline of Phillips's residence and presence at Super 8, testing the basis for her claimed personal knowledge, and evaluating her ability to perceive and recall the events

about which she testifies. At minimum, the Court should defer any specific ruling until Phillips testifies and Defendant identifies the particular evidence and purpose for which it seeks to use it.

**B. Winkeisha Vanterpool.**

Plaintiff identifies older convictions involving Vanterpool, including December 2012 guilty pleas to criminal trespass and misdemeanor obstruction. Defendant acknowledges that Rule 609(b) imposes a heightened standard for convictions falling outside the ten-year period and will comply with Rule 609(b), including any applicable notice requirement. The Court need not enter a categorical exclusion now; it can determine admissibility if Defendant seeks to use a particular conviction at trial.

## V. THE COURT CAN ADDRESS ANY REMAINING CONCERNS OUTSIDE THE JURY'S PRESENCE.

Plaintiff alternatively asks that criminal-history evidence be raised outside the jury's presence before it is mentioned. Defendant does not oppose that procedure. It provides the appropriate safeguard here. Rather than categorically excluding broad categories of evidence before trial, the Court can require Defendant to identify the specific evidence and purpose outside the jury's presence and rule in context.

That procedure is particularly appropriate for T.H., D.B., and N.N., where Defendant is reserving its right to respond to the testimony actually given; for Vanterpool, where Rule 609 admissibility will turn on the existence and nature of a

qualifying conviction; and for Phillips, where the Court can evaluate the specific non-propensity purpose for which Defendant seeks to use evidence arising from the 2021 investigation.

**CONCLUSION**

For these reasons, Defendant respectfully requests that the Court: (1) deny Plaintiff's request to categorically exclude the runaway, missing-person, police, and law-enforcement records concerning J.R. where those records are relevant to the chronology and circumstances of the alleged trafficking, J.R.'s statements, Plaintiff's expert testimony, notice, damages, causation, or another permissible purpose; (2) deny without prejudice Plaintiff's request for blanket exclusion of post-trafficking criminal-history and police-related evidence concerning T.H., D.B., and N.N.; (3) deny categorical exclusion of the evidence arising from Phillips's 2021 investigation because the underlying facts may independently bear on contradiction, the timeline and foundation of her claimed personal knowledge, and her ability to perceive and recall events, while deferring any specific ruling until the evidence is offered; (4) defer ruling on any Rule 609 impeachment evidence concerning Phillips and Vanterpool until Defendant seeks to use a particular qualifying conviction.

Respectfully submitted this 8th day of September, 2026.

**WEINBERG, WHEELER,**
**HUDGINS, GUNN & DIAL, LLC**

*/s/ Christopher T. Byrd*

Christopher T. Byrd
GA Bar No. 100854
Shubhra R. Mashelkar
GA Bar No. 475388
Patrick B. Moore
GA Bar No. 520390
3344 Peachtree Road, N.E.
Suite 2400
Atlanta, Georgia 30326
(404) 876-2700
cbyrd@wwhgd.com
smashelkar@wwhgd.com

*Counsel for Defendant Lincoln Bancorp, LLC*

## RULE 7.1D CERTIFICATE OF TYPE, FORMAT AND FONT SIZE

Under Local Rule 7.1D of the United States District Court for the Northern District of Georgia, the undersigned certifies that this submission to the Court was computer-processed, double-spaced between lines, and prepared with 14-point Times New Roman font.

*/s/ Christopher T. Byrd*
Christopher T. Byrd

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 8, 2026, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing by electronic mail to all counsel or parties of record:

Jonathan Tonge, Esq.
Patrick J. McDonough, Esq.
Jennifer Webster, Esq.
ANDERSEN, TATE & CARR, PC
One Sugarloaf Centre
1960 Satellite Blvd, Ste. 4000
Duluth, GA 30097
jwebster@atclawfirm.com
jtonge@atclawfirm.com
pmcdonough@atclawfirm.com

**WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC**

*/s/ Christopher T. Byrd*
Christopher T. Byrd
GA Bar No. 100854