UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

J.R.,

Plaintiff,

v.

LINCOLN BANCORP, LLC,

Defendant.

CIVIL ACTION FILE

NO. 1:25-cv-4629-JPB

**PLAINTIFF'S RESPONSE TO DEFENDANT'S CONSOLIDATED MOTIONS IN LIMINE**

Defendant[1] owned and operated the Super 8 on Old National Highway in College Park, GA from December 30, 2019, through December 6, 2021. When J.R. was a child, she was sold for sex at that hotel on three occasions, starting in January 2020 and ending in July 2021. At trial, J.R. intends to introduce evidence that relates to events during Defendant's ownership of the hotel. That evidence is not, despite Super 8's urging, *categorically* inadmissible.

Super 8's motions in limine primarily seek to prevent J.R. from introducing any evidence of its wrongdoing besides some testimony of J.R. Some Super 8 MILs also target phantoms: categories of evidence that J.R. does not intend to introduce at trial. Other Super 8 MILs are impossibly vague as to what they seek to exclude. All

---

[1] Plaintiff refers to Lincoln Bancorp, LLC as Super 8 or Defendant.

Super 8 MILs should be denied because Super 8 did not prove that the evidence it wants categorically excluded is inadmissible for every purpose. *See Wilson v. Pepsi Bottling Grp., Inc.*, 609 F. Supp. 2d 1350, 1359 (N.D. Ga. 2009) (holding evidence will be excluded "only if the evidence in question is clearly inadmissible" and putting burden of proof on "[t]he moving party").

**RESPONSE**

Super 8 begins its motions in limine by asserting—despite never moving for summary judgment—that J.R.'s claims for "false imprisonment" and "public nuisance" are unsupported by the evidence. Doc. 61 at 3 n.3.[2] Not so. But Super 8 has to begin this way. For if these claims are live—and they are, as is J.R.'s claim for public nuisance per se, *see, e.g.*, Doc. 43 at 10—Super 8 knows that many of its MILs are frivolous.

## I. Evidence about events after J.R.'s trafficking but during Defendant's ownership of the hotel is both relevant and admissible.

Super 8 asks the Court to categorically exclude all evidence of events between July 2021—when J.R., then a child, was last sold for sex at the hotel—and December 6, 2021, when Defendant sold the hotel. Evidence from this less than six-month period is admissible for many purposes, including to prove elements of J.R.'s TVPRA

[2] In her motion in limine on joint and several liability, J.R. dropped her claim under Masha's Law, 18 U.S.C. § 2255.

claim; to prove opportunity, knowledge, absence of mistake, lack of accident, and modus operandi under Federal Rule of Evidence 404(b); and to impeach.

To be admitted, Rule "404(b) evidence must (1) be relevant to one of the enumerated issues and not to the defendant's character; (2) the prior act must be proved sufficiently to permit a jury determination that the defendant committed the act; and (3) the evidence's probative value cannot be substantially outweighed by its undue prejudice, and the evidence must satisfy Rule 403." *United States v. Chavez*, 204 F.3d 1305, 1317 (11th Cir. 2000). The Eleventh Circuit has noted, in the context of civil-rights litigation under 42 U.S.C. § 1983, that "post-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right." *Salvato v. Miley*, 790 F.3d 1286, 1297 (11th Cir. 2015) (citation modified).

That's equally true in the TVPRA civil-beneficiary context, despite what Super 8 says. *Contra* Doc. 61 at 3–4. Earlier this year, the Eleventh Circuit held that evidence of hotel policies "to facilitate sex trafficking" being "applied" to the plaintiff's trafficker "to enable his sex trafficking operation" constitutes the kind of "'something more' than merely renting a room to a sex trafficker" needed to prove the second element: "participation in a venture." *A.G. v. Northbrook Indus., Inc.*, 171 F.4th 1257, 1272 (11th Cir. 2026). Even before *Northbrook*, Judge Geraghty held that "a categorical bar on the introduction of post-event evidence"—especially

where, as here, "the precise contours of the post-event evidence that [the plaintiff] intends to introduce" are unknown—is improper. Order at 27, *J.G. v. Northbrook Indus., Inc.*, No. 1:20-cv-5233 (N.D. Ga. July 2, 2025), ECF No. 204.

