**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| J.R.,<br><br>Plaintiff,<br><br>v.<br><br>LINCOLN BANCORP, LLC,<br><br>Defendant. | CIVIL ACTION FILE<br>NO. 1:25-cv-04629-JPB |

**DEFENDANT LINCOLN BANCORP, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE ALL EVIDENCE NOT PRODUCED IN DISCOVERY**

Defendant Lincoln Bancorp, LLC ("Lincoln Bancorp" or "Defendant"), by and through undersigned counsel, respectfully submits this Response in Opposition to Plaintiff's Motion in Limine to Exclude all Evidence not Produced in Discovery. (***Doc. 65***).

## INTRODUCTION

What Plaintiff identifies as a document "dump" was a production of 16 files. The paper/PDF files, which totaled 30 pages, consisted of two police reports from Macon-Bibb County, four police reports from South Fulton, one police report from College Park, and a police report and related documents from Riverdale. With the exception of the Riverdale materials (which relate to Plaintiff's arrest for shoplifting in 2026 and are not going to be used at trial), the police reports simply

document various occasions when Plaintiff ran away from her home/foster home, or, in the case of the College Park incident report, document Plaintiff turning herself into police and reporting that she was trafficked. Of the three video files produced, one is a recorded interview of Plaintiff by the College Park officer (and another showed that officer operating her vehicle). The other one, which is not going to be used, is of Plaintiff being held by store security for the 2026 shoplifting incident.

All of these items were procured by Defendant's current counsel, who did not appear in this action until after discovery was already closed. As noted below, the police reports which document when Plaintiff was at home or in a foster home and then ran way, help put specific dates to Plaintiff's allegations – ***which Plaintiff has so far been unable or unwilling to do***. The video in which Plaintiff speaks openly about her trafficking is certainly something that Plaintiff should have identified – as it is a direct account of her trafficking ordeal made the day of her alleged escape. ***It should have been included in Plaintiff's disclosures, but, barring that, she should have identified it her responses to Defendant's discovery requests***. She did neither.

Thus, Plaintiff's motion to exclude this evidence should be denied. Defendant was substantially justified in obtaining non-party discovery in an effort to provide information Plaintiff knew, but which she refused to supply –

information related to the timeline of her alleged trafficking, or, in the case of her video interview, a recorded statement disclosing details of her trafficking. Moreover, since Plaintiff does not dispute the fact that she did, in fact, come and go in and out of her trafficking (she just did not provide any specific dates) and since Plaintiff is charged with the knowledge of the statement she willingly gave to police, the late acquisition and production of this evidence is also harmless.

## ARGUMENT

### *A. Plaintiff's vague trafficking timeline.*

In her Complaint, Plaintiff's alleges only that "[i]n 2020 and 2021, beginning when she was only 15 years old, J.R. was sold for sex at the Super 8." ***Doc. 1*** at ¶ 9. Plaintiff's Complaint does not identify any specific dates, stating only that her "traffickers regularly brought her to the Super 8, where they would stay for extended periods – sometimes for weeks or months at a time – while she was sold for sex." ***Id.*** In her Interrogatory responses, Plaintiff provided only a bit more detail – breaking her broad allegation into three discrete periods: "(1) January 2020 through March 2020; (2) April 2020 through the summer of 2020; and (3) June 2021 through July 2021." *See* Pltf. Resp. to Def. Rogs., at No. 5, attached at ***Exhibit "A"***. Critically, Plaintiff objected to any requirement that she "identify dates certain that are not within Plaintiff's present recollection," and she expressly "reserve[d] the right to supplement this response as additional information. Then,

at her deposition, Plaintiff mostly confirmed these approximate timeframes, (she narrowed the second time frame slightly, changing it from ending in the "summer of 2020" to concluding "[c]loser to April to May") while acknowledging she was uncertain. *See* J.R. Depo. Trans., pp. 9:24–10:7, attached at ***Exhibit "B"***.

