**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| J.R.,<br><br>Plaintiff,<br><br>v.<br><br>LINCOLN BANCORP, LLC,<br><br>Defendant. | CIVIL ACTION FILE<br>NO. 1:25-cv-04629-JPB |

**<u>DEFENDANT LINCOLN BANCORP, LLC'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF ANIQUE WHITMORE, LPC</u>**

Defendant Lincoln Bancorp, LLC ("Lincoln Bancorp"), pursuant to Federal Rules of Evidence 104(a), 401, 402, 403, and 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), moves to exclude the expert testimony of Plaintiff's retained expert, Anique Whitmore, LPC.[1]

---

[1] Defendant previously filed a Motion to Exclude Whitmore, based on Plaintiff's untimely disclosure of her, and that motion remains pending. Should that earlier motion be denied, Defendant respectfully requests that Whitmore be struck under Daubert. Defendant would further note that Whitmore was deposed, by agreement of counsel, on September 3, 2026, which is why the current motion is just now being filed. The parties have agreed to September 9, 2026, as the due date for Defendant's Daubert motion.

The Defendant would further note that Whitmore's expedited deposition transcript was just received the morning of this filing. Counsel has not yet had time to review Whitmore's transcript, and Defendant is mindful of filing this motion on the agreed-upon date, in order to provide Plaintiff as much time as possible to review and possibly respond before the pre-trial conference. As such, the references to Whitmore's deposition are based on counsel's recollection of the testimony

## I.

## INTRODUCTION

Anique Whitmore is a licensed professional counselor with substantial experience working with persons reporting sexual exploitation and human trafficking. Defendant does not dispute that experience. But credentials do not make every opinion offered by an experienced witness admissible. Rule 702 separately requires reliable methodology, sufficient facts and data, reliable application of the methodology to the facts, and an opinion that actually assist the jury. ***United States v. Frazier***, 387 F.3d 1244, 1260–61 (11th Cir. 2004) (en banc).

Whitmore's report presents two fundamentally different categories of testimony, and both are problematic.

First, Whitmore offers case-specific psychological opinions concerning Plaintiff. Those opinions are based principally upon a single, approximately three-hour Zoom interview. Whitmore did not administer a standardized PTSD assessment. She conducted no structured PTSD diagnostic interview. She did not systematically apply the DSM-5 criteria. She performed no symptom-validity or malingering testing. She kept no notes reflecting the specific questions posed or Plaintiff's specific answers. She did not review Plaintiff's medical or mental-health

---

offered. Defendant will provide citations to Whitmore's transcript supporting counsel's representations at the pre-trial conference and/or any hearing the Court holds in regard to the present motion.

records, DFCS records, juvenile records, or records from Plaintiff's numerous prior psychiatric hospitalizations. She did not speak with family members, treatment providers, teachers, caseworkers, or others familiar with Plaintiff's history.

Whitmore nevertheless invokes both PTSD and the DSM-5, tells the jury that Plaintiff reports a "symptom profile" consistent with PTSD, characterizes those symptoms as "effects from JR's sex trafficking experience," and declares the information Plaintiff supplied to be "reliable and valid." That is not a valid methodology; rather, it is *ipse dixit*.

Second, and independently, Whitmore proposes to educate the jury about the supposed characteristics of trafficking victims, methods employed by traffickers, reasons victims do not escape, and characteristics of environments in which trafficking commonly occurs. She then compares Plaintiff, her alleged traffickers, and Defendant's hotel to those generalized profiles.

That testimony presents a different evidentiary problem. Plaintiff's claim against Defendant does not turn upon whether traffickers generally use manipulation, whether trafficking victims generally have certain vulnerabilities, whether victims generally fail to seek help, or whether traffickers frequently use hotels near interstate highways. The relevant questions concern this Plaintiff, this alleged trafficking venture, this Defendant, and what this Defendant knew or should have known.

Whitmore's generalized comparisons do not answer those questions. Instead, they invite an impermissible chain of reasoning: because Plaintiff, her allegations, or the Super 8 resemble characteristics Whitmore has observed in ***other*** trafficking matters, the jury should infer that Plaintiff's account is true, that the Super 8 was a "trafficking environment," and ultimately that Defendant should have recognized Plaintiff as a trafficking victim.

