UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

J.R.,

Plaintiff,

v.

LINCOLN BANCORP, LLC,

Defendant.

CIVIL ACTION FILE

NO. 1:25-cv-4629-JPB

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF ANIQUE WHITMORE, LPC**

## INTRODUCTION

Anique Whitmore is a licensed psychotherapist with more than twenty-five years of experience working with victims of sexual abuse, exploitation, and sex trafficking. [Doc. 86.1 at 3]. Defendant does not dispute her qualifications or her substantial experience in this field. [Doc. 86 at 2]. Instead, it challenges the methods she used and the scope of the opinions she offers.

Much of Defendant's challenge begins from the wrong premise. Ms. Whitmore did not diagnose J.R. with post-traumatic stress disorder ("PTSD"). She concluded that J.R. reports symptoms consistent with the PTSD symptom profile catalogued in the DSM-5 and with effects she has observed among other sex-trafficking victims. [Doc. 86.1 at 23]. Defendant nevertheless faults her for failing to

administer standardized diagnostic tests, systematically apply every DSM-5 criterion, conduct malingering testing, and perform a differential diagnosis. [Doc. 86 at 2 and 7]. Those criticisms demand procedures designed to support a broader diagnostic or causation opinion that Ms. Whitmore does not offer.

The opinions she does offer rest on a reliable methodology. Ms. Whitmore interviewed J.R. for approximately three hours, made clinical observations during that interview, reviewed extensive case materials, and evaluated that information using more than twenty-five years of clinical experience and work with more than 500 trafficking victims. [Doc. 86.1 at 3, 15, and 26–32; Ex. 1, Whitmore Dep., 113:5–9]. She explains how that experience informs her conclusions and how she applied it to the information she reviewed. [Doc. 86.1 at 4]. Rule 702 requires no more.

Ms. Whitmore also offers testimony concerning trafficking dynamics and environments. Defendant argues that this testimony will not assist the jury because it does not resolve the elements of J.R.'s 18 U.S.C. § 1595(a) claim. But Defendant separately seeks to place before the jury J.R.'s departures from her traffickers, her returns, her "apparent freedom of movement," her contacts with law enforcement, and "the choices J.R. made when she had access to law enforcement." [Doc. 75 at 5–7]. If Defendant is permitted to invite the jury to draw conclusions from that conduct, Ms. Whitmore may provide the specialized context necessary to evaluate those

conclusions. Courts in this district have already admitted this type of trafficking-dynamics testimony in a hotel sex-trafficking case. *Does 1-4 v. Red Roof Inns, Inc.*, 688 F. Supp. 3d 1364, 1370 (N.D. Ga. 2023).

Defendant's criticisms provide grounds for cross-examination. They do not warrant exclusion under Rule 702.

## STATEMENT OF FACTS

Anique Whitmore is a licensed professional counselor with more than twenty-five years of clinical experience. [Doc. 86.1 at 3]. She specializes in forensic psychotherapy and interviewing and has interviewed or worked with more than 500 victims of sex trafficking during her career. [Doc. 86.1 at 3–4]. Her experience includes serving as Director of Forensic Services for the Fulton County District Attorney's Office, working with child advocacy centers, and providing training on sexual abuse, exploitation, and human trafficking. *Id.* She has been qualified as an expert in hundreds of cases across more than thirty jurisdictions. *Id.* Defendant does not dispute her "substantial experience working with persons reporting sexual exploitation and human trafficking." [Doc. 86 at 2].

Ms. Whitmore was retained to conduct a clinical assessment of J.R. and address five questions. She considered whether J.R.'s reported vulnerabilities, the methods used to exploit her, her inability to escape or seek help, the effects she reports, and the environment in which she was trafficked were consistent with patterns

Ms. Whitmore has observed among sex-trafficking victims. [Doc. 86.1 at 14]. Her assignment did not ask her to diagnose J.R. with PTSD or determine the cause of J.R.'s psychological symptoms. And Ms. Whitmore did not do so.

