UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| J.R.,<br><br>Plaintiff,<br><br>v.<br><br>LINCOLN BANCORP, LLC,<br><br>Defendant. | CIVIL ACTION FILE<br><br>NO. 1:25-cv-04629-JPB |

**PLAINTIFF'S REPLY IN SUPPORT OF TRIAL BRIEF REGARDING DEFENDANT'S PROPOSED RULE 412 EVIDENCE**

Defendant's Response at least narrows the issue, but doesn't obviate the need to comply with the federal rules. Plaintiff does not contend that every reference to sex trafficking triggers Rule 412. The Rule excludes evidence offered to prove that a victim engaged in "***other*** sexual behavior" or has a sexual predisposition. Fed. R. Evid. 412(a) (emphasis added). The word "other" matters. The trafficking that occurred at this Super 8 is not "other" sexual behavior; it is the sexual behavior this case is about. Collateral sexual conduct and trafficking at ***other*** places and ***other*** times are different.

That distinction answers Defendant's argument that Rule 412 requires the exclusion of T.H., N.N., and D.B., Plaintiff's police report, and the investigating officers. *See* Doc. 106 at 2-3. It does not. What happened at the Super 8 is intrinsic to the

case and falls outside Rule 412(a)(1). However, the witnesses' sexual histories and trafficking at other hotels do not.

Defendant's Response also confirms the continuing procedural problem. Purposes vaguely announced for the first time in a September 16 response cannot substitute for the motion, notice, good-cause showing, and in camera hearing that Rule 412(c) required by September 4.

## REPLY

### I. The word "other" defeats Defendant's argument that Plaintiff's own Super 8 evidence requires Rule 412 notice.

Rule 412(a)(1) prohibits evidence offered to prove that a victim engaged in "other sexual behavior." The word "other" was deliberately used "to suggest some flexibility in admitting evidence 'intrinsic' to the alleged sexual misconduct." Fed. R. Evid. 412 advisory committee's notes. In *Graf v. Morristown-Hamblen Hospital Association*, the Sixth Circuit held that evidence of the specific sexual encounter at the center of the case was not "other sexual behavior." 155 F.4th 578, 593 (6th Cir. 2025). But, if the evidence were instead offered to prove sexual encounters before or after the alleged rape, it would be "other" sexual behavior and fall within Rule 412. *Id.* at 593 & n.5.

In the trafficking context, *United States v. Raniere* distinguished evidence that victims engaged in sexual acts "prior to or 'other' than the ones on which [the] criminal charges are based," which Rule 412 covers, from evidence intrinsic to the

charged conduct, which it does not. No. 18-cr-204-1, 2019 WL 2163189, at *3 (E.D.N.Y. May 16, 2019).

The Eleventh Circuit drew the same line in a § 1591 sex trafficking prosecution. In *United States v. Mitchell*, the district court excluded the victims' prior commercial sex acts under Rule 412 but permitted "wide-ranging cross-examination regarding the victims' dealings with Mitchell, including the means he used to cause them to engage in commercial sex." No. 22-14153, 2024 WL 490151, at *1 (11th Cir. Feb. 8, 2024). The Eleventh Circuit affirmed and rejected the argument that the government had opened the door to the victims' sexual histories by eliciting that testimony: the government "asked the women questions about the sex acts the women engaged in during their relationship with Mitchell, not the victims' entire sexual history." *Id*. at *3.

The sexual acts that constituted T.H., N.N., and D.B.'s trafficking episodes *at this Super 8* are not collateral sexual history; they are part of the alleged trafficking activity at the hotel this case is about. Rule 412's word "other" distinguishes those intrinsic events from the witnesses' sexual conduct at other hotels, at other times, and in unrelated relationships. Judge Calvert drew the same line in *W.K. v. Red Roof Inns, Inc.* The relevant circumstances "are the circumstances that existed at the time the Plaintiffs alleged they were trafficked at the Red Roof hotels, not the entire circumstances of Plaintiffs' lives." No. 1:20-cv-5263, 2024 WL 5114059, at *3 (N.D.

Ga. June 10, 2024). That was for the eleven *plaintiffs* in that case. Non-party witnesses' lives are even further removed.

Defendant's recent admission does not change that line Rule 412 draws. Defendant has admitted TVPRA liability as to J.R. while reserving causation and damages. The other victims' Super 8 episodes remain relevant to the causal questions Defendant reserved for trial because they show how the hotel actually operated when trafficking occurred there and whether those practices made J.R.'s trafficking easier to conduct, harder to interrupt, and more prolonged. The admission does not transform the witnesses' collateral sexual histories elsewhere into admissible evidence.

