**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| J.R.,<br><br>Plaintiff,<br><br>v.<br><br>LINCOLN BANCORP, LLC,<br><br>Defendant. | CIVIL ACTION FILE<br>NO. 1:25-cv-04629-JPB |

**DEFENDANT'S MOTION PER FED. R. EVID. 412**

COMES NOW, Defendant Lincoln Bancorp, LLC ("Lincoln Bancorp" or "Defendant"), by and through undersigned counsel, and, pursuant to Court's direction, hereby provides notice of its intent to introduce evidence which may implicated Rule 412, showing the Court as follows:

***I. Evidence Related to J.R.***

Regarding J.R., Defendant does intend to question her about other trafficking at locations other than the Super 8. Counsel for Plaintiff and Defendant have discussed this topic, and it is Defendant's understanding that the parties are in agreement that Rule 412 is ***not*** implicated by such evidence, as it goes directly to Plaintiff's claims herein. So, Defendant is fee to cross examine Plaintiff on the topic of other instances of trafficking, where and when it occurred, how Plaintiff

came to be at one location or another, and prior statements provided by Plaintiff addressing same.

Defendant does intend to offer evidence or elicit testimony that J.R. was sexually molested at young age. Defendant does not believe that such evidence triggers Rule 412, as molestation was something that was done ***to*** J.R., as opposed to something J.R. did. Thus, Defendant does not believe such evidence can be considered "sexual behavior" or "sexual predisposition". Nevertheless, even if Rule 412 is triggered, such evidence is directly relevant to the issue of damages, as evidenced by Plaintiff herself.

In Anique Whitmore's report, J.R.'s prior abuse was identified by both J.R. and Whitmore as a contributing factor to Plaintiff's current emotional state. *See* Whitmore's Report, p. 21.[1] In fact, per Whitmore, J.R. reported that her childhood abuse "impacted [J.R.'s] sexual development and contributed to hypersexual behavior and confusion regarding intimacy." ***Id.***, p. 15. And, Whitmore ultimately concluded that J.R. was particularly vulnerable to trafficking as a result of several factors, including her history of trauma, which included the molestation. Id., pp. 16-17.

[1] Whitmore's report has been previously submitted to the Court.

Defendant does not intend to go into any great detail of the molestation – only that it occurred, that it was traumatic, and that it was a contributing cause to the emotional damages Plaintiff is seeking herein.

***II. Evidence Related to N.N., T.H., and D.B.***

Plaintiff will call N.N., T.H., and D.B. (hereinafter, "Witnesses") to testify as to their alleged trafficking at the Super 8. Based upon Plaintiff's representation during Friday's hearing and subsequent discussions with Plaintiff's counsel, Defendant understands that these Witnesses have waived any privacy concerns related to their allegations/testimony pertaining to their time at the Super 8. It is only when the Defendant intends to introduce evidence or elicit testimony regarding incidents occurring somewhere else, that Rule 412 ***may*** apply here. Below, out of an abundance of caution, Defendant sets out expected evidence and/or testimony which involves other locations.

A. <u>Lawsuits and trafficking at other hotels.</u>

In addition to filing lawsuits against the Defendant (which are clearly admissible herein), N.N. and D.B. have filed other lawsuits against other hotels for trafficking allegedly occurring on or about the same time they claim to have been trafficked at the Super 8.

1. *Evidence of N.N.'s other lawsuits, prior testimony, and discovery responses.*

N.N. claims that she was trafficked at the Super 8 from "early 2021 through March 25, 2021". She has filed at least two other lawsuits:

- One against T&S Hospitality LLC (alleging she was trafficked at the Super Inn from June 2020 to the end of 2020);
- Another against Summit Hospitality, LLC (alleging she was trafficked at the Quality Inn in December of 2020).

While the timeframes do not overlap in N.N.'s case, the fact that she has filed these other cases is relevant for several reasons.

First, these other lawsuits go to bias. N.N. has or is pursuing other hotels for similar allegations in an effort to collect money damages, which is probative as to whether or not her testimony herein is motivated by the possibility of financial gain. Defendant does not intend to go into any details of what occurred at the other hotels N.N. has sued – only that she brought these other lawsuits in which she alleged trafficking and sought to recover financially.