Posttrafficking evidence is also relevant and admissible on the question of "opportunity," for Super 8 contends that J.R. is lying about being sex trafficked at the hotel at all. *See* Doc. 43 at 11 (claiming an issue for the jury is "[w]hether Plaintiff is a victim of a violation of Chapter 77 of the United States Code Annotated"). Evidence that the hotel was home to pervasive commercial-sex crimes, including sex trafficking, during the entire period of Defendant's ownership is thus relevant to whether J.R.'s traffickers had an opportunity to sell her for sex (as well as whether the buyers had an opportunity to purchase the child for sex).

Posttrafficking evidence is also relevant under Rule 404(b) to rebut any argument that the hotel benefitted from J.R.'s trafficking by "mistake" or "accident." The truth is that Super 8 knowingly benefited from J.R.'s trafficking—and from the exploitation of others. That was part and parcel of the hotel's modus operandi.

Lastly, posttrafficking evidence is relevant and admissible to impeach the testimony of Super 8 witnesses who claim to have had no knowledge (or limited knowledge) of the pervasive commercial-sex crimes, including sex trafficking, on its property—as well as other open, obvious, and well-known crimes.

## II. Evidence of other criminal incidents at the hotel during Defendant's ownership is both relevant and admissible.

Super 8 asks the Court to categorically exclude all evidence of other crimes at the hotel during its ownership. To begin, as J.R. notes in her affirmative MIL on the admissibility, evidence of other criminal incidents at the hotel is relevant because it (1) impeaches Super 8's witnesses' testimony denying knowledge of illegal sex activity at the hotel; (2) goes to whether Super 8 was a public nuisance per se; (3) supports J.R.'s proof of Super 8's knowledge and participation under the TVPRA; and (4) shows notice and foreseeability for J.R.'s negligence claim. Rather than rehash her affirmative MIL here, J.R. incorporates her arguments for admissibility. *See generally* Doc. 68.

In addition to legally wrongheaded claims for inadmissibility of other-incident evidence, Super 8 also seeks to exclude certain narrative statements in some unidentified police reports as "hearsay"—citing *Georgia* law. Doc. 61 at 7. For starters, even if this were a pure diversity case, which it isn't, the Federal Rules of Evidence, not Georgia law, would govern whether some statement is "hearsay." *See ML Healthcare Servs., LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1299 (11th Cir. 2018) ("[T]he Federal Rules of Evidence, not state evidentiary rules, apply to evidentiary disputes in a federal diversity action." (citation modified)). More importantly, Super 8 has not specifically identified any so-called "hearsay" statements in the police reports that J.R. included on her exhibit list. Having failed to do so, J.R.

is at a loss to evaluate whether a particular statement is "hearsay" or not; she is likewise at a loss to evaluate whether an exception to the "hearsay" rule might apply. *See generally* Fed. R. Evid. 803; *see also United States v. Holley*, 166 F.4th 139, 148 (11th Cir. 2026) ("An out-of-court statement offered to show its effect on the listener isn't hearsay because it's not offered to prove the truth of the matter asserted." (citation modified)).

For those reasons, J.R. asks that the Court deny Super 8's unspecified "hearsay" objections. If J.R. seeks to introduce a police report with an unredacted statement that Super 8 believes is "hearsay," Super 8 can object at that time, and the Court can then rule with the benefit of context. This approach makes considerable sense given that J.R. includes only a handful of police reports on her exhibit list.

## III. Evidence of online reviews both during and before Defendant's ownership of the hotel is both relevant and admissible.