Plaintiff has offered no detailed description of where she was between her her three alleged trafficking periods. At her deposition, she stated that, between the first period and second period, she was "at the DFCS office" after a caseworker "brought [her] there" and, that she "was in a foster home" between the second period and the third period. ***Id.***, pp. 9-10. And, in her Interrogatory responses, she stated that, between 2019 and 2021, [she] was in and out of state programs, groups homes, and foster homes, periodically running away while being trafficked." ***Ex. "A"***, No. 2.

***B. Plaintiff's testimony regarding her discussion with police.***

Plaintiff testified that, when she had finally had enough of being trafficked, she walked away from the Super 8 and to the police station. ***Ex. "B"***, pp. 20-21. However, Plaintiff claims that, when she did so, she did not tell the police anything about her trafficking – she just asked them to call her a ride. Id. According to her, she was too afraid to "snitch" on her traffickers – especially Nachelle Clark – and so, she told the police nothing; they did not even know her name. ***Id.***

As noted below, this is a lie.

### *C. The evidence in question and its relevance herein.*

The evidence in question consists of seven (7) police reports and a video interview of Plaintiff. All but one of the police reports relate to Plaintiff's runaways during her alleged trafficking period – *i.e.* they are police reports where officers are responding to calls concerning Plaintiff running away from her home or her group/foster home, and, thus, they help provide specific dates relevant to Plaintiff's allegations. The reports come from the Bibb County Sheriff and South Fulton Police Department, and show that Plaintiff ran away on January 13, 2020, January 22, 2020, April 8, 2020, April 15, 2020, June 4, 2021, and June 6, 2021. The remaining report, from the College Park Police Department, relates to a call made by Plaintiff herself, on July 6, 2021, where Plaintiff turned herself in, complaining that she had been trafficked by Nachelle Clark (one of her alleged traffickers).

***The relevance of this evidence cannot logically be disputed***. The police reports from Bibb County and South Fulton help establish when Plaintiff was at home or in state custody, which further helps establish the timeline around Plaintiff's trafficking that she has failed to provide.

And, as to the College Park police report and video interview, not only do they establish the date on which Plaintiff's trafficking allegedly ended -- they include statements from Plaintiff which directly contradict her testimony herein.

While Plaintiff testified she told the police nothing – not even her name – it turns out, she told the police plenty. Specifically, she told them about Nachelle Clark, how Clark trafficked her, and where she trafficked her – which did not involve the Super 8. Not only did Plaintiff lie under oath, but it was her who abused discovery by failing to identify her prior statement to the police, which would have been responsive to Interrogatory No. 12 and 14 or Requests for Production 9 and 11. ***Ex. "A"***; *see also* Pltf. Resp. to Def. RPDs., attached at ***Exhibit "C"***.

***D. Defendant's acquisition of the evidence and production to Plaintiff.***

All of the evidence at issue is public records, and they were procured by Defendant via open records requests (ORRs). While the subject ORRs were sent after discovery concluded on May 11, 2026, Defendant would point out that its current attorneys did not appear in this action until June 10, 2026 (***Doc. 33***), and it was current counsel who sent the ORRs.

The ORR was sent to Bibb County sometime after June 10, 2026, and documents were received (two police reports) on June 23, 2026.[1]

The ORR to the College Park Police Department was also sent sometime after June 10, 2026, and the department responded on or about July 2, 2026 –

[1] The ORRs were sent via various police departments' on-line request portals, and, unless otherwise noted, counsel has been unable to determine with specificity the date the requests were initially made. The paralegal who initially sent the ORRs has since left the firm.

producing its single incident report (with a certificate of authentication). Upon seeing that the police report referenced a body worn camera, counsel followed up with the College Park Police, on or about July 31, 2026, requesting the video footage. On August 11, 2026, the department responded and provided the video interview of Plaintiff.