Whitmore goes particularly far in her discussion of the Super 8. She opines that conditions at the property "encouraged" traffickers and purchasers of commercial sex, "discouraged" victims from escaping, normalized trafficking, and rendered the property consistent with environments commonly used for trafficking. Those are not psychological-treatment opinions. They are case-specific opinions concerning hotel conditions, criminal behavior, and what supposedly should have been apparent from those conditions. Whitmore identifies no methodology that permits an LPC to convert disputed testimony about hotel operations into such conclusions. Rule 702 does not permit Plaintiff to bridge these analytical gaps with Whitmore's experience.

The Court should exclude Whitmore's case-specific opinions. The Court should also exclude her generalized trafficking-profile testimony to the extent Plaintiff intends to use it to corroborate Plaintiff's account, characterize the Super 8 as a trafficking environment, establish what Defendant knew or should have

known, or otherwise substitute generalized characteristics of unrelated trafficking incidents for evidence concerning this case.

## II.

## BACKGROUND

Plaintiff retained Whitmore to conduct what Whitmore describes as a "clinical assessment" for purposes of this litigation. Whitmore Report ("Report"), attached at Exhibit "A", at p. 14. Whitmore's assignment, however, extended beyond Plaintiff's psychological condition. She states that she was specifically retained to provide opinions concerning:

1. whether vulnerabilities present in Plaintiff's life were consistent with vulnerabilities commonly found in trafficking victims;

2. whether the alleged methods of exploitation were consistent with methods commonly used by traffickers;

3. whether Plaintiff's asserted inability to escape or seek assistance was consistent with behavior commonly found among trafficking victims;

4. whether Plaintiff's asserted psychological effects were consistent with effects reported among trafficking victims; and

5. whether the environment in which Plaintiff allegedly was trafficked was consistent with environments commonly used in trafficking operations.

***Id.*** Thus, the structure of Whitmore's assignment is comparative. She identifies characteristics that she believes commonly exist in trafficking cases and then determines whether Plaintiff, her alleged traffickers, Plaintiff's behavior, and the Super 8 fit those characteristics.

### *A. Whitmore's Assessment of Plaintiff.*

Whitmore's ultimate opinion as to Plaintiff's damages/injuries reads as follows:

> Considering all materials reviewed, it is in this assessor's expert clinical opinion that JR reports experiences and symptoms associated with significant trauma. JR's reported symptoms, including triggers, anxiety, depression, flashbacks, inability to trust others, difficulty with interpersonal relationships, are consistent with the symptom profile of post-traumatic stress disorder as catalogued in the DSM-5. These effects from JR's sex trafficking experience are consistent with the effects found in many other victims of sex trafficking.

***Id.*** at 23.

Whitmore met Plaintiff on a single occasion – when she interviewed Plaintiff by Zoom on May 4, 2026. During that interview, Whitmore administered no response-validity test, malingering assessment, forensic credibility protocol, corroboration methodology, or other procedure capable of establishing that Plaintiff's historical account was "reliable and valid." Likewise, Whitmore reviewed no historical documents regarding Plaintiff by which to measure or confirm Plaintiff's account.[2] Nevertheless, Whitmore summarily concluded that

---

[2] Whitmore identified an extensive history of psychological trauma and psychiatric difficulties unrelated to the alleged conduct of Defendant (including prior psychiatric hospitalizations), but neither asked for nor reviewed any related records. ***Ex. "A"***, pp. 15–16, 21–23. At her deposition, Whitmore admitted that

all the information supplied by Plaintiff was true: "In the opinion of this examiner, the information obtained during this assessment is considered reliable and valid." ***Id.*** at 15.

During her interview, Plaintiff herself attributed her symptoms to trafficking as well as "domestic violence, repeated instability, and prolonged exposure to unsafe environments while involved with DFCS." ***Id.*** at 21. And Whitmore expressly acknowledged that Plaintiff's functioning "appears significantly impacted by longstanding childhood trauma, emotional neglect, instability, and child exploitation." ***Id.*** at 22. Yet, Whitmore did nothing to look into Plaintiff's prior psychological history.[3] Instead, as noted above, Whitmore ultimately attributed Plaintiff's symptoms to the "effects from JR's sex trafficking." ***Id.***, p. 23.