Ms. Whitmore interviewed J.R. for approximately three hours on May 4, 2026. *Id.* at 14–15; Ex. 1, Whitmore Dep., 113:5–9. During the interview, she explored J.R.'s history, past and present behavior, reported trafficking experiences, and current social and emotional functioning. *Id.* Ms. Whitmore observed that J.R. was attentive and fully oriented, willingly participated, maintained adequate attention and concentration, comprehended the assessment procedures and instructions, and demonstrated consistent effort. *Id.* at 15. In that context, Ms. Whitmore stated that "the information obtained during this assessment is considered reliable and valid." *Id.*

The assessment was not based on J.R.'s interview alone. Ms. Whitmore reviewed J.R.'s deposition and exhibits, the depositions of Tony Tran, Louis Vu, Defendant's Rule 30(b)(6) representative, and N.N., declarations from hotel employees, investigative materials, pleadings, discovery responses, and other case materials. *Id.*, Ex. A. Her assessment also considered J.R.'s broader history. The report discusses childhood sexual abuse, emotional neglect, instability while in DFCS custody, domestic violence, substance use, and other traumatic experiences. *Id.* at 15–16, 21–23.

Based on that assessment, Ms. Whitmore concluded that J.R. "reports experiences and symptoms associated with significant trauma." *Id.* at 23. She identified reported symptoms including triggers, anxiety, depression, flashbacks, inability to trust others, and difficulty with interpersonal relationships. *Id.* She concluded that those reported symptoms "are consistent with the symptom profile of post-traumatic stress disorder as catalogued in the DSM-5" and that the reported effects are consistent with effects found among other victims of sex trafficking. *Id.* Ms. Whitmore did not diagnose J.R. with PTSD.

Ms. Whitmore also addressed trafficking dynamics, including vulnerabilities commonly observed among trafficking victims, methods traffickers use to recruit and control victims, and reasons victims may not escape or seek assistance. [Doc. 86.1 at 5–14]. In applying that experience to J.R., Ms. Whitmore considered J.R.'s reported attempts to leave, the methods her trafficker allegedly used to prevent her from leaving, and an incident in which he choked J.R. after she asked to go. *Id.* at 16–21. She also considered J.R.'s reported efforts to seek help from hotel personnel, the response she received, and the conditions she encountered at the hotel. *Id.* at 19–21. Based on those circumstances and her experience with trafficking victims, Ms. Whitmore concluded that J.R.'s failure to seek further help from hotel staff was a "rational response." *Id.* at 19. At deposition, Ms. Whitmore also addressed J.R.'s

history of running away and discussed the June 2021 episode reflected in the police records. Ex. 1, Whitmore Dep., 166:17-177:7.

Finally, Ms. Whitmore considered the environment at the Super 8. Her report discusses J.R.'s account of commercial sex occurring repeatedly at the property, the presence and conduct of traffickers and buyers, and testimony from hotel employees and other sex-trafficking victims concerning prostitution and other activity they observed at the hotel. [Doc. 86.1 at 23–25.] Based on that information and her experience working with sex-trafficking victims, Ms. Whitmore concluded that the Super 8 environment "is consistent with the environments reported by most sex trafficking victims I have encountered or worked with." *Id.* at 24. She does not offer an opinion about what Defendant knew or should have known.

## LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. A qualified expert may testify if the proponent demonstrates that it is more likely than not that the expert's specialized knowledge will help the trier of fact, the testimony is based on sufficient facts or data, the testimony is the product of reliable principles and methods, and the expert's opinion reflects a reliable application of those principles and methods to the facts. Fed. R. Evid. 702. The proponent bears that burden by a preponderance of the evidence. *Id.*; Fed. R. Evid. 104(a).

The Eleventh Circuit distills that inquiry into three requirements. The expert must be qualified to testify competently about the matters addressed, the methodology used must be sufficiently reliable, and the testimony must assist the trier of fact through the application of specialized expertise. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc). Although the district court serves as gatekeeper, the reliability inquiry is "a flexible one." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594 (1993). There is no "definitive checklist or test," and the familiar *Daubert* factors do not necessarily apply to every expert or every type of expertise. *Id.* at 593; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). The inquiry depends on "the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 150.

That flexibility matters where, as here, an expert relies substantially on clinical and professional experience. The Eleventh Circuit recognizes that social-science opinions "cannot have the exactness of hard science methodologies" and that reliability may instead depend heavily on the expert's "knowledge and experience." *Carrizosa v. Chiquita Brands Int'l, Inc.*, 47 F.4th 1278, 1317–18 (11th Cir. 2022). An experience-based expert must explain how that experience leads to the conclusion reached, why the experience provides a sufficient basis for the opinion, and how it was reliably applied to the facts. *Id.* at 1318 (quoting *Frazier*, 387 F.3d at 1261).