The same distinction also answers Defendant's reliance on Plaintiff's PX5, or what Defendant refers to as Exhibit 40.[1] Where the report records T.H.'s trafficking at this Super 8 and the police investigation of that episode, those matters are intrinsic to this case. Where the report also recounts collateral sexual conduct or trafficking elsewhere, those particular portions present a Rule 412 issue. A document containing both does not become wholly inadmissible—or wholly admissible—because of either category. And Plaintiff has informed Defendant that her use of PX 5 is limited—and that at trial the exhibit will be cut down— to only the pages which were used as

[1] Plaintiff removed many exhibits from her initial list and renumbered them. At any rate, PX5 and Exhibit 40 are the same document: the South Fulton police report.

an exhibit in the deposition of Louis Vu, which discuss only sex trafficking and sexual activity at the Super 8.

## II. Defendant's newly identified categories do not justify wholesale admission of the challenged material.

### A. Precise statements about the same Super 8 episode may be intrinsic; an entire collateral sexual history is not.

Defendant relies on deposition or interview statements that it says contradict N.N., T.H., or D.B. Defendant even uses the word "intrinsic." Doc. 106 at 6-7. The word is correct, but it does not provide a blanket to support the admission of entire depositions, interviews, complaints, or discovery responses, which is what is on Defendant's exhibit list. If N.N. previously gave a directly inconsistent answer about whether a trafficker controlled her during the same Super 8 episode, the precise answer is intrinsic to what happened at the Super 8 and therefore outside Rule 412(a)(1).

But the exception can't swallow the rule. An interview does not become intrinsic in its entirety because one sentence bears on the Super 8. Defendant itself acknowledges that the interviews "may cover other incidents of trafficking or sexual assault." Doc. 106 at 7. Those other incidents are not transformed into intrinsic Super 8 evidence merely because Defendant labels the broader document "impeachment." And Defendant undersells that quite a bit. It has N.N.'s entire deposition from another trafficking case on its exhibit list. If what it intends to use is the one response

relevant to this case, it must say so and state that it is not seeking to introduce the other evidence. That is what Plaintiff did with the South Fulton police report.

Judge Geraghty's ruling in *J.G. v. Northbrook Industries, Inc.* confirms the distinction. Order at 43–48, No. 1:20-cv-5233 (N.D. Ga. July 2, 2025), ECF No. 204. The court treated trafficking at other hotels as Rule 412 material and, only after the required Rule 412 process, admitted a narrow subset tied to causation and damages—the fact and dates of trafficking at two other hotels and an estimate of the number of buyers—while excluding surrounding details under Rules 401 and 403 because it could confuse the issues and mislead the jury. *Id.* Defendant's Response does not explain why other-hotel trafficking evidence here should bypass Rule 412 altogether.

**B. Defendant's characterization of the photographs and videos is wrong, and the material implicates both Rule 412(a)(1) and (a)(2).**

Defendant represents to the Court that the photographs and videos subject to Plaintiff's Rule 412 objection merely show what N.N. and D.B. "looked like." Doc. 106 at 7. And "none of which show any sexual activity." *Id.* That representation is untrue. At least two of Defendant's videos of N.N. are overtly sexual in nature. [redacted]

[redacted] [redacted]

Defense exhibits 165 and 171.

These are not neutral "appearance" videos. They are precisely the kind of evidence for which Rule 412 requires advance identification of the evidence, the purpose for which it will be offered, and the Court's heightened balancing. The man in the video exhibit is a sex trafficker who trafficked N.N. as a minor at a different hotel than the Super 8.

The balance of Defendant's photographs and videos does not become admissible merely because much of it is less overtly sexual. Nearly all of those materials depict N.N. during periods when she was being trafficked by someone and are almost all taken in hotels other than Defendant's Super 8. They therefore concern the very category Rule 412 identifies as "other sexual behavior" and collateral sexual history—not the intrinsic trafficking activity at issue at this hotel. Defendant cannot

convert that material into ordinary appearance evidence simply by saying it intends to show what N.N. "looked like." At any rate, the seventy-four pictures and videos of N.N. that are still on Defendant's exhibit list are a bit much to believe the purpose is simply to prove what a person looked like. For that purpose, the pictures of N.N. actually at the Super 8, of which there are several, more than suffice.

Rule 412(a)(2) forecloses that result also. The sexual-predisposition provision reaches evidence that does not depict a sex act at all. It includes evidence of a victim's "mode of dress, speech, or life-style" when offered to invite sexual inferences or stereotypes. Fed. R. Evid. 412 advisory committee notes. Thus, even images that contain no overt sexual conduct may fall squarely within Rule 412 when used to portray a child as sexually mature, provocative, promiscuous, or living a sexualized lifestyle, all of which are true of pictures taken during a minor's sex trafficking.