Second, as noted previously, N.N. affirmatively testified in her case against T&S Hospitality that she was NOT trafficked at the Super 8. *See* ***Doc. 106***. Her testimony herein will be quite different, and Defendant is entitled to cross-examine her on her prior inconsistent statements.[2] Plaintiff has conceded that N.N.'s prior

[2] In addition, N.N.'s prior testimony about the Super 8 conflicts with her testimony herein in various other ways. For example, in T&S, she stated that she was with

inconsistent statements are relevant herein. However, to be clear, the ***source*** of those statements (*i.e.* that they were made under oath in a lawsuit brought to recover damages for trafficking) is also relevant, as it belies N.N.'s anticipated explanation for her conflicting testimony. Specifically, N.N. will claim that, when she testified in the T&S case, she simply did not realize that she had also been a trafficking victim while at the Super 8. This excuse is implausible for several reasons.

At the time she provided that testimony, N.N. had already filed two lawsuits in which she alleged to have been trafficked and wherein she was represented by the same lawyers (*i.e.* the Plaintiff's lawyers herein). She, therefore, was well aware of the different forms trafficking could take. Not only did she exhibit a deep understanding of trafficking methods during her T&S deposition, but, prior to being deposed in T&S (which took place on May 11, 2022), N.N. actually provided discovery responses wherein she claimed to have been trafficked at the Super 8.

Clearly, Defendant is entitled to impeach N.N. with her prior testimony and representations. Defendant does not intend to get into any of N.N.'s sexual behavior which took place at the hotels involved in her other lawsuits, but Defendant does intend to reveal the source of N.N.'s testimony and discovery

---

her boyfriend at the Super 8 – a person who did not want her to engage in prostitution. Then, in her case against the Super 8, she claims that this boyfriend was just a customer, and she identifies someone else as her trafficker.

responses – *i.e.* that they were made in another trafficking case, involving a different hotel. Identification of the source of her testimony, however, is not "sexual behavior" or "sexual predisposition" evidence. And, her prior testimony and discovery responses – which concern the same subject matter as that which N.N. will testify about at trial – would be "intrinsic" to her testimony herein.

*2. Evidence of D.B.'s other lawsuits.*

D.B. alleges she was trafficked at the Super 8 from "June 20, 2020 until approximately December 30, 2020", but she has filed at least three other lawsuits claiming to have been trafficked elsewhere at the same time –

- One against MNSS Investment, LLC (alleging trafficking occurring from September 1, 2020 to February 28, 2021);
- Another against Ramkabir Investment Groups, Inc. (alleging she was trafficked at the Travelodge hotel from August 1, 2020 to April 8, 2021);
- Another against (alleging she was trafficked at the Ramada Plaza hotel from August 1, 2020 to June 1, 2021).

As mentioned above, Defendant is entitled to introduce evidence that D.B. filed these lawsuits, as it goes to bias. But, in D.B.'s case, the dates that she contends she was trafficked at other hotels is also relevant, as they all overlap with the dates she contends she was trafficked at the Super 8. Thus, such evidence goes directly to the credibility of her testimony herein – how was she at the Super 8 when she contends she was being trafficked elsewhere at the same time?

Again, Defendant does not intend to get into what occurred at the other hotels, and the fact that D.B. has brought these lawsuits (and the dates she claims to have been trafficked) is not evidence of other sexual behavior or sexual predisposition. Additionally, to the extent her trafficking

B. Evidence concerning how T.H. and D.B. arrived at the Super 8.

Both T.H. and D.B. have provided statements and/or testimony explaining how it is that they came to be at the Super 8. That testimony is relevant herein, because it shows that they willingly came to the Super 8 with the understanding that they would be engaging in commercial sex. As previously noted, minors cannot consent to commercial sex, and Defendant does not suggest otherwise. However, the fact that T.H. and D.B. came to the Super 8 on their own accord is relevant to how they would be perceived by an outside observer – *i.e.* they would not have appeared to be under duress.