Super 8 asks the Court to categorically exclude online reviews and complaints as irrelevant and hearsay. But reviews received, monitored, or answered by Super 8 are relevant to notice and knowledge regardless of whether any statement in them is offered for its truth. *See United States v. Holley*, 166 F.4th 139, 148 (11th Cir. 2026) ("An out-of-court statement offered to show its effect on the listener isn't hearsay because it's not offered to prove the truth of the matter asserted." (citation modified)). Super 8 grudgingly acknowledges that Tran recalled online reviews, that hotel personnel monitored public reviews, and that Tran personally responded to at least

one. Doc. 61 at 10 n.8. So online reviews, especially those during the time Defendant owned the hotel, are potentially relevant and admissible. They should not be categorically excluded.

As for online reviews from before December 30, 2019, those are also relevant and admissible. These reviews were public and appeared on widely used and highly regarded websites. What past guests said publicly about the state or condition of the hotel should have been of interest to anyone buying the hotel. Again, J.R. does not intend to offer *any* online reviews for the truth of the matter asserted. But J.R. should be allowed to inquire about what Super 8 did after purchasing the property to change the publicly reported perception (as shown in the online reviews) or to ask if these prior reviews had any effect on Defendant after acquiring the hotel.

Thus, the online reviews should not be categorically excluded. Any issues with their admissibility should be addressed at trial with the benefit of context.

## IV. Evidence that other children were sex trafficked at the hotel during Defendant's ownership is relevant and admissible.

J.R. was not the only child who was sold for sex at the hotel. Three other women—T.H., N.N., and D.B.—were also sold for sex as children when Defendant owned the hotel. Super 8 wants to conceal from the jury that J.R.'s case wasn't unique. According to Super 8, the truthful testimony of T.H., N.N., and D.B. "risks encouraging the jury to impose liability because bad things happened to multiple

women at the property, rather than because Plaintiff proved the elements of her own claims." Doc. 61 at 16. That's wrong for several reasons.

*First*, despite what Super 8 says, these witnesses were not "*women*" when they were sold for sex. They were children. J.R. was 15; D.B. and T.H. were 16; and N.N. was 17. For that reason, any commercial sex they had at the hotel constituted sex trafficking under federal law. *See* 18 U.S.C. § 1591.

*Second*, T.H., N.N., and D.B.'s testimony is relevant to the knew or should have known element of J.R.'s TVPRA civil-beneficiary claim. Each victim will offer her own account of how trafficking operated openly at the hotel, what hotel employees saw and encountered, how hotel employees responded (or failed to respond) to the obvious signs of sex trafficking and prostitution—including scantily clad women and children walking the property; the steady stream of older male visitors to the hotel's various rooms; "dates" being had in the cars in the hotel's parking lot; what housekeeping saw inside their rooms; and more. These victims provide a basis for establishing knowledge for J.R.'s TVPRA claim.

*Third*, T.H., N.N., and D.B.'s testimony will also provide support for J.R.'s public nuisance, public nuisance per se, and negligence claims. Take negligence, for example. Each victim's testimony establishes that "substantially similar" crimes happened at the hotel. That's more than enough to meet the foreseeability inquiry under *Georgia CVS Pharmacy, LLC v. Carmichael*, 890 S.E.2d 209, 225–26 (Ga.

2023). Under *Carmichael*, the "reasonable foreseeability" analysis is based on "the totality of the circumstances." *Id.* at 226. The child sex trafficking of T.H., N.N., and D.B. is part of the totality of the circumstances. Indeed, the evidence shows that in May 2020, the City of South Fulton Police Department opened a sex-trafficking investigation at the hotel identifying three victims and four suspects. One of those victims was T.H. During that investigation, police officers found the hotel's manager speaking with one of T.H.'s traffickers, only moments after the manager, Louis Vu, told police that he didn't know the man.