The video was produced to Plaintiff, along with the above reference police reports, on August 21, 2026.[2]

### *E.* ***Plaintiff*** **Cannot Establish a Basis for Exclusion Under Rule 37(c)(1).**

Plaintiff's request for exclusion rests on a fundamental misconception. Rule 37(c)(1) does not impose automatic exclusion whenever evidence is obtained after the discovery deadline. It applies when a party "fails to provide information or identify a witness as required by Rule 26(a) or (e)," and even then exclusion is unwarranted where the failure was "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Here, Defendant did not possess the evidence during discovery. Indeed, Defendant's present counsel did not even enter this case until after discovery closed. The documents were subsequently obtained from third-party governmental agencies and produced to Plaintiff. Plaintiff therefore cannot credibly characterize

[2] In addition to the reports and video mentioned above, the production contained some ancillaray documents, such as video footage and witness statements associated with Plaintiff's shoplifting arrest.

Defendant's failure to produce during discovery documents that Defendant did not then possess as concealment or discovery abuse.

Nor has Plaintiff demonstrated prejudice. The reports concern ***Plaintiff herself*** and largely document dates on which she was at home, in foster care, or otherwise outside the control of her alleged traffickers. More importantly, the College Park materials contain ***Plaintiff's own contemporaneous statements*** concerning her trafficking – statements she made voluntarily to law enforcement and necessarily knew existed. Plaintiff cannot plausibly claim unfair surprise from her own prior statements, particularly where Defendant produced the materials approximately one month before trial.

To the extent Plaintiff contends Defendant was prohibited from obtaining public records after discovery closed, that argument likewise fails. Although Rule 45 subpoenas used to obtain new evidence generally constitute discovery subject to the discovery deadline, ***Circle Group, LLC v. Southeastern Carpenters Regional Council***, 836 F. Supp. 2d 1327, 1351–52 (N.D. Ga. 2011), Defendant did not issue Rule 45 subpoenas. It submitted requests to governmental agencies under Georgia's Open Records Act. Plaintiff identifies no rule, scheduling order, or authority prohibiting counsel from investigating the facts of a case or obtaining publicly available governmental records after discovery closes. The discovery deadline is not a prohibition against trial preparation or factual investigation.

Finally, Plaintiff's position is particularly inequitable because the most significant evidence – the College Park video – is evidence ***Plaintiff herself was required to identify in discovery***. Certainly, Plaintiff cannot withhold or fail to identify her own prior statement and then invoke Rule 37 to prevent Defendant from using the statement once it is independently discovered..

**CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiff's Motion in Limine to Exclude All Evidence not Produced in Discovery.

Respectfully submitted this 8th day of September, 2026.

**WEINBERG, WHEELER,**
**HUDGINS, GUNN & DIAL, LLC**

*/s/ Christopher T. Byrd*
Christopher T. Byrd
GA Bar No. 100854
Shubhra R. Mashelkar
GA Bar No. 475388
Patrick B. Moore
GA Bar No. 520390
3344 Peachtree Road, N.E.
Suite 2400
Atlanta, Georgia 30326
(404) 876-2700
cbyrd@wwhgd.com
smashelkar@wwhgd.com

*Counsel for Defendant Lincoln Bancorp, LLC*

## RULE 7.1D CERTIFICATE OF TYPE, FORMAT AND FONT SIZE

Under Local Rule 7.1D of the United States District Court for the Northern District of Georgia, the undersigned certifies that this submission to the Court was computer-processed, double-spaced between lines, and prepared with 14-point Times New Roman font.

*/s/ Christopher T. Byrd*
Christopher T. Byrd

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 8, 2026, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing by electronic mail to all counsel or parties of record:

Jonathan Tonge, Esq.
Patrick J. McDonough, Esq.
Jennifer Webster, Esq.
ANDERSEN, TATE & CARR, PC
One Sugarloaf Centre
1960 Satellite Blvd, Ste. 4000
Duluth, GA 30097
jwebster@atclawfirm.com
jtonge@atclawfirm.com
pmcdonough@atclawfirm.com

**WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC**

*/s/ Christopher T. Byrd*
Christopher T. Byrd
GA Bar No. 100854