Despite her ability to do so, Whitmore didi not diagnose Plaintiff with PTSD. She did not, for example, administer the DSM-5 diagnostic criteria for PTSD, and, thus, she cannot identify the individual criteria she evaluated or whether Plaintiff satisfied each one. Whitmore identifies no differential diagnostic or etiological analysis. And she does not explain how she determined that any

---

records, such as prior mental health records or DFCS records, are typically the sorts of things that professionals review in assessing a patient.

[3] At her deposition, Whitmore admitted that she is qualified to administer such psychiatric tests and evaluations; she just did not do it.

particular symptom was an "effect[] from JR's sex trafficking experience," rather than one or more of the numerous other traumatic experiences and psychiatric conditions documented in her own report.

***B. Whitmore's Trafficking-Profile and Hotel-Environment Opinions.***

Pages 4 through 13 of Whitmore's report contain an extended discussion of trafficking generally. Among other things, Whitmore discusses purported vulnerabilities of trafficking victims; methods allegedly used by traffickers, including the "lover method," violence, manipulation, fraud, drug dependence, and "seasoning"; trauma bonding; reasons trafficking victims may not escape or seek assistance; and psychological consequences associated with trafficking.

Whitmore then applies those generalized characteristics to Defendant's hotel and to Plaintiff. She states that there are "several commonalities" between the Super 8 and environments commonly associated with trafficking. She cites its proximity to an interstate[4], the alleged use of portions of the property not easily visible, alleged prostitution and drug activity[5], the purported frequency with which men entered and left rooms, the presence of young women at the hotel, and other disputed facts. Then she opines that conditions at the hotel normalized illegal

[4] At her deposition, Whitmore could provide no insight as to the prevalence of trafficking at highway-adjacent sites, versus non high-way adjacent sites.

[5] At her deposition, Whitmore could not quantify the number of prostitution or drug offenses occurring at the Super 8, or define what would be considered a high amount of illegal activity.

activity, made traffickers and purchasers feel safe and welcome, discouraged victims from escaping, and that "the environment fostered at the Super 8 is consistent with the environments reported by most sex trafficking victims I have encountered or worked with." ***Id.*** at 24–25. Whitmore similarly opines that Plaintiff's failure to seek further assistance from hotel personnel was "a rational response" to the conditions at the Super 8 and was consistent with the responses of trafficking victims with whom Whitmore has worked. ***Id.*** at 19.

## III.

## LEGAL STANDARD

Federal Rule of Evidence 702 permits expert testimony only if the proponent demonstrates to the Court that the expert's specialized knowledge will help the trier of fact understand the evidence or determine a fact in issue; the expert's testimony is based on sufficient facts or data and the product of reliable principles and methods; and the expert's opinion reflects a reliable application of those principles and methods to the facts of the case. Fed. R. Evid. 702.

The Eleventh Circuit applies a "rigorous three-part inquiry" under which the proponent must establish that: (1) the expert is qualified to testify competently regarding the matters she intends to address; (2) the methodology by which she reaches her conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact through the application of specialized expertise to understand the

evidence or determine a fact in issue. ***Frazier***, 387 F.3d at 1260. Qualification and reliability are separate requirements. "[T]he reliability criterion remains a discrete, independent, and important requirement for admissibility." ***Id.*** at 1261. Thus, substantial experience does not relieve an expert's proponent of establishing a reliable method, and Courts need not accept an expert's assurance that her methodology is reliable merely because she possesses relevant credentials. See ***Hughes v. Kia Motors Corp.***, 766 F.3d 1317, 1331 (11th Cir. 2014). Testimony connected to the evidence only by the expert's *ipse dixit* is inadmissible when "there is simply too great an analytical gap between the data and the opinion proffered." ***General Electric Co. v. Joiner***, 522 U.S. 136, 146 (1997).