The 2023 amendment to Rule 702 confirms that the Court must determine whether each requirement is satisfied by a preponderance of the evidence. It does not require perfection. Once the Court finds it more likely than not that an admissibility requirement has been met, further attacks "will go only to the weight of the evidence." Fed. R. Evid. 702 advisory committee's note to 2023 amendment. Thus, challenges to otherwise admissible expert testimony remain subject to "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596.

## ARGUMENT

### I. **Ms. Whitmore is qualified**.

Defendant "does not dispute" Ms. Whitmore's "substantial experience working with persons reporting sexual exploitation and human trafficking." [Doc. 86 at 2]. That concession is well taken. Rule 702 permits an expert to qualify based on "knowledge, skill, experience, training, or education," and Ms. Whitmore's more than twenty-five years of work in this field readily satisfies that standard. *See United States v. Frazier*, 387 F.3d 1244, 1260−61 (11th Cir. 2004). There is no basis to exclude Ms. Whitmore on qualification grounds. The remaining questions are whether her opinions are reliable and will assist the jury.

## II. Ms. Whitmore's methodology is reliable under Rule 702.

Defendant's reliability challenge begins from the wrong premise. Ms. Whitmore did not diagnose J.R. with PTSD, nor did she offer a forensic psychological diagnosis. She concluded that J.R. "reports experiences and symptoms associated with significant trauma," that her reported symptoms "are consistent with the symptom profile of post-traumatic stress disorder as catalogued in the DSM-5," and that the reported effects are consistent with those found among other victims of sex trafficking. [Doc. 86.1 at 23].

That distinction answers much of Defendant's motion. Defendant faults Ms. Whitmore for failing to administer standardized PTSD testing, conduct a structured diagnostic interview, systematically apply each DSM-5 criterion, perform symptom-validity or malingering testing, and conduct a differential diagnosis. [Doc. 86 at 2, 7]. Those criticisms assume she undertook to diagnose J.R. with PTSD or determine what caused her symptoms. She did neither.[1] Rule 702 requires a reliable basis for

---

[1] Defendant points to Ms. Whitmore's statement that "[t]hese effects from JR's sex trafficking experience are consistent with the effects found in many other victims of sex trafficking." [Doc. 86.1 at 23]. In context, Ms. Whitmore's opinion is comparative. She addresses whether J.R.'s reported effects are consistent with those observed among other trafficking victims. Her report expressly recognizes multiple sources of trauma and instability in J.R.'s history and does not attempt to assign particular symptoms among those experiences. *Id.* at 21–23. To the extent the phrase "from JR's sex trafficking experience" could be read to imply a broader causal attribution, Plaintiff does not offer Ms. Whitmore's testimony for that purpose.

the opinions an expert actually offers. It does not require an expert to employ procedures necessary to support a materially broader opinion she does not offer.

Ms. Whitmore nevertheless did considerably more than accept J.R.'s account at face value. She interviewed J.R. for approximately three hours, explored her history and reported experiences, and made clinical observations throughout. [Doc. 86.1 at 14–15; Ex. 1, Whitmore Dep., 113:5–9]. She observed J.R.'s attentiveness, orientation, participation, concentration, comprehension, and effort. *Id.* at 15. She also reviewed extensive case materials, including J.R.'s deposition and exhibits, testimony from sex-trafficking victims, hotel employees and Defendant's representatives, investigative materials, pleadings, and discovery responses. *Id.*, Ex. A. She then evaluated that information using more than twenty-five years of clinical experience and work with more than 500 trafficking victims. [Doc. 86.1 at 3–4].

That methodology must be evaluated for what it is. The Eleventh Circuit recognizes that social-science testimony "cannot have the exactness of hard science methodologies" and that reliability in this context may instead be demonstrated through "professional experience, education, training, and observations." *Carrizosa v. Chiquita Brands Int'l, Inc.*, 47 F.4th 1278, 1318 (11th Cir. 2022). An expert who relies primarily on experience must explain how that experience leads to the conclusion reached, why it provides a sufficient basis for the opinion, and how it was reliably applied to the facts. *Id.* (quoting *Frazier*, 387 F.3d at 1261). Ms. Whitmore did

that. She identifies patterns she has observed among trafficking victims and compares those patterns to J.R.'s reported experiences, symptoms, and the other materials she reviewed. [Doc. 86.1 at 3–25]. That is the reasoned application of specialized experience that Rule 702 requires.