Nor has Defendant explained how these particular photographs and videos bear on any remaining issue. N.N.'s trafficking at Defendant's Super 8 is relevant because it bears on how the hotel actually operated when trafficking occurred there and, in turn, on the causal consequences of Defendant's conduct. But photographs and sexualized videos taken while N.N. was being trafficked elsewhere do not show how Defendant operated this hotel, what its employees did, or how its conduct affected trafficking at the Super 8. If Defendant contends those materials bear on Defendant's knowledge, *W.K.* cuts the other way: even an online commercial-sex

advertisement was relevant to hotel knowledge only if the defendants knew or should have known of it. 2024 WL 5114059, at *3. And if Defendant instead seeks to use them to invite conclusions about N.N. from her sexual conduct, appearance, dress, or lifestyle, that is exactly the use Rule 412 was designed to regulate.

Defendant's broad and incorrect assertion that these materials "do not show any sexual activity" does not even resolve the issue; it underscores why Rule 412 required a timely, specific proffer. The Court cannot perform the Rule's required balancing based on the blanket and inaccurate descriptions Defendant supplied in its Response.

### C. Materials that truly do not implicate Rule 412 can be addressed under the ordinary Rules of Evidence.

Defendant finally identifies incident reports and releases that it says do not reference sexual behavior or predisposition. Doc. 106 at 7. If that is correct as to a particular document and proposed use, Rule 412 may not be the basis for exclusion. Plaintiff preserves all other objections, including relevance, hearsay, Rule 403, Rule 408, and improper character or impeachment use as applicable. But as the proponent, it is *Defendant's* burden to identify those documents and those purposes.

## III. Rule 412 applies to undisclosed lines of questioning, not just exhibits.

Defendant's Rule 412 obligation is not limited to documents, photographs, or videos on an exhibit list. Rule 412(c)(1)(A) applies whenever a party intends to offer covered "evidence" and requires a timely motion that "specifically describes the

evidence and states the purpose for which it is to be offered." That includes testimony elicited through cross-examination. The Eleventh Circuit has enforced the Rule in that setting. *See United States v. Cochran*, 682 F. App'x 828, 837 n.10 (11th Cir. 2017) (discussing testimony that victim "allegedly rubbed her buttocks"; upholding ruling that failure to comply with Rule 412's procedural requirements was, "standing alone," sufficient reason to exclude covered evidence); *see also United States v. Sarras*, 575 F.3d 1191, 1212–13 & n.26 (11th Cir. 2009) (applying Rule 412(c) to proposed cross-examination concerning the victim's other sexual relationship).

That matters here because Defendant's exhibit list and Response do not identify every potentially covered line of inquiry [redacted] There is no corresponding exhibit. If Defendant intends to use that prior sexual victimization at trial—for alternative causation, impeachment, credibility, or any other purpose—it was required to identify that evidence and its purpose in a timely Rule 412 motion, notify the victim, and obtain the required in camera ruling. The absence of a document does not permit Defendant to save a Rule 412 subject for cross-examination.

The same is true of any other such subject contained in a deposition, interview, discovery response, or other discovery but omitted from Defendant's Rule 412 filing. Defendant cannot wait to see how a witness testifies and then spring collateral

sexual-history evidence under the label of impeachment or contradiction. If Defendant intends to pursue any other line of questioning concerning prior sexual behavior, prior sexual victimization, or sexual predisposition outside the intrinsic Super 8 trafficking episodes, it is required to identify that subject now, establish good cause for the untimely disclosure, satisfy Rule 412(b)(2), and obtain the required in camera ruling before mentioning it in the jury's presence. The Rule 412 deadline has already passed, and Defendant has identified no good cause for its failure to make the required disclosure.

Similar to the seeming posture here, where Defendant has not identified such evidence for the Court as implicating Rule 412, in *B.K.B.*, the defendant "simply sprang the offending testimony upon the court and then misrepresented the nature of Becraft's testimony to the trial judge in response to plaintiff's objections that the defense intended to violate Rule 412." *B.K.B. v. Maui Police Dep't*, 276 F.3d at 1104–05. The district court did not fail to act, either. It struck the testimony, sanctioned the defendant $10,000, *and* issued a curative instruction to the jury. *Id.* at 1104-05; 1099. Even so, the Ninth Circuit reversed and remanded for a second trial because the "curative instruction was neither as forceful nor as comprehensive as warranted under the circumstances" and "no matter what the instruction, it was impossible to dispel the effect of Becraft's lurid and prejudicial testimony." *Id.* at 1105-06.

A second trial could be the result of Defendant "springing" 412 evidence on sex trafficking victims at trial. Beyond the J.R. evidence noted above, Plaintiff has no idea if or what type of other sexual evidence with no exhibit Defendant intends to spring on Plaintiff and victim-witnesses at trial. Because none has been disclosed as required by Rule 412.