In an interview with police, T.H. explained that, prior to the Super 8, she was at the Best America Inn, where she was trafficked by another pimp, "Loco". T.H. was in the hotel lobby when she met Eron McCrary. McCrary asked T.H. to come with him to the Super 8, where she could engage in commercial sex with him and he would split the proceeds with her. T.H. eventually decided to go with T.H. to the Super 8, because Loco was keeping all of her money and because she thought McCrary was better looking.

While Defendant does not intend to get into the details of what occurred at the Best America Inn, the fact that T.H. decided to leave that location and her prior pimp to accompany McCrary, knowing that she would be engaging in commercial sex at the Super 8, is clearly relevant to her claim (and Plaintiff's argument) that her presence at the Super 8 was observable evidence of trafficking.

D.B. contends that she was trafficked at the Super 8 by Ashanti Coles. D.B. first met Coles online and eventually moved in with him at his apartment. She lived with Coles for month or so, believing that they were in a romantic relationship, and it was there that D.B. first engaged in commercial sex, upon Coles' suggestion. In a police interview, D.B. stated that she was "fine" with engaging in commercial sex and she made various statements about how she appreciated the money she and Cole were making. Cole eventually brought D.B. to the Super 8, where she continued to engage in commercial sex.

Obviously, Defendant is entitled to cross examine D.B. on her relationship with Coles and her prior statements related to her attitude toward commercial sex and her behavior at the Super 8. However, since D.B.'s history with Coles began outside of the Super 8, that context is important to an understanding of how the two of them interacted with each other upon arriving at the Super 8 and how D.B. was aware, before arriving at the Super 8, that she would be engaging in

commercial sex there. Such evidence is not being offered to show other sexual behavior or predisposition, again it goes to perception.

C. Factors mitigating embarrassment or harm to the Witnesses.

N.N., T.H., and D.B. have each filed litigation – including lawsuits against this Defendant – placing their claimed trafficking and resulting injuries at issue. Everyone agrees that, in such lawsuits, the defendants are entitled to investigate and examine the plaintiff's history, especially in regard to the alleged trafficking occurring at the defendant's location or anywhere else. The Witnesses' participation in those suits does not automatically waive Rule 412 or eliminate every privacy concern. It does, however, substantially reduce any credible claim of embarrassment or harm from questions related to their trafficking – especially on the limited, non-graphic topics identified here. In addition, the Witnesses already enjoy the benefits of the protective order in place, which requires use of their initials at trial. Defendant will, of course, adhere to that order and seek no inquiry into sexual reputation. These safeguards, together with the direct relevance of the proposed evidence, favor admission under Rule 412(b)(2) if the rule applies.

This 19th day of September, 2026.

**WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC**

*/s/ Christopher T. Byrd*
Christopher T. Byrd
GA Bar No. 100854
Shubhra R. Mashelkar
GA Bar No. 475388
Patrick B. Moore
GA Bar No. 520390
3344 Peachtree Road, N.E.
Suite 2400
Atlanta, Georgia 30326
(404) 876-2700
cbyrd@wwhgd.com
smashelkar@wwhgd.com
pmoore@wwhgd.com
*Counsel for Defendant Lincoln Bancorp, LLC*

**RULE 7.1D CERTIFICATE OF TYPE, FORMAT AND FONT SIZE**

Under Local Rule 7.1D of the United States District Court for the Northern District of Georgia, the undersigned certifies that this submission to the Court was computer-processed, double-spaced between lines, and prepared with 14-point Times New Roman font.

*/s/ Christoher T. Byrd*
Christopher T. Byrd

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 19, 2026, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing by electronic mail to all counsel or parties of record:

Jonathan Tonge, Esq.
Patrick J. McDonough, Esq.
Jennifer Webster, Esq.
ANDERSEN, TATE & CARR, PC
One Sugarloaf Centre
1960 Satellite Blvd, Ste. 4000
Duluth, GA 30097
jwebster@atclawfirm.com
jtonge@atclawfirm.com
pmcdonough@atclawfirm.com

**WEINBERG, WHEELER,
HUDGINS, GUNN & DIAL, LLC**

*/s/ Christopher T. Byrd*
Christopher T. Byrd
GA Bar No. 100854