While Super 8 tries to pretend otherwise, J.R. has a claim for public nuisance per se. Under Georgia law, "A lewd house is *per se* a 'public nuisance.'" *Brindle v. Copeland*, 89 S.E. 332, 332 (Ga. 1916). That rule applies to hotels. *Fitzgerald v. Georgia*, 72 S.E. 541, 542 (Ga. Ct. App. 1911). And a hotel constitutes a lewd house where its operator furnishes lodging to persons engaged in prostitution. *Id.* So even if T.H., N.N., and D.B. had been adults and had been selling sex of their own accord—neither of which is true—their testimony about commercial-sex activity at the hotel would be relevant to the jury's determination of whether the hotel constituted a public nuisance per se. That their testimony is devastating for Super 8 on this question (and others) does not make it unfairly prejudicial—the extraordinarily high bar that evidence must satisfy to justify exclusion under Rule 403. *See United States v. Alfaro-Moncada*, 607 F.3d 720, 734 (11th Cir. 2010) ("Rule 403 . . . is an

extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility. [And] . . . in reviewing issues under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." (citation modified)).

Rule 403 poses an extraordinarily high bar for exclusion because "virtually all evidence is prejudicial or it isn't material." *Ballou v. Henri Studios, Inc.*, 656 F.2d 1147, 1155 (5th Cir. Unit A 1981) (citation modified). To be excluded under Rule 403, "[t]he prejudice must be unfair. Unfair prejudice within the context of Rule 403 means an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* (citation modified). In short, "Rule 403 exclusion 'is an extraordinary remedy which should be used sparingly.'" *Does 1–4 v. Red Roof Inns, Inc.*, 688 F. Supp. 3d 1364, 1368 (N.D. Ga. 2023) (quoting *Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1069 (11th Cir. 2014)).

The testimony of other children victimized at the hotel does not meet Rule 403's high bar for exclusion given J.R.'s federal and state claims against Super 8.[3]

---

[3] For J.R.'s public nuisance claim, J.R. must prove, among other things, that the nuisance created by the hotel harmed all who encountered it. T.H., N.N., and D.B.'s testimony supports the jury's finding on this factual issue. *See* O.C.G.A. § 41-1-2.

*Fourth*, T.H., N.N., and D.B.'s testimony is also relevant and admissible as proof of Super 8's modus operandi, showing that in these similar incidents, Super 8 enacted the same policies and modes of operation. *See Treminio v. Crowley Mar. Corp.*, 3:22-cv-174, 2024 WL 382400, at *6 (M.D. Fla. Feb. 1, 2024) (allowing modus operandi evidence in TVPRA case as sufficient for establishing knowledge[4]); *see also Doe A v. SeaTac Hotels LLC*, 2:24-cv-1270, 2025 WL 474233, at *5 (W.D. Wash. Feb. 12, 2025) (same); *Doe (S.A.S.) v. ESA P Portfolio LLC*, 3:23-cv-6038, 2024 WL 3276417, at *10 (W.D. Wash. July 2, 2024) (same).

*Fifth*, the supposed nits that Super 8 tries to pick with T.H., N.N., and D.B.'s testimony go to its weight, rather than admissibility. That's true even for the

---

[4] "Under the TVPRA, courts have allowed a showing of a defendant's modus operandi to be sufficient for establishing knowledge. *See Ardolf v. Weber*, 332 F.R.D. 467, 475 (S.D.N.Y. 2019) (ruling that establishing the defendant's modus operandi was a permitted method to demonstrate knowledge under the TVPRA); *United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010) ("What the [TVPRA] requires is that the defendant know in the sense of being aware of an established modus operandi that will in the future cause a person to engage in prostitution"); *Boyce v. Weber*, No. 1:19-cv-3825, 2021 WL 2821154, at *4–6 (S.D.N.Y. July 7, 2021) (permitting modus operandi to establish knowledge under the TVPRA). Courts have also found that a defendant's actions after the events charged in a suit were permitted to show the defendant had a modus operandi. *Turner v. United States*, 426 F.2d 480, 483–84 (6th Cir. 1970) (allowing evidence of stolen automobiles after the charged theft to prove defendant's modus operandi); *United States v. Goodwin*, 492 F.2d 1141, 1154 (5th Cir. 1974) (articulating that a subsequent incident is permitted to show modus operandi if the subsequent act "bears such a high degree of similarity as to mark it as the handiwork of the accused").