## IV.

## ARGUMENT

### A. *Whitmore's Experience Does Not Establish a Reliable Methodology for Her Case-Specific Psychological Opinions.*

Whitmore's report and testimony fail to disclose any methodology supporting the particular clinical opinions she intends to offer concerning Plaintiff. The Eleventh Circuit addressed an analogous problem in ***Hall v. United Insurance Co. of America***, 367 F.3d 1255 (11th Cir. 2004). There, a licensed professional counselor offered an expert mental-health opinion concerning an individual's competence. The district court excluded the opinion, and the Eleventh Circuit affirmed because the proponent failed to demonstrate that the counselor relied

upon sufficient facts and data or identify scientific methodology or literature supporting his conclusion or method. ***Id.*** at 1261–62. Thus, ***Hall*** drives home the well-settled axiom that professional credentials do not eliminate Rule 702's independent reliability requirements.

Here, while Whitmore invokes her "25+ years of experience as a licensed psychotherapist" (***Ex. "A"***, p. 4), she offers no explanation (i.e. methodology) of how her experience permitted her to move from Plaintiff's self-report to the case-specific opinions she offers. As Whitmore readily admitted: she administered no standardized psychological instrument, no symptom-validity measure, no malingering assessment. Instead, the "methodology" employed by Whitmore can be summarized thusly:

1. Plaintiff reported certain symptoms;
2. some of those symptoms may occur among individuals with PTSD; and
3. Plaintiff's symptoms therefore are "consistent with" the PTSD symptom profile.

This is simply a conclusion – and an unscientific one at that, since someone can have symptoms "consistent with" a medical or psychological condition without actually suffering from that condition. Whitmore's opinion lacks any established methodology satisfying Rule 702.

**B. *Whitmore's "Consistent With PTSD" Opinion Does Not Reflect a Reliable Application of the DSM-5.***

Whitmore identifies "triggers, anxiety, depression, flashbacks, inability to trust others [and] difficulty with interpersonal relationships" and tells the jury those reported symptoms "are ***consistent with*** the symptom profile of post-traumatic stress disorder as catalogued in the DSM-5." ***Ex "A"*** at 23 (emphasis added). Yet Whitmore cannot state which DSM-5 PTSD criteria Whitmore evaluated; which criteria Plaintiff satisfied; the evidentiary basis for any individual criterion; etc. This is because, despite lip service to the DSM-5, Whitmore did not actually evaluate or diagnose Plaintiff pursuant to the DSM-5.

Rule 702(d) requires reliable application of principles and methods to the facts. An expert cannot invoke an authoritative diagnostic manual, omit the process ordinarily necessary to determine whether the disorder exists, and nevertheless offer a clinically suggestive formulation that communicates much of the persuasive force of a diagnosis. That is especially important following the 2023 amendment to Rule 702. An expert may not state a conclusion more broadly than the methodology supports and just leave the problem for cross-examination.[6]

---

[6] Admittedly, Whitmore may possess generalized knowledge that PTSD can occur following trauma. But the question is not whether PTSD exists or whether certain symptoms can occur in persons suffering from it. The question is whether this Plaintiff suffers from PTSD, which requires a diagnosis that Whitmore did not perform.

### *C. Consistent With PTSD" Gives the Jury the Functional Equivalent of a Diagnosis Without the Methodology Necessary to Support One.*

A juror hearing a licensed psychotherapist testify that Plaintiff displays symptoms "consistent with the symptom profile of post-traumatic stress disorder as catalogued in the DSM-5" will naturally understand that testimony as clinical confirmation that Plaintiff suffers from PTSD—or, at minimum, as evidence approaching such confirmation. Yet Whitmore does not diagnose PTSD. The formulation therefore permits Plaintiff to obtain much of the evidentiary benefit of a PTSD diagnosis without subjecting the diagnosis to the methodology required to reliably reach it – a methodology that, had it been followed, could have been examined.[7]

Clearly, Rule 702 does not permit such an end-run (i.e. cloaking an expert's opinion with the credibility of a well-known diagnostic tool where the expert did not follow the methodology the diagnosis requires). Alternatively, the PTSD terminology (and any optinion which purportedly describes Plaintiff as suffering from some mental condition) should be excluded under Rule 403. The limited

[7] At her deposition, Whitmore admitted that performing a DSM-5 diagnosis (as well as administering any number of psychological testing protocols to confirm such a diagnosis or to check for malingering and other relevant presentations) would create a record, which could, in turn, be reviewed by other professionals, who could then evaluate Whitmore's methodology and confirm (or refute) her determinations. Whitmore also admitted that her evaluation of the Plaintiff in this case in incapable of any such review – there is nothing that any other professional can review or evaluate.

probative value of stating that Plaintiff experiences symptoms similar to persons suffering from PTSD is substantially outweighed by the likelihood that jurors will understand Whitmore's testimony as a professional diagnosis.