The absence of standardized testing does not make that methodology unreliable. In *Redmond v. City of East Point, Georgia*, a court in this District rejected a challenge to a PTSD opinion based in part on the absence of psychological testing. No. 1:00-cv-2492-WEJ, 2004 WL 6060552, at *7–8 (N.D. Ga. Mar. 29, 2004). In rejecting the challenge, the court agreed that "there is no requirement that psychological testing be administered" and emphasized that experts "may rely properly on a wide variety of sources and . . . methodologies in developing an expert opinion." *Id.* (quoting *Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1020–21 (7th Cir. 2000)). Likewise, "[m]edical professionals reasonably may be expected to rely on self-reported patient histories." *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 586 (7th Cir. 2000). Defendant may believe additional testing would have produced a more comprehensive assessment. Rule 702 does not make Defendant's preferred methodology the measure of admissibility.

And Defendant's reliance on *Hall v. United Insurance Co. of America* does not establish otherwise. 367 F.3d 1255 (11th Cir. 2004). There, a licensed professional counselor opined that an individual lacked the mental capacity to execute a

legal waiver despite the individual's treating psychiatrist having concluded that he was competent. *Id.* at 1258. The counselor offered no explanation for that disagreement, and the proponent identified no scientific methodology or literature supporting his conclusion and no evidence that similarly trained counselors were qualified to render opinions on legal capacity. *Id.* at 1261−62. None of those deficiencies is present here. Ms. Whitmore offers opinions within her demonstrated expertise and explains how that experience informs the limited comparisons she makes. *Hall* illustrates the analytical gap Rule 702 prohibits. Ms. Whitmore's report supplies the analysis that was missing there.

Defendant is also wrong that Ms. Whitmore's assessment is "incapable of any . . . review" because "there is nothing that any other professional can review or evaluate." [Doc. 86 at 13]. Her report identifies the information she considered, the subjects explored during the interview, her clinical observations, the case materials she reviewed, and the patterns against which she compared J.R.'s experiences. [Doc. 86.1 at 4–24]. At deposition, Ms. Whitmore agreed only that a formal DSM-5 diagnosis would create a record another clinician could later check. Ex. 1, Whitmore Dep. 186:19-187:25. She did not testify that her clinical assessment was unreviewable. *Id.* at 187:18−188:3. There is plenty for Defendant to examine and test.

Defendant's differential-diagnosis argument fails for the same reason. Again, Ms. Whitmore does not diagnose J.R. with PTSD or offer an opinion assigning her

symptoms to a particular cause. And her report does not ignore J.R.'s other experiences. It discusses her childhood sexual abuse, emotional neglect, instability while in DFCS custody, and subsequent abusive relationship. [Doc. 86.1 at 15–16, 21–23]. Ms. Whitmore considered those experiences. She did not attempt to assign particular symptoms among them. A differential-causation analysis is not required to support a causation opinion she does not give.

Defendant's related claim that "consistent with" is the "functional equivalent" of a PTSD diagnosis fares no better. In *United States v. Chapman*, the Tenth Circuit upheld testimony that conduct was "consistent with conduct exhibited by victims of domestic violence and sexual assault" while emphasizing that the expert did not testify that the individual was a victim of domestic violence or that domestic violence caused the conduct. 839 F.3d 1232, 1238 (10th Cir. 2016). Ms. Whitmore's opinion is similarly limited. She says J.R.'s reported symptoms are consistent with the PTSD symptom profile. She does not diagnose PTSD. Calling the former the "functional equivalent" of the latter does not make it so.

That limited opinion will also assist the jury. Ms. Whitmore is not offered to diagnose J.R. with PTSD. She provides specialized clinical context for symptoms and effects that J.R. reports experiencing and explains whether that presentation is consistent with a recognized trauma-related symptom profile and with effects she has observed among other sex-trafficking victims. Those are matters outside the

ordinary experience of jurors. Rule 702 does not require an expert to resolve an ultimate issue to be helpful. It requires only that the expert's specialized knowledge "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).

The 2023 amendment to Rule 702 does not change the result. Plaintiff must establish by a preponderance of the evidence that Ms. Whitmore's testimony will help the jury, rests on sufficient facts or data, is the product of reliable principles and methods, and reflects a reliable application of those principles and methods to the facts. Fed. R. Evid. 702(a)–(d). Plaintiff has done so. In assessing J.R.'s reported psychological effects, Ms. Whitmore considered her reported symptoms in the context of her broader history of trauma and instability and evaluated how those symptoms were reflected in her present emotional, interpersonal, and coping functioning. [Doc. 86.1 at 21–23]. She then compared that clinical presentation to the PTSD symptom profile catalogued in the DSM-5 and to effects she has observed among other trafficking victims. *Id.* at 23. That is a reliable application of her clinical methodology to the limited opinion she actually gives. Defendant's remaining criticisms concern a broader diagnostic opinion she does not offer.