**IV. Defendant still has no answer to Rule 412(c) for the evidence that is covered by the Rule.**

Once the intrinsic evidence is separated from the collateral evidence, Defendant's procedural default remains. Defendant does not dispute that the Rule 412 deadline was September 4, that it possessed and selected the challenged materials before then, or that it filed no Rule 412 motion. See Doc. 97 at 1, 4-5. Nor does Defendant identify newly discovered evidence or any issue that arose after the deadline. It simply argues that its proposed uses fall outside Rule 412. Some do, as Plaintiff has acknowledged. Some *parts* do. But that does not excuse Defendant's failure to follow Rule 412 for the evidence and uses that fall within it. *See Cochran*, 682 F. App'x at 837 n.10 (noncompliance with Rule 412's procedural requirements is, "standing alone," sufficient reason to exclude).

Rule 412(c)(1)(A) required Defendant to state its purposes in a timely motion so that the victims could respond and the Court could perform the heightened Rule 412(b)(2) balancing as to the specific evidence and use. Defendant's Response also misstates that balancing test to the Court. It says covered evidence may be admitted

if its probative value "outweighs the danger of harm or unfair prejudice." Doc. 106 at 3. That is an incorrect statement of the law. Rule 412(b)(2) flips the common 403 standard and adds weight; it requires that probative value *substantially* outweigh the danger of harm to any victim *and* of unfair prejudice to any party. Defendant has not attempted that showing for any exhibit, and it still has not requested the in camera hearing that Rule 412(c)(2) makes mandatory before covered evidence may be admitted. When such evidence reaches the jury and the civil defendant failed to make a proper 412 showing, the result can include reversal and order for a new trial. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1105–06 (9th Cir. 2002) ("Because we believe that the defendants both flouted the procedural requirements of Rule 412 and failed to establish that the probative value of Becraft's testimony substantially outweighed its prejudicial effect, we reverse the ruling of the district court and remand for a new trial.").

Defendant's purported withdrawals do not cure the problem either. Defendant withdraws dozens of exhibits but expressly "retains to [sic] right to use any withdrawn exhibit for impeachment." Doc. 106 at 1 n.1. But Rule 412 applies whether covered evidence is offered substantively or for impeachment. Fed. R. Evid. 412 advisory committee's notes. A party cannot avoid Rule 412(c) by removing evidence from its affirmative exhibit list while reserving the right to spring the same material on a victim during cross-examination.

## CONCLUSION

Rule 412 is uncomplicated. Evidence intrinsic to the trafficking that occurred at Defendant's Super 8 is not "other sexual behavior." The victims' collateral sexual conduct, trafficking at other hotels or other times, prior sexual victimization, and sexual-predisposition evidence is "other sexual behavior." Those subjects are protected by Rule 412.

Defendant knew of the challenged material, selected it for trial, and nevertheless filed no Rule 412 motion by the September 4 deadline. It identified no timely purpose, made no Rule 412(b)(2) showing, sought no in camera hearing, and has shown no good cause for its failure to comply. It still hasn't. Its Response does not cure its default. Nor can Defendant avoid Rule 412 by relabeling covered evidence as "impeachment," "contradiction," "appearance" evidence, or by saving undisclosed sexual-history subjects for cross-examination. Particularly when it smuggles in overtly sexual videos for what it claims to be "appearance" purposes. Evidence wrongly admitted rings a bell that cannot be unrung and could lead to a second trial.

Defendant's subsequent admission of TVPRA liability as to J.R. does not alter the analysis. Causation remains contested, and Plaintiff remains entitled to present admissible evidence about how trafficking operated at this Super 8 and how Defendant's conduct caused or prolonged J.R.'s harm. That does not open up the entire sexual histories of J.R. or the victim-witnesses.

The Court should therefore exclude Defendant's Rule 412 evidence, including covered exhibits, testimony, impeachment material, and undisclosed lines of inquiry into prior sexual behavior, prior sexual victimization, or sexual predisposition.

Respectfully submitted on September 18, 2026.

ANDERSEN, TATE & CARR, P.C.

*/s/ Jonathan S. Tonge*

PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491
rweeks@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
CAROL M. CAPPS
Georgia Bar No. 645599
ccapps@atclawfirm.com

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile
*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

Under Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Times New Roman, 14-point font.

ANDERSEN, TATE & CARR, P.C.

*/s/ Jonathan S. Tonge*

PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491
rweeks@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
CAROL M. CAPPS
Georgia Bar No. 645599
ccapps@atclawfirm.com

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile
*Attorneys for Plaintiff*