inconsistency in N.N.'s prior testimony. Even that inconsistency goes to credibility and weight; it does not affect admissibility. If Super 8 believes that it can score points with the jury by attacking these women for things they did while children, then Super 8 can—consistent with the Rules of Evidence and the Court's Orders—try that. But just because a witness's testimony opens a few limited lines of inquiry (cabined by the rules of cross-examination), it does not create a basis to exclude relevant and highly probative evidence under Rule 403.

## V. Super 8's MIL No. 5 is moot.

J.R. does not intend to offer any news reports at trial. Super 8's MIL on this ground is moot and should be denied.

## VI. J.R. is entitled to play the deposition designations of Louis Vu.

### A. Super 8 waived its objections to the manner in which its former manager testified at his deposition.

Super 8 waived any objection to the manner in which its former manager, Louis Vu, responded to deposition questions, including by invoking his Fifth Amendment privilege. In fact, far from objecting to the manner in which Vu invoked the privilege, Defendant's own counsel expressly instructed Vu how to do it:

> **Defense Counsel**: So, yeah. I think – I think you're going to have to go through every question, and then if he wants to plead the Fifth he's going to have to say "I plead the Fifth."
>
> **Vu**: I plead the Fifth, yeah. That's what I told him.

*See* Ex. 1, Vu Dep. 87:20–25.

At the deposition, the parties reserved objections except as to the form of the question and responsiveness of the answer. Yet defense counsel did not object once during the entire deposition. Nor did Super 8 contend that Vu's invocation was procedurally improper, claim that Vu waived the privilege by answering earlier questions, or otherwise assert that Vu had to answer the questions he refused to answer.

Super 8 does so for the first time now—five months after the deposition and twenty days before trial. Its argument is that Vu did not properly invoke the Fifth Amendment because his invocation was supposedly a "blanket refusal" rather than an invocation directed to individual questions. But that is an objection to the manner in which the deposition proceeded that could have been corrected had Super 8 raised it at the time. Indeed, Super 8's own counsel provided the obvious cure by instructing Vu to invoke the privilege on a question-by-question basis.

In fact, when Vu first invoked the Fifth Amendment, Plaintiff's counsel stopped the examination specifically to ensure the privilege was being handled properly, and the subsequent instructions were agreed to between counsel:

> **Plaintiff's Counsel:** I just don't want to like do anything improper, and so I'm just—I'm going to—I'm asking you, Ankur, if you agree. Like, if he's going to plead the Fifth then—Mr. Vu, you just need to say that in response . . .
>
> **Vu:** Yeah. I need to take the Fifth.
>
> **Plaintiff's Counsel: . . .** to a question. You can't just sort of blanket say "I'm done. I plead the Fifth." Okay?

> **Defendant's Counsel:** So, yeah. I think—I think you're going to have to go through every question and then if he wants to plead the Fifth he's going to have to say "I plead the Fifth."
>
> **Vu:** I plead the Fifth, yeah. That's what I told him.

Vu Dep. 87:8–25.

Super 8's MIL about Vu's invocation is nothing more than an attempt to raise an objection that it chose not to make at the deposition. Plaintiff's counsel affirmatively raised the very procedural issue Super 8 now objects to, expressly stated that he did not want to proceed improperly, and asked defense counsel whether Vu should be required to invoke the privilege separately in response to each question. Defense counsel agreed and instructed Vu to do exactly that. Super 8 cannot agree (on the record, no less) to the procedure used at the deposition and then, five months later, contend that the resulting invocation was procedurally defective.

Rule 32 expressly provides that an objection to an error or irregularity at an oral deposition is waived where it "relates to the manner of taking the deposition, the form of a question or answer, . . . a party's conduct, *or other matters that might have been corrected at that time*" and "is not timely made during the deposition." Fed. R. Civ. P. 32(d)(3)(B) (emphasis added).