### *D. Whitmore Has No Reliable Methodology for Attributing Plaintiff's Symptoms to Trafficking.*

Immediately after invoking PTSD, Whitmore states: "These effects from JR's sex trafficking experience are consistent with the effects found in many other victims of sex trafficking." ***Ex "A"*** at 23. The phrase "effects from JR's sex trafficking experience" necessarily attributes the identified symptoms to trafficking, but Whitmore performs no disclosed causal analysis supporting that attribution. Indeed, her own report documents numerous alternative potential causes, none of which Whitmore bothered to look into.[8]

Despite those competing causes, Whitmore does not: determine whether Plaintiff experienced the identified symptoms before the alleged trafficking; assess what symptoms resulted from childhood sexual abuse, domestic violence, substance abuse, and abandonment; or evaluate and rule in or rule out competing causes. Instead, she moves directly from association to attribution. Rule 702 requires the Court to police that analytical gap, and a reliable specific-causation

[8] The most glaring example of Whitmore's inaction is that, after Plaintiff told Whitmore that she had been hospitalized for psychiatric conditions on numerous occasions and had been in the DFCS system for years, Whitmore never asked for the associated records. Whitmore testified that such records would commonly be reviewed as part of a psychological assessment.

analysis requires more than identifying an event capable of producing an effect and observing that the plaintiff reports that effect. *See* ***McClain v. Metabolife International, Inc.***, 401 F.3d 1233, 1252–53 (11th Cir. 2005); *see also* ***Hendrix ex rel. G.P. v. Evenflo Co***., 609 F.3d 1183, 1195–97 (11th Cir. 2010).

***E. Whitmore's Generalized Trafficking-Profile Opinions Do Not Assist the Jury in Determining Defendant's Liability.***

Much of the report consists of generalized testimony about what trafficking purportedly looks like: who traffickers target, how traffickers recruit and control victims, why victims fail to escape, how victims behave, where traffickers operate, and what environments traffickers purportedly prefer. Whitmore then compares Plaintiff, her alleged traffickers, and the Super 8 against those generalized characteristics. But Plaintiff's claim against Defendant do not turn on what traffickers generally do or what trafficking victims generally experience. Under § 1595(a), Plaintiff must prove the elements of her beneficiary claim against ***this Defendant***—including the requisite participation, benefit, and knowledge as to the venture through which Plaintiff claims she was trafficked. Generalized evidence does not answer those case-specific questions.

Evidence that traffickers commonly employ manipulation does not establish what Plaintiff's traffickers did; evidence that trafficking victims commonly possess certain vulnerabilities does not establish that Plaintiff did; and evidence that trafficking victims sometimes fail to escape does not establish why Plaintiff did not

leave.[9] Whitmore's experience with trafficking victims does maker her generalized trafficking information relevant to this case.

**F. *Whitmore's "Trafficking Environment" Opinions Are Particularly Improper Because They Convert General Trafficking Experience Into Opinions Concerning the Super 8, Criminal Behavior, and Defendant's Knowledge.***

Whitmore goes beyond simply reciting general trafficking concepts. She offers opinions the Super 8 is consistent with other, unrelated trafficking locations, and she speculates that traffickers felt safe at the Super 8 and that trafficking victims were discouraged from escaping. ***Ex "A"*** at 24–25. These opinions should be excluded for several reasons.

First, such opinions are irrelevant to Plaintiff's claims herein, which turn on facts specific to Plaintiff's alleged trafficking and what Defendant knew or should have known.