## III. Ms. Whitmore's testimony on trafficking dynamics will help the jury.

Defendant next argues that Ms. Whitmore's general testimony about trafficking dynamics will not assist the jury because it does not resolve the elements of J.R.'s

claim. [Doc. 86 at 15]. Plaintiff does not contend that J.R.'s failure to leave, her returns to traffickers, or her failure to seek help are elements she must prove. Indeed, Plaintiff has separately moved to exclude evidence Defendant seeks to offer on those subjects. [Doc. 64].

But Defendant cannot have it both ways. In opposing that motion, Defendant argues that the jury should hear when J.R. left, where she went, how long she was away, "the circumstances under which she returned to the Super 8 or to an alleged trafficker," her "apparent freedom of movement," her contacts with law enforcement, and "the choices J.R. made when she had access to law enforcement." [Doc. 75 at 5–7]. Defendant says those matters bear on the chronology of J.R.'s trafficking, what Defendant could have perceived, and whether signs of trafficking should have been apparent to hotel employees. *Id.* If Defendant is permitted to invite the jury to draw conclusions from that conduct, Ms. Whitmore may explain why trafficking victims do not necessarily behave as a layperson might expect.

A court in this District has already admitted that kind of testimony. In *Does 1-4 v. Red Roof Inns, Inc.*, the Court permitted expert testimony explaining why trafficking victims may remain in abusive environments despite apparent opportunities to escape and why they may be reluctant to seek help or report abuse. 688 F. Supp. 3d 1364, 1370 (N.D. Ga. 2023). Those subjects were beyond the knowledge of the average juror. *Id.* That court also rejected the argument that general educational

testimony must be tied to the particular facts of the case. *Id.* Rule 702 likewise recognizes that an expert may "educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case." Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

The same reasoning applies to Ms. Whitmore's opinion that J.R.'s failure to seek further help from hotel employees was a "rational response" to the circumstances she reported. [Doc. 86.1 at 19]. Ms. Whitmore considered J.R.'s reported efforts to seek help, the response she received, and the conditions she encountered at the hotel. *Id.* at 19–21. Her opinion explains, based on her experience with trafficking victims, why a victim may not continue seeking assistance even when help might appear available to an outside observer. That is the same type of testimony *Does 1-4* found helpful to understanding why trafficking victims may fail to seek help despite apparent opportunities to do so. 688 F. Supp. 3d at 1370.

Defendant also overstates Ms. Whitmore's lack of knowledge about J.R.'s departures and returns. Her report discusses J.R.'s attempts to leave, the methods her trafficker allegedly used to prevent her from leaving, and an incident in which he choked J.R. after she asked to go. [Doc. 86.1 at 16–19]. At deposition, Ms. Whitmore also addressed J.R.'s history of running away and discussed the June 2021 episode reflected in the police records. Ex. 1, Whitmore Dep. at 166:17-177:7. Defendant

may challenge the completeness of that information. The record does not support its assertion that Ms. Whitmore had "no understanding" of these matters.

Plaintiff maintains that Defendant should not be permitted to put these matters before the jury in the first place. But if Defendant is permitted to do so, it cannot ask the jury to draw conclusions from J.R.'s departures, returns, apparent freedom of movement, and opportunities to seek help while excluding expert testimony explaining why those circumstances may not mean what a layperson assumes they mean.

## IV. Ms. Whitmore reliably applies her experience to the environment at the Super 8.

Defendant also challenges Ms. Whitmore's opinion that the environment at the Super 8 was consistent with environments commonly associated with sex trafficking. [Doc. 86 at 16–17]. That opinion is not based on Ms. Whitmore's experience alone. Her report identifies the characteristics she considered, explains their significance based on her experience with trafficking victims, and then identifies the evidence reflecting those characteristics at the Super 8.

For example, Ms. Whitmore considered the hotel's proximity to a busy interstate and explained that interstate access is common in trafficking environments because it provides traffickers and purchasers with easy access to and from the property. [Doc. 86.1 at 23–24]. She considered evidence that prostitution and drug activity occurred on the less-visible back side of the hotel and explained that placement in hard-to-observe areas is common in trafficking environments because traffickers

and purchasers seek to evade detection. *Id.* at 24. And she considered the reported volume of commercial-sex activity at the property, explaining that traffickers tend to congregate where buyers of commercial sex already frequent. *Id.*

Ms. Whitmore then identified evidence reflecting those conditions at the Super 8. Hotel employees described girls who appeared to be minors, women and girls openly soliciting commercial sex, frequent short-term traffic by men to hotel rooms, used condoms and other sex paraphernalia, drugs and guns, and men renting rooms occupied by multiple girls. *Id.* at 24–25. Defendant itself acknowledged that women engaged in prostitution regularly frequented the property. *Id.* at 24. Based on those circumstances and the patterns she has observed through more than twenty-five years of work with trafficking victims, Ms. Whitmore concluded that the environment at the Super 8 was "consistent with the environments reported by most sex trafficking victims I have encountered or worked with." *Id.*

Defendant faults Ms. Whitmore for being unable to quantify the prevalence of trafficking at highway-adjacent properties or define statistically what constitutes a "high" level of prostitution or drug activity. [Doc. 86 at 7–8 nn.4–5]. But Ms. Whitmore does not offer a statistical opinion about the prevalence of trafficking at hotels possessing any particular characteristic. Her opinion is a qualitative, experience-based comparison. The Eleventh Circuit recognizes that social-science opinions "cannot have the exactness of hard science methodologies" and may instead

derive their reliability from professional experience and observations. *Carrizosa*, 47 F.4th at 1318. Rule 702 requires Ms. Whitmore to explain how her experience leads to her conclusion and how she applied that experience to the facts. *Id.* She did so.

Nor does Ms. Whitmore merely repackage the factual evidence. The jury does not need an expert to tell it that prostitution occurred at the Super 8 or that men frequently entered and left hotel rooms. Ms. Whitmore provides the specialized context for that evidence. She explains why particular conditions are commonly encountered in trafficking environments and whether the combination of circumstances reflected at the Super 8 is consistent with environments reported by trafficking victims she has encountered. [Doc. 86.1 at 23–25]. That comparison draws on experience the jury does not possess.

Ms. Whitmore does not opine that Defendant knew or should have known J.R. was being trafficked. That remains for the jury. She identifies characteristics she has encountered in trafficking environments and explains whether the conditions reflected in the evidence are consistent with those characteristics. She supplies the specialized comparison. The jury decides what Defendant knew or should have known.

## V. Rule 403 does not warrant exclusion.

Finally, Defendant's invocation of Rule 403 provides no independent basis to exclude Ms. Whitmore's testimony. [Doc. 86 at 14]. Rule 403 permits exclusion

only when probative value is "substantially outweighed" by the danger of unfair prejudice, confusion, misleading the jury, or the other considerations identified in the Rule. Fed. R. Evid. 403. And "[t]here is a difference between unfairly prejudicial evidence, which may be excluded under Rule 403, and evidence that is simply adverse to an opposing party." *Does 1-4*, 688 F. Supp. 3d at 1370−71.

Ms. Whitmore's testimony is probative for the reasons discussed above. Her clinical assessment provides specialized context for understanding J.R.'s reported psychological presentation. Her testimony concerning trafficking environments addresses matters outside ordinary juror experience. And if Defendant is permitted to place J.R.'s departures, returns, apparent opportunities to leave, and contacts with law enforcement before the jury, Ms. Whitmore's testimony provides specialized context for evaluating the inferences Defendant asks the jury to draw from that conduct. None of that creates unfair prejudice. It simply gives the jury relevant expert context that may undermine the significance Defendant seeks to assign to particular evidence.

## CONCLUSION

Ms. Whitmore is qualified, her limited opinions are supported by a reliable clinical and experience-based methodology, and her testimony will assist the jury on matters outside ordinary experience. Defendant's objections largely demand procedures suited to opinions Ms. Whitmore does not offer or challenge the weight of the

opinions she does. The Court should deny Defendant's motion to exclude her testimony.

Respectfully submitted on September 16, 2026.

ANDERSEN, TATE & CARR, P.C.

*/s/ Jennifer M. Webster*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491
rweeks@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile
*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

Under Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Times New Roman, 14-point font.

ANDERSEN, TATE & CARR, P.C.

*/s/ Jennifer M. Webster*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491
rweeks@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile
*Attorneys for Plaintiff*