The Eleventh Circuit has explained the reason for the rule: "The rules distinguish objections to the manner of taking the deposition from objections as to the substance of the testimony (such as relevancy or competency) because *allowing*

*counsel to wait until trial to object might encourage sandbagging***.**" *Cabello v. Fernández-Larios*, 402 F.3d 1148, 1160 (11th Cir. 2005) (citing *Kirschner v. Broadhead*, 671 F.2d 1034, 1037–38 (7th Cir. 1982); *Bahamas Agric. Indus., Ltd. v. Riley Stoker Corp.*, 526 F.2d 1174, 1180–81 (6th Cir. 1975)). In *Cabello*, the Eleventh Circuit held that an objection first pursued after the deposition was waived because the alleged defect "could have been cured at the taking of the deposition." *Id.*

That is the exact situation here. If Super 8 believed Vu was invoking the privilege improperly, it could have objected and required the alleged defect to be addressed while Vu was under oath. If Super 8 believed—as it now argues—that Vu had already waived the privilege and was obligated to answer, it likewise could have raised that issue while an answer could have been obtained. Super 8 did neither. Instead, its counsel affirmatively instructed Vu how to invoke the Fifth, allowed the deposition to proceed without a single objection, and waited five months to claim that Vu's resulting answers and refusals were defective.

The prejudice from that sandbagging is now concrete. Plaintiff has diligently attempted to locate and subpoena Vu for a trial deposition, including efforts in Oklahoma and California, the only two places he is known to reside. Super 8 has opposed a trial deposition and recently represented that Vu traveled to Vietnam in August and is unavailable for trial. Thus, the defects Super 8 now claims—which could

have been readily addressed in April, while Vu was under oath and available for questioning—cannot be cured now.

Because Super 8 waived its objections to the manner in which Vu testified, its motion should be denied.

### B. *Coquina* supports the admission of Vu's invocations.

Super 8's only remaining argument fares no better under the lone case Defendant cites in support. In *Coquina Investments v. TD Bank, N.A.*, the defendant argued both that its former employee should not have been permitted to invoke the Fifth Amendment before the jury and that the jury should not have been permitted to draw an adverse inference against the defendant from those invocations. 760 F.3d 1300, 1310–12 (11th Cir. 2014). The Eleventh Circuit's answer was direct: "Both arguments fail." *Id.* at 1310. Rather than categorically excluding a nonparty employee's invocation, *Coquina* requires a case-specific determination of whether the resulting inference is trustworthy, considering the witness's relationship with the party, the party's control over the witness, the compatibility of their interests, and the witness's role in the litigation. *Id.* at 1311–12.

Those considerations strongly favor admission here. Vu was not a peripheral employee. Super 8's corporate representative identified Vu as a front-desk manager. Ex. 2, Lincoln Dep. 39:5–16. Super 8 testified that its front-desk managers were its "more knowledgeable" employees, with authority to decide when to call police,

adjust rates, and participate in hiring. *Id.* at 78:14–21. Super 8's written policy required suspicious activity to be reported to management, and Super 8 specifically identified Vu as one manager to whom such reports were to be made. *Id.* at 89:4–17. Management was also supposed to be notified whenever police were on the property, and employees were required to report suspected sex trafficking, prostitution, or drug use. *Id.* at 92:18–20, 93:19–94:8. Super 8 further testified that Vu had access to the surveillance system and was among the managers expected to walk the property every thirty minutes. *Id.* at 125:13–127:12.

The chronology of Vu's deposition is particularly important. Vu did not invoke the privilege before being questioned about the relevant events. He first spent approximately eighty pages answering questions. Plaintiff then walked Vu through the reports of a May 2020 human-trafficking investigation at this very hotel. The investigation involved young female victims, including a sixteen-year-old, T.H., a witness in this trial. Vu acknowledged that police took him to the station and told him about "suspicious activity involving young girls at the Super 8." He acknowledged telling police that he had seen younger girls at the property but had not paid close attention. Vu Dep. 74:11–77:4. He was then confronted with his statement to police that he did not know a man called "E," followed by the investigative report describing the detective walking around the building shortly after and finding Vu

speaking with the man, later convicted of sex trafficking, who identified himself as "E." *Id.* at 77:13–18, 80:18–82:7.

The same investigation supplied an additional and highly personal connection. The trafficking victim reported that Eron McCrary—one of the men being investigated for trafficking her—was giving drugs to "the manager at the front desk." Super 8's corporate representative later confirmed the substance of that investigative report and admitted that an employee obtaining drugs from a hotel guest would violate Super 8's policies. Lincoln Dep. 193:4–194:2. The report further reflected that Vu had denied knowing "E," only for Detective King to encounter Vu speaking with the man fitting the victim's description of "E" moments later. *Id.* at 194:23–195:25.

**Only after that examination did Vu begin invoking the Fifth.** When Plaintiff returned to the subject of young girls at the hotel and asked whether it was common to see young girls at the Super 8, Vu answered in part and then stated, "I will take my Fifth." Vu Dep. 85–86. After counsel clarified on the record that any invocation had to be made in response to each question, Vu again invoked the Fifth when Plaintiff asked about his knowledge of prostitution and sex trafficking at the hotel. *Id.* at 86–89. Thus, Super 8's suggestion that the invocation was merely an indiscriminate refusal by a tired witness ignores the sequence that preceded it. Vu invoked after being confronted, in detail, with a human-trafficking investigation involving young girls at this hotel, his own police interview, an allegation that a trafficker

supplied drugs to the front-desk manager, and his interaction with a suspect he had told police he did not know.

And the subject matter of those invocations is independently corroborated. Winkeisha Vanterpool, a former Super 8 housekeeper who was not involved in the 2020 investigation, later identified Vu's photograph as the manager she knew at the hotel and testified from personal knowledge that her boyfriend and other drug dealers at the property supplied Vu with crack. Her testimony was not merely rumor: on one occasion, her boyfriend instructed her to take crack downstairs and deliver it to Vu. Ex. 3, Vanterpool Dep. 23–24, 35–36, 48–50.

More importantly, Vanterpool connected Vu directly to the hotel's response to suspected child sex trafficking. Vanterpool testified that she encountered a girl at the hotel who initially said she was eighteen but ultimately told Vanterpool that she was fifteen, that the adult man having sex with her knew she was a child, and that he had instructed her to lie about her age. When the girl began shaking severely and having difficulty breathing, Vanterpool called 911. Vanterpool Dep. 16–20. Vanterpool testified that calling police at the hotel was "a no go," that a person who did so was considered a "snitch" who "can't be trusted," and that Vu—the manager she later identified by photograph—confronted her about calling police. According to Vanterpool, she stopped working at the hotel shortly thereafter because Vu was angry about the call and "he basically fired me for calling the police." When Vu asked

why she had called, Vanterpool told him: "this kid, this little girl need help. . . . This is a child." *Id.* 20–23.

That testimony bears directly on the reliability of any inference from Vu's invocation. Super 8 says its policy required employees to report suspected trafficking and to cooperate with police; Vanterpool testified that when she did exactly that for an endangered fifteen-year-old, Vu reacted angrily against her for bringing police to the hotel. And Super 8's own corporate representative admits that Vu himself was required to report what police told him during the earlier trafficking investigation. When shown the report revealing that police told Vu about suspicious activity involving young girls, Tran testified that Vu "should" have reported that information to him. Tran further testified that an employee who knew police had come to investigate sex trafficking and failed to report it would violate hotel policy. Lincoln Dep. 189:10–18, 190:17–191:15. Yet Tran testified that Vu never reported the investigation to him. *Id.* at 192:1–18.

Thus, this is not the situation Super 8's truncated reference to *Coquina* suggests: a former employee invoking the Fifth for unknown personal reasons from which the jury might speculate about unrelated corporate wrongdoing. Vu's alleged conduct occurred while he was acting as one of Super 8's managers and performing the very functions at issue in this case—monitoring the property, dealing with suspicious activity, interacting with police, and responding to suspected prostitution and

trafficking. And the questions on which he invoked were not unsupported accusations. Those invocations followed the presentation of documentary evidence about a police trafficking investigation that involved Vu personally, and they are corroborated by independent testimony concerning Vu's relationships with drug dealers and how he interacted with the police at the hotel.

The evidence concerning Vu's drug use is relevant for that limited reason—not as propensity or character evidence, but because it independently corroborates his relationship with the people and illegal activity he claimed not to have noticed. The Vanterpool incident is even more direct: it concerns Vu's conduct as hotel manager in response to an employee reporting an apparent child-trafficking emergency. Taken together, those circumstances make Vu's invocation highly probative and any resulting inference far from speculative.

At minimum, Super 8's generalized concern that the jury *might* draw an adverse inference does not justify excluding the invocations themselves. To the extent the parties dispute the precise inference the jury may be instructed to draw against Super 8 from particular answers, that issue can be addressed in connection with the evidence's admission and the Court's jury instructions. *Coquina* provides no basis for Super 8's requested exclusion.

## VII. Super 8's request to exclude so-called "reptile" arguments is vague and overbroad and should be denied.

Super 8 objects to "the so-called 'Reptile' trial strategy" and wants the Court to prohibit it. Doc. 61 at 22–24. Yet for all its bluster, Super 8 does not identify a single shred of evidence that it seeks to exclude with this categorical ruling.

Indeed, this MIL isn't about evidence exclusion; it's about conduct preclusion. But what precisely Super 8 wants the Court to preemptively prohibit J.R.'s counsel from doing or saying is unclear. The MIL is both vague and overbroad. A ruling granting such a MIL invites mischief at trial: namely, Super 8 objecting that something done "violates" the Court's Order before the jury—even though J.R.'s counsel have no notice of what is prohibited.

There are other problems with Super 8's MIL. For example, does Super 8 contend that sex trafficking is not a threat to the community? Does Super 8 contend that sex trafficking is not dangerous? J.R. is entitled to show the jury that sex trafficking is dangerous, that the conditions at the Super 8 were dangerous (in fact, they were a public nuisance per se), and that she was harmed, in part, by the dangers of trafficking and the hotel's nuisance (among other things).

So it's unsurprising the district courts in this Circuit routinely deny so-called "reptile" MILs, leaving defense counsel to object at trial if it perceives the plaintiff's counsel to have strayed into the impermissible. *See, e.g.*, Order at 40, *J.G. v. Northbrook Indus., Inc.*, No. 1:20-cv-5233 (N.D. Ga. July 2, 2025), ECF No. 204 ("The

Court finds Northbrook's motion [on 'reptile' statements] to be vague and overbroad as stated. Northbrook's motion is therefore **DENIED**."); *Columbus v. Clean Harbors Envtl. Servs., Inc.*, 1:21-cv-4610, 2023 WL 5668034, at *4 (N.D. Ga. July 26, 2023) (Pannell, J.) ("If the plaintiffs veer into tactics that seek to inflame the passions of the jury, the defendants are free to make an appropriate objection. Therefore, the motion as to arguments under the Reptile theory is DENIED at this time.").

Respectfully submitted on September 8, 2026.

ANDERSEN, TATE & CARR, P.C.

*/s/ Rory A. Weeks*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491
rweeks@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile
*Attorneys for Plaintiff*

**CERTIFICATE OF COMPLIANCE**

Under Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Times New Roman, 14-point font.

ANDERSEN, TATE & CARR, P.C.

*/s/ Rory A. Weeks*

PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491
rweeks@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile
*Attorneys for Plaintiff*