Second, they are not psychological-treatment opinions. They concern hotel operations, criminal behavior, the effect of property conditions upon traffickers

[9] In fact, it is undisputed that Plaintiff ***did*** leave her traffickers. She left their alleged control and returned to her home/foster home on several occasions, only to runaway from her home and return to her traffickers. In addition, Plaintiff testified that her ordeal ended when she chose to just walk away. Whitmore, however, knew none of this. Plaintiff omitted all of these facts from her "self report", and, at Whitmore's deposition, Whitmore had no understanding of when or how many times Plaintiff left her traffickers, why she returned, or the facts surrounding her alleged escape. Therefore, Whitmore's application of general trafficking knowledge to what went on with Plaintiff is especially problematic, as Whitmore conceded that there are ***substantial*** portions of Plaintiff's trafficking which Whitmore knows nothing about.

and purchasers, and the purported significance of particular conditions as indicators of criminal conduct. Whitmore does not establish that her work as an LPC provides expertise in hotel operations, premises security, criminology, crime deterrence, or the effect of property-management practices on criminal decision-making.

Third, Whitmore identifies no methodology by which she determined that particular hotel characteristics "encouraged" traffickers, made purchasers feel safe, or discouraged victims from leaving. Nothing in the report identifies a validated body of data comparing the Super 8 to hotels with and without trafficking, a relevant error rate, criteria for identifying a "trafficking environment," or any objective procedure by which the conclusion could be tested.

Fourth, to the extent Whitmore references what actually occurred at the Super 8, such "opinions" merely repackage factual evidence. Jurors do not need an LPC to simply repeat evidence about what occurred at the Super 8; the jury can evaluate the testimony itself.

Finally, Whitmore cannot opine directly or indirectly on Defendant's state of mind. Whether Lincoln Bancorp possessed the knowledge required under § 1595(a) is a question for the jury based upon the admissible evidence concerning Defendant—not an inference an LPC may draw from generalized trafficking experience. ***Kelley v. C.R. Bard, Inc.***, 644 F. Supp. 3d 1316, 1343 (N.D. Ga.

2022) (excluding speculative expert opinions concerning another person's state of mind); ***Omar v. Babcock***, 177 F. App'x 59, 63 n.5 (11th Cir. 2006) (expert witness not an expert on the state of mind of others).

### G. Whitmore's Opinion That Plaintiff's Information Was "Reliable and Valid" Is Unsupported and Impermissibly Invades the Jury's Role.

Whitmore separately states: "In the opinion of this examiner, the information obtained during this assessment is considered reliable and valid." Ex "A" at 15. The report identifies no methodology capable of supporting that conclusion. But, more fundamentally, determining whether Plaintiff is telling the truth is the quintessential function of the jury. Whitmore may, if otherwise relevant, describe Plaintiff's demeanor during the interview. She may not, however, testify that Plaintiff herself—or the information Plaintiff supplied—is reliable, valid, accurate,

## V.

## CONCLUSION

For the reasons set forth above, Defendant respectfully requests this Court enter an order excluding Whitmore's opinions and testimony.

Respectfully submitted this 9th day of September, 2026.

**WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC**

*/s/ Christopher T. Byrd*
Christopher T. Byrd
GA Bar No. 100854
Shubhra R. Mashelkar
GA Bar No. 475388
Patrick B. Moore
GA Bar No. 520390
3344 Peachtree Road, N.E.
Suite 2400
Atlanta, Georgia 30326
(404) 876-2700
cbyrd@wwhgd.com
smashelkar@wwhgd.com

*Counsel for Defendant Lincoln Bancorp, LLC*

## RULE 7.1D CERTIFICATE OF TYPE, FORMAT AND FONT SIZE

Under Local Rule 7.1D of the United States District Court for the Northern District of Georgia, the undersigned certifies that this submission to the Court was computer-processed, double-spaced between lines, and prepared with 14-point Times New Roman font.

*/s/ Christopher T. Byrd*
Christopher T. Byrd

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 9, 2026, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing by electronic mail to all counsel or parties of record:

Jonathan Tonge, Esq.
Patrick J. McDonough, Esq.
Jennifer Webster, Esq.
ANDERSEN, TATE & CARR, PC
One Sugarloaf Centre
1960 Satellite Blvd, Ste. 4000
Duluth, GA 30097
jwebster@atclawfirm.com
jtonge@atclawfirm.com
pmcdonough@atclawfirm.com

**WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC**

*/s/ Christopher T. Byrd*
Christopher T. Byrd
GA Bar